ORIGINAL

FILED
SEP 4 2007
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, on its own behalf, AND MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, as successor to CONNECTICUT MUTUAL LIFE INSURANCE COMPANY

Plaintiff,

v.

THE UNITED STATES

Defendant.

Case No.: 07-648 T

# COMPLAINT

To the Honorable Judges of the United States Court of Federal Claims:

Plaintiff, Massachusetts Mutual Life Insurance Company, on its own behalf, and also as successor to Connecticut Mutual Life Insurance Company, brings this action and respectfully shows to this Honorable Court and alleges:

## JURISDICTION

1. This is an action arising under the Internal Revenue laws of the United States for the recovery of Federal income taxes and related interest. This action is brought against defendant pursuant to Section 1491 of Title 28 and Section 7422 of Title 26 of the United States Code.

## IDENTITY OF THE PARTIES

2. Massachusetts Mutual Life Insurance Company ("MassMutual") is a mutual life insurance company organized and existing under the laws of the Commonwealth of Massachusetts. It is engaged, and at all times relevant to this action was engaged, in the business of writing various forms of individual and group life and health insurance and annuities. Currently, and at all relevant times, its principal place of business is located at 1295 State Street, Springfield, Massachusetts 01111-0001. Its employer identification number is 04-1590850.

3. During all relevant years, MassMutual was a life insurance company as defined in section 816(a) of the Internal Revenue Code, Title 26 of the United States Code, as in effect for those years (hereinafter referred to as the "Code").

4. During all relevant years prior to 1996, Connecticut Mutual Life Insurance Company ("ConnMutual") was a mutual life insurance company organized and existing under the laws of the State of Connecticut. At all times relevant to this action, its principal place of business was located at 140 Garden Street, Hartford, Connecticut 06154, and its employer identification number was 06-0304620.

5. During all relevant years prior to 1996, ConnMutual was a life insurance company as defined in Code section 816(a).

6. During the year 1996, ConnMutual merged with and into MassMutual, with MassMutual being the surviving corporation and succeeding to all of ConnMutual's rights and liabilities, including the right to bring the instant action with respect to ConnMutual's taxable year 1995.

7. Defendant is the United States of America.

## REFUNDS CLAIMED BY MASSMUTUAL

8. This action is brought for the recovery of the following amounts of Federal income tax collected from MassMutual for the years stated, together with assessed interest properly recoverable, plus statutory interest thereon as provided by law:

| Year | Income Tax Refund |
|---|---|
| 1988 | $ 0 |
| 1989 | $ 4,200,361 |
| 1990 | $ 2,977,900 |
| 1991 | $ 3,491,809 |
| 1992 | $ 1,838,894 |
| 1993 | $ 0 |
| 1994 | $ 0 |
| 1995 | $ 37,317,872 |
| 1996 | $ 7,364,888 |
| 1997 | $ 19,070,199 |

9. As described in paragraphs 95, 112, 113, and 131, infra, depending on the resolution of certain issues raised in this complaint, MassMutual may be entitled to the refund of additional amounts of tax and interest for the taxable years in suit.

## REFUND CLAIMED ON BEHALF OF CONNMUTUAL

10. This action is brought for the recovery of $27,167,608 of Federal income tax collected from ConnMutual for the year 1995, together with assessed interest properly recoverable, plus statutory interest thereon as provided by law.

## MASSMUTUAL PROCEDURAL BACKGROUND

**Payment of Tax Shown on Federal Income**
**Tax Returns for 1988 Through 1997**

11. Pursuant to timely applications for extensions of time to file, MassMutual timely filed its Federal income tax returns for the years 1988 through 1997 with the Internal Revenue Service ("IRS") Service Center in Andover, Massachusetts.

12. The name, address, and identification number appearing on the 1988 through 1993 Federal income tax returns are Massachusetts Mutual Life Insurance Company (Consolidated), 1295 State Street, Springfield, Massachusetts 01111, 04-1590850. The name, address, and identification number appearing on the 1994 through 1997 Federal income tax returns are Massachusetts Mutual Life Insurance Company (Life/Nonlife Consolidated), 1295 State Street, Springfield, Massachusetts 01111, 04-1590850.

13. The Federal income tax returns described in the preceding paragraphs showed the following amounts of tax liability:

| Year | Tax Paid |
|---|---|
| 1988 | $ 22,740,712 |
| 1989 | $ 82,590,891 |
| 1990 | $ 26,078,253 |
| 1991 | $ 116,080,634 |
| 1992 | $ 134,333,662 |
| 1993 | $ 195,702,419 |
| 1994 | $ 33,606,684 |
| 1995 | $ 218,342,768 |
| 1996 | $ 379,449,167 |
| 1997 | $ 173,063,795 |

14. MassMutual made payments to the IRS within the time periods prescribed by law, fully satisfying the amounts of income tax liability shown on the returns referred to in the preceding paragraph.

**Amended Returns**

15. On October 7, 1992, MassMutual filed with the IRS a Form 1120X, Amended U.S. Corporation Income Tax Return, for the taxable year 1990.

16. The IRS denied the claim made in the amended return described in the preceding paragraph during its audit of the taxable year 1990.

17. On April 29, 1997, MassMutual filed with the IRS a Form 1120X, Amended U.S. Corporation Income Tax Return, for the taxable year 1994.

18. The IRS denied the claim made in the amended return described in the preceding paragraph during its audit of the taxable year 1994.

**Assertion and Payment of Deficiencies 1988 and 1989**

19. The Commissioner of Internal Revenue ("Commissioner") caused MassMutual's Federal income tax returns for the taxable years 1988 and 1989 to be audited and, as a result of such audits, proposed to adjust MassMutual's life insurance company taxable income for each such year and to assert Federal income tax deficiencies against MassMutual.

20. On July 8, 1994, pursuant to a partial agreement on IRS Form 870, MassMutual paid additional Federal income tax for the years 1988 and 1989 in the amounts of $1,998,518 and $1,146,778, respectively, plus interest in the amounts of $1,270,462 and $525,243, respectively. These amounts were paid by check, which was delivered to MassMutual's on-site IRS Examination team.

21. On September 7, 1994, MassMutual filed a protest letter with the IRS District Director in Stoneham, Massachusetts, protesting the proposed adjustments to its Federal income tax liabilities for the tax years 1988 and 1989.

22. As a result of conferences with the IRS Appeals in Boston, Massachusetts, MassMutual and the Commissioner executed Form 870-AD, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment, pursuant to which MassMutual agreed to the assessment of Federal income tax deficiencies of $5,477,738 and $11,662,243 for 1988 and 1989, respectively, and to the assessment of deficiency interest of $0 and $8,099,970.70 for 1988 and 1989, respectively.

23. MassMutual executed the Form 870-AD described in the preceding paragraph on September 25, 2000, and the Commissioner executed that form on December 8, 2000.

24. The IRS assessed the deficiencies described in the second preceding paragraph on March 30, 2001.

25. For the year 1988, MassMutual paid the assessed tax deficiency through the application of a cash bond deposited with the IRS during 1987 and 1988.

26. For the year 1989, MassMutual paid the assessed tax and interest deficiencies in part through the application of a cash bond deposited with the IRS during 1987 and 1988 and in part through the delivery on April 27, 2001 of a check in the amount of $12,960,526.70, which was sent to the IRS Service Center in Holtsville, New York.

27. In executing the Form 870-AD referred to in paragraph 22, supra, MassMutual expressly reserved the right to file or prosecute claims for refund for 1988 and 1989 on various grounds, including those upon which this suit is brought.

**Assertion and Payment of Deficiencies 1990 Through 1992**

28. The Commissioner caused MassMutual's Federal income tax returns for the taxable years 1990 through 1992 to be audited and, as a result of such audits, proposed to adjust MassMutual's life insurance company taxable income for each such year and to assert Federal income tax deficiencies against MassMutual.

29. On July 2, 1997, pursuant to a partial agreement on IRS Form 870, MassMutual paid additional Federal income tax for the year 1990 in the amount of $3,363,555, plus interest in the amount of $2,361,224.12. These amounts were paid by check, which was delivered to MassMutual's on-site IRS Examination team.

30. On July 2, 1997, MassMutual made advance payments of Federal income tax for 1990, 1991, and 1992 in the amounts of $19,980,078, $5,046,209, and $13,020,487, respectively, plus interest for 1990, 1991, and 1992 in the amounts of $14,094,489.88, $2,748,651.00, and $5,621,455.00, respectively. These amounts were paid by check, which was delivered to MassMutual's on-site IRS Examination team.

31. On August 29, 1997, MassMutual filed a protest letter with the IRS District Director in Stoneham, Massachusetts, protesting the proposed adjustments to its Federal income tax liabilities for the tax years 1990 through 1992.

32. As a result of conferences with the IRS Appeals Office in Boston, Massachusetts, MassMutual and the Commissioner executed Form 870-AD, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment, pursuant to which MassMutual agreed to the assessment of Federal income tax deficiencies of $18,721,948, $5,932,843, and $42,205,092 for 1990, 1991, and 1992,

respectively, and to the assessment of deficiency interest of $12,551,592, $2,486,232, and $22,251,307 for 1990, 1991, and 1992, respectively.

33. MassMutual executed the Form 870-AD described in the preceding paragraph on February 21, 2003, and the Commissioner executed that form on February 26, 2003.

34. The IRS assessed the deficiencies described in the second preceding paragraph on May 5, 2003.

35. For the years 1990 and 1991, MassMutual paid the assessed tax and interest deficiencies by applying the advance payments made for those years described in paragraph 30, supra.

36. For the year 1992, MassMutual paid the assessed tax and interest deficiencies in part by applying advance payments made for the year 1992 (described in paragraph 30, supra), in part by applying tax and interest overpayments determined for the years 1993 and 1994 (described in paragraph 43, infra), and in part through the delivery on May 15, 2003 of a check in the amount of $2,549,282.10, which was sent to the IRS Service Center in Holtsville, New York.

37. In executing the Form 870-AD referred to in paragraph 32, supra, MassMutual expressly reserved the right to file or prosecute claims for refund for 1990 through 1992 on various grounds, including those upon which this suit is brought.

38. On November 13, 1995, MassMutual filed Form 1139, application for Federal income tax refund relating to a 1994 capital loss carryback. MassMutual claimed a refund of $31,003,720 relating to the year 1991.

39. The IRS allowed the claim described in the preceding paragraph and MassMutual received the claimed refund on December 26, 1995.

**Assertion and Payment of Deficiencies 1993 and 1994**

40. The Commissioner caused MassMutual's Federal income tax returns for the taxable years 1993 and 1994 to be audited and, as a result of such audits, proposed to adjust MassMutual's life insurance company taxable income for each such year and to assert Federal income tax deficiencies against MassMutual.

41. On October 28, 1999, MassMutual made advance payments of Federal income tax for 1993 and 1994 in the amounts of $8,838,157 and $1,055,139, respectively, plus interest for 1993 and 1994 in the amounts of $5,441,026.00 and $516,069.00, respectively. These amounts were paid by check, which was delivered to MassMutual's on-site IRS Examination team.

42. On December 30, 1999, MassMutual filed a protest letter with the IRS District Director in Stoneham, Massachusetts, protesting the proposed adjustments to its Federal income tax liabilities for the tax years 1993 and 1994.

43. As a result of conferences with the Boston Appeals Office of the Internal Revenue Service, MassMutual and the Commissioner executed Form 870-AD, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment, pursuant to which MassMutual agreed to Federal income tax overpayments of $6,497,733 and $14,565,073 for 1993 and 1994, respectively, plus interest.

44. MassMutual executed the Form 870-AD described in the preceding paragraph on February 21, 2003, and the Commissioner executed that form on February 26, 2003.

45. The IRS applied the tax and interest overpayments described in paragraph 43, supra, to satisfy liabilities assessed for the year 1992, as described in paragraph 36, supra.

46. In executing the Form 870-AD referred to in paragraph 43, supra, MassMutual expressly reserved the right to file or prosecute claims for refund for 1993 and 1994 on various grounds, including those upon which this suit is brought.

**Assertion and Payment of Deficiencies 1995 Through 1997**

47. The Commissioner caused MassMutual's Federal income tax returns for the taxable years 1995 through 1997 to be audited and, as a result of such audits, proposed to adjust MassMutual's life insurance company taxable income for each such year and to assert Federal income tax deficiencies against MassMutual.

48. On September 13, 2002, MassMutual made advance payments of Federal income tax for 1995 and 1997 in the amounts of $46,493,786 and $6,748,869, respectively, plus interest for 1995 and 1997 in the amounts of $32,236,389.00 and $2,820,790.00, respectively. These amounts were paid by check, which was delivered to MassMutual's on-site IRS Examination team.

49. On November 15, 2002, MassMutual filed a protest letter with the IRS District Director in Stoneham, Massachusetts, protesting the proposed adjustments to its Federal income tax liabilities for the tax years 1995 through 1997.

50. As a result of conferences with the Boston Appeals Office of the Internal Revenue Service, MassMutual and the Commissioner executed Form 870-AD, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment, pursuant to which MassMutual agreed to deficiencies (overpayments) of

$35,966,674, ($13,831,457), and $9,326,053, for the years 1995, 1996, and 1997, respectively, plus interest.

51. MassMutual executed the Form 870-AD described in the preceding paragraph on March 2, 2004, and the Commissioner executed that form on March 9, 2004.

52. The IRS did not assess the deficiencies described in paragraph 50, supra, because of the advance payments described in paragraph 48, supra.

53. For the years 1995 through 1997, MassMutual paid the tax and interest deficiencies assessed for 1995 and 1997 in part by applying the advance payments described in paragraph 48, supra, and in part by applying the tax overpayment for the year 1996 described in paragraph 50, supra. MassMutual received refunds for the years 1995 and 1996 in the amounts of $15,877,537 and $19,413,775, respectively, plus interest.

54. In executing the Form 870-AD referred to in paragraph 50, supra, MassMutual expressly reserved the right to file or prosecute claims for refund for 1995 through 1997 on various grounds, including those upon which this suit is brought.

**Claims for Refund**

55. On December 18, 2001, MassMutual timely filed with the IRS Center in Andover, Massachusetts, claims for refund of Federal income tax for each of the taxable years 1988 and 1989 in the amounts of $9,508,597 and $17,554,007, respectively, plus interest thereon as allowed by law. Annexed hereto as Exhibit 1 and 2 are true and correct copies of the claims for refund.

56. The name, address, and identification number appearing on the claims for refund described in the preceding paragraph are Massachusetts Mutual Life Insurance Company

(Consolidated), 1295 State Street, E104, Springfield, Massachusetts 01111-0001, and 04-1590850.

57. The Commissioner partially disallowed the refund claims described in the second preceding paragraph on August 31, 2005. The Commissioner disallowed $8,448,208 and $16,226,396 of the tax claimed for 1988 and 1989, respectively.

58. On September 7, 2005, MassMutual signed Form 3363, Acceptance of Proposed Disallowance of Claim for Refund or Credit, accepting the partial disallowance described in the preceding paragraph and starting the two-year period for filing suit for refund.

59. On December 22, 2003, MassMutual timely filed with the IRS Center in Andover, Massachusetts claims for refund of Federal income tax for each of the taxable years 1990, 1991, 1992, 1993 and 1994 in the amounts of $22,432,104, $8,742,496, $22,154,013, $20,154,417, and $19,041,611, respectively, plus interest thereon as allowed by law. Annexed hereto as Exhibits 3 through 7 are true and correct copies of the claims for refund.

60. The name, address, and identification number appearing on the claims for refund described in the preceding paragraph are Massachusetts Mutual Life Insurance Company (Consolidated), 1295 State Street, E104, Springfield, Massachusetts 01111-0001, and 04-1590850.

61. The Commissioner disallowed the refund claims described in the second preceding paragraph on November 7, 2005.

62. On December 7, 2005, MassMutual signed Form 2297, Waiver of Statutory Notification of Claim Disallowance, and Form 3363, Acceptance of Proposed Disallowance of

Claim for Refund or Credit, starting the two-year period for filing suit for refund of the claims disallowed.

63. On February 28, 2005, MassMutual timely filed with the IRS Center in Andover, Massachusetts claims for refund of Federal income tax for each of the taxable years 1995, 1996, and 1997 in the amounts of $75,267,904, $55,666,826, and $30,682,137, respectively, plus interest thereon as allowed by law. Annexed hereto as Exhibits 8 through 10 are true and correct copies of the claims for refund.

64. The name, address, and identification number appearing on the claims for refund described in the preceding paragraph are Massachusetts Mutual Life Insurance Company (Consolidated), 1295 State Street, E104, Springfield, Massachusetts 01111-0001, and 04-1590850.

65. As of the date of the filing of this suit, the Commissioner had taken no administrative action with respect to the refund claims described in the preceding two paragraphs.

66. The instant suit is brought claiming refunds of Federal income tax and related interest on the basis of the issues which are raised in the refund claims described in the preceding eleven paragraphs and which are described below (paragraphs 99 to 169, infra).

## CONNMUTUAL PROCEDURAL BACKGROUND

**Payment of Tax Shown on Return for 1995**

67. Pursuant to timely applications for extensions of time to file, ConnMutual timely filed its Federal income tax return for the taxable year 1995 with the IRS Service Center in Andover, Massachusetts.

68. The name, address, and identification number appearing on the 1995 Federal income tax return are Connecticut Mutual Life Insurance Company Consolidated Life-Nonlife Subsidiaries, 1295 State Street, E104, Springfield, Massachusetts 01111-0001, and 06-0304620.

69. ConnMutual's Federal income tax return for the taxable year 1995, as filed, showed a Federal income tax liability of $21,293,865.

70. ConnMutual made payments to the IRS within the time periods prescribed by law, fully satisfying the amounts of income tax liability shown on the returns described in the preceding paragraph.

**Assertion and Payment of Deficiencies**

71. The Commissioner caused ConnMutual's Federal income tax return for the taxable year 1995 to be audited and, as a result of such audits, proposed to adjust ConnMutual's life insurance company taxable income for each such year and to assert Federal income tax deficiencies against ConnMutual.

72. On July 8, 1998, MassMutual (as successor to and on behalf of ConnMutual) made an advance payment of Federal income tax for the taxable year 1995 in the amount of $27,594,224, plus interest in the amount of $6,386,722.24. This amount was paid by check, which was delivered to MassMutual's IRS Examination team in Hartford, Connecticut.

73. On June 10, 1998, MassMutual (as successor to and on behalf of ConnMutual) filed a protest letter with the IRS District Director in Hartford, Connecticut, protesting the proposed adjustments to ConnMutual's Federal income tax liability for 1995.

74. As a result of conferences with the IRS Appeals Office in Hartford, Connecticut, MassMutual (as successor to and on behalf of ConnMutual) and the Commissioner executed Form 870-AD, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment, pursuant to which MassMutual agreed to a deficiency of $30,373,989 for ConnMutual's taxable year 1995.

75. MassMutual executed the Form 870-AD described in the preceding paragraph on May 21, 2002, and the Commissioner executed that form on May 28, 2002.

76. The IRS assessed the deficiencies described in the second preceding paragraph on August 23, 2002.

77. For the year 1995, MassMutual (as successor to and on behalf of ConnMutual) paid the assessed tax and interest deficiencies in part by applying the advance payment described in paragraph 72, supra, and in part by applying portions of overpayments that the IRS concurrently determined for ConnMutuals's taxable years 1992, 1993 and 1994.

78. In executing the Form 870-AD referred to in paragraph 74, supra, MassMutual (as successor to and on behalf of ConnMutual) expressly reserved the right to file or prosecute claims for refund for 1995 on various grounds, including those upon which this suit is brought.

**Claim for Refund**

79. On March 26, 2003, MassMutual (as successor to and on behalf of ConnMutual) timely filed with the IRS Center in Andover, Massachusetts a claim for refund of Federal income tax for the year 1995 in the amount of $45,392,516, plus interest thereon as allowed by law. Annexed hereto as Exhibit 11 is a true and correct copy of the claim for refund.

80. The name, address, and identification number appearing on the claim for refund described in the preceding paragraph are Massachusetts Mutual Life Insurance Company (Successor to Connecticut Mutual Life Insurance Company), 1295 State Street, E171, Springfield, Massachusetts 01111-0001, and 06-0304620.

81. The Commissioner partially disallowed the refund claim described in the second preceding paragraph on June 23, 2004. The Commissioner disallowed $45,216,308 of the tax claimed for 1995.

82. On July 12, 2004, MassMutual signed Form 2297, Waiver of Statutory Notification of Claim Disallowance, and Form 3363, Acceptance of Proposed Disallowance of Claim for Refund or Credit, accepting the partial disallowance described in the preceding paragraph and starting the two-year period for filing suit for refund.

83. Prior to July 12, 2006, MassMutual and the Commissioner signed IRS Form 907, extending the period for filing suit with respect to ConnMutual's taxable year 1995 to December 31, 2007.

84. The instant suit is brought claiming refund of Federal income tax and related interest on the basis of the issue which is raised in the refund claim described in the preceding five paragraphs and which is described below (paragraphs 85 to 98 and 169, infra).

## ISSUE ASSERTED BY CONNMUTUAL

### Guaranteed Dividend Liability Accrual

85. This issue involves ConnMutual's taxable year 1995, which is prior to the merger in 1996 of MassMutual and ConnMutual.

86. During 1995, with respect to its participating life insurance policies, including its whole life individual policies, ConnMutual was obligated to pay policyholder dividends. The typical ConnMutual policy provides that, while the policy is in force, ConnMutual will credit it with dividends, based on such shares of divisible surplus (if any) as ConnMutual may apportion at the end of each policy year. When ConnMutual apportioned divisible surplus during 1995, it became obligated to pay or credit that divisible surplus as policyholder dividends to each individual policy, if such policy was in force on its anniversary date in the year 1996.

87. In the fall of 1995, ConnMutual's board of directors approved a report, submitted to it by ConnMutual's management, pertaining to the payment of dividends in the following year 1996. The report discussed ConnMutual's financial results for the year 1995, recommended the adoption of bases and formulae upon which policyholder dividends payable on individual policies in the year 1996 were to be computed, and set forth an estimate of the total amount of divisible surplus to be paid as policyholder dividends in the year 1996. ConnMutual's board of directors adopted this policyholder dividend resolution on November 27, 1995.

88. After the dividend resolution described in the preceding paragraph was approved by the board of directors, ConnMutual set aside as a liability on ConnMutual's annual statement the total amount of dividends payable. The resulting policyholder dividends liability was reported on page 3 (Liabilities, Surplus & Other Funds) of ConnMutual's annual statement for the year 1995.

89. Subsequently, on December 8, 1995, the board of directors adopted a second resolution supplementing the resolution previously adopted by the board of directors on November 27, 1995. In this second resolution, the board of directors determined that "the Company hereby absolutely and irrevocably commits and guarantees that, of the total

[policyholder dividend] apportionment for the [year 1996], it will pay or cause to be applied in all events, annual dividends in 1996, for participating individual life and annuity policies issued after December 31, 1983, in the amount of at least $97 million."

90. In addition, the December 8, 1995, board of directors resolution provided that the "Chief Financial Officer is hereby charged with monitoring the payment of annual dividends during 1996 to assure that the total guarantee is paid as applied in accordance with the Connecticut Mutual Life Insurance Company 1996 Annual Dividend Guarantee Policy." That Policy reiterated that, under the aggregate policyholder dividend guarantee, the Company was "absolutely and irrevocably obligated to pay or apply the Guaranteed Dividends in all events," and provided the mechanism by which the guarantee was to be implemented.

91. In December 1996, ConnMutual certified that the total guarantee liability of $97 million was paid or applied in accordance with the Connecticut Mutual Life Insurance Company 1996 Annual Dividend Guarantee Policy, as required by the board of directors resolution described in the preceding paragraph.

92. On its annual statement for the year 1995, ConnMutual disclosed to the State Insurance Department (with which the 1995 annual statement was filed) and to its policyholders the fact that "The Board of Directors has further guaranteed that in 1996, a total of no less than $97.0 million will be paid or applied in the aggregate as annual dividends on certain life insurance and annuity contracts issued before January 1, 1996." ConnMutual also disclosed the dividend guarantee to the State Insurance Department in a letter dated November 6, 1995.

93. For the year 1995, ConnMutual is entitled to accrue its liability to pay guaranteed aggregate policyholder dividends in 1996 and to deduct that accrual because

ConnMutual was unconditionally obligated to pay such guaranteed amount of policyholder dividend liability.

94. Under the recurring item exception of Code section 461(h)(3), ConnMutual is entitled to deduct the portion of its accrued policyholder dividends liability that was paid during 1996 within 8 1/2 months after year-end 1995. The amount of the policyholder dividend accrual for 1995 that was paid during 1996 within 8 1/2 months after year-end 1995 is $77,425,126. Accordingly, for 1995 ConnMutual is entitled to a deduction for its accrued liability to pay guaranteed policyholder dividends in the amount of $77,425,126.

95. In the alternative, ConnMutual is entitled to deduct the total $97 million of its accrued liability for guaranteed aggregate policyholder dividends on the ground that the liability satisfied the economic performance requirements of Code section 461(h)(1) and (2). Allowance of this larger accrual would increase the tax overpayment claimed for 1995 in paragraph 8, supra.

96. ConnMutual has claimed that for the taxable year 1995 it is entitled to the deduction described in paragraphs 94 and 95, supra.

97. The Commissioner has denied ConnMutual's claim (filed by MassMutual as successor to ConnMutual) to accrue its liability to pay guaranteed aggregate policyholder dividends and to deduct that accrual for the taxable year 1995.

98. The Commissioner has erred by rejecting ConnMutual's claim described in the preceding paragraph.

## ISSUES ASSERTED BY MASSMUTUAL

**Guaranteed Dividend Liability Accrual**

99. This issue involves MassMutual's taxable years 1995 through 1997.

100. For the year 1995, which preceded the merger of MassMutual and ConnMutual, this issue involves only policies issued by MassMutual.

101. For the year 1995, ConnMutual raises a similar "guaranteed dividend liability accrual" issue with respect to policies issued by ConnMutual (see paragraphs 85 through 98, supra).

102. For 1996 and 1997, this issue involves two groups of policies: (1) policies issued by MassMutual, and (2) policies issued by ConnMutual prior to the merger of MassMutual and ConnMutual, for which MassMutual assumed liability after the merger.

103. During the years 1995 through 1997, with respect to its participating life insurance policies, including its whole life individual policies, MassMutual was obligated to pay policyholder dividends. The typical MassMutual policy provides that, while the policy is in force, MassMutual will credit it with dividends, based on such shares of divisible surplus (if any) as MassMutual may apportion at the end of each policy year. ConnMutual policies contain similar language. When MassMutual apportioned divisible surplus during 1995, 1996, and 1997, it became obligated to pay or credit that divisible surplus as policyholder dividends to each individual policy, if such policy was in force on its anniversary date in the following year.

104. In the fall of each of the years 1995, 1996 and 1997, MassMutual's board of directors approved a report, submitted to it by MassMutual's management, pertaining to the payment of dividends in the following year. The report discussed MassMutual's financial results

for the current year, recommended the adoption of bases and formulae upon which policyholder dividends for individual policies in the following year were to be computed, and set forth an estimate of the total amount of divisible surplus to be paid as policyholder dividends in the following year. MassMutual's board of directors adopted these operative policyholder dividend resolutions with respect to policyholder dividends payable in the years 1996, 1997, and 1998 on October 8-9, 1995, October 13-14, 1996, and October 12-13, 1997, respectively.

105. After these dividend resolutions described in the preceding paragraph were approved by the board of directors, MassMutual set aside as a liability on MassMutual's annual statement the total amount of dividends payable. The resulting policyholder dividends liability were reported on page 3 (Liabilities, Surplus & Other Funds) of MassMutual's annual statements for the years 1995, 1996, and 1997.

106. Subsequently, for each of the years 1995, 1996, and 1997, on December 13, 1995, December 11, 1996, and December 10, 1997, respectively, MassMutual's board of directors adopted a second resolution supplementing the resolution previously adopted by the board of directors. In these second resolutions, the board of directors determined that "the Company hereby absolutely and irrevocably commits and guarantees that, of the total [policyholder dividend] apportionment from its surplus funds for the [years 1995, 1996, and 1997], it will pay or cause to be applied during [years 1996, 1997, and 1998], in all events, annual dividends for participating individual life and annuity policies issued after December 31, 1983, in an amount of not less than" $185 million, $310 million, and $360 million, respectively.

107. In addition, the second board of directors resolution for each of the years 1995, 1996 and 1997, provided that the "Executive Vice President, Corporate Financial Operations be, and hereby he is, made responsible for monitoring the payment of annual

dividends during [1996, 1997 and 1998] to assure that such guaranteed amount is so paid or applied." A related administrative document reiterated that, under the aggregate policyholder dividend guarantee, the Company was "absolutely and irrevocably obligated to pay or apply the Guaranteed Dividends in all events," and provided the mechanism by which the guarantee was to be implemented.

108. In December 1996, 1997 and 1998, MassMutual certified that the 1995, 1996, and 1997 guaranteed amounts reflected in paragraph 106, supra, were paid or applied, as required by the board of directors resolution described in the preceding paragraph.

109. Moreover, in each of the years 1995, 1996 and 1997, MassMutual sent the Massachusetts Division of Insurance written notice that it had adopted (or, in the case of 1995, that it intended to adopt) an absolute and irrevocable aggregate policyholder dividend guarantee. In 1995, the Division of Insurance acknowledged by letter that MassMutual was absolutely and irrevocably committed to pay dividends in at least the guaranteed amount, and voiced its intention to have its examiners verify that MassMutual annually paid an aggregate amount of policyholder dividends in an amount equal to at least the guaranteed amount.

110. For the years 1995 through 1997, MassMutual is entitled to accrue its liability to pay guaranteed aggregate policyholder dividends in 1996 through 1998 and to deduct that accrual because MassMutual was unconditionally obligated to pay such guaranteed amount of policyholder dividend liability.

111. Under the recurring item exception of section 461(h)(3), for 1995, 1996, and 1997, MassMutual is entitled to deduct the portion of its accrued policyholder dividend liability that was paid during the following year within 8 1/2 months after year-ends 1995, 1996, and

1997, respectively. The amounts of the accrued liabilities and the corresponding deductions for 1995 through 1997 to which MassMutual is entitled are as follows:

**MassMutual Policies**

| Year | (1) Current-Year Accrual | (2) Prior-Year Accrual | (1) - (2) Claimed Deduction |
|---|---|---|---|
| 1995 | $ 118,975,383 | $ 0 | $ 118,975,383 |
| 1996 | $ 136,930,036 | $ 118,975,383 | $ 17,954,653 |
| 1997 | $ 163,402,093 | $ 136,930,036 | $ 26,472,057 |

**ConnMutual Policies**

| Year | (1) Current-Year Accrual | (2) Prior-Year Accrual | (1) - (2) Claimed Deduction |
|---|---|---|---|
| 1996 | $ 80,191,363 | $ 77,425,125 | $ 2,766,238 |
| 1997 | $ 89,463,806 | $ 80,191,363 | $ 9,272,443 |

112. In the alternative, MassMutual is entitled to deduct for each of the years 1995, 1996, and 1997 amounts computed using the full amount of its accrued liability for guaranteed aggregate policyholder dividends in the amounts of $185 million, $310 million, and $360 million, respectively, on the ground that the liabilities satisfy the economic performance requirements of Code sections 461(h)(1) and (2). Allowance of these larger accruals would increase the tax overpayments claimed for 1995, 1996 and 1997 in paragraph 8, supra.

113. Also in the alternative, if ConnMutual is not allowed to deduct its 1995 accrued liability as described in paragraphs 85 to 98, supra, then MassMutual is entitled to deduct accrued liability with respect to ConnMutual policies in the amount of $80,191,363 for the taxable year 1996, rather than $2,766,238. Allowance of this larger accrual would increase the tax overpayment claimed for 1996 in paragraph 8, supra.

114. MassMutual has claimed that for the taxable years 1995, 1996 and 1997 it is entitled to the deductions described in paragraphs 111, 112 and 113, supra.

115. The Commissioner has denied MassMutual's claim to accrue its liability to pay guaranteed aggregate policyholder dividends and to deduct that accrual for the years 1995, 1996 and 1997.

116. The Commissioner has erred by rejecting MassMutual's claims described in the preceding paragraph.

**Minimum Premium Plan**

117. During the years 1988 through 1994, MassMutual had in force insurance contracts that operated on a "minimum premium plan" basis.

118. Under a minimum premium plan, after termination of the plan, the contract holder may be called upon to pay a "supplemental premium."

119. Prior to the termination of a minimum premium plan, supplemental premiums are not due and payable, and plaintiff has not earned the supplemental premium, does not have any right to receive it, and has not actually received it.

120. On its Federal income tax return for the year 1988, MassMutual included supplemental premiums in the amount of $21,337,083 in its life insurance company taxable income prior to plan termination.

121. On its Federal income tax return for the year 1988, MassMutual also made adjustments related to the inclusion of supplemental premiums in income, increasing death benefits by $10,902,639 and increasing year-end reserves by $22,671,240.

122. MassMutual filed an affirmative claim with the IRS seeking to exclude the amount of supplemental premiums listed in the second preceding paragraph from MassMutual's life insurance company taxable income for 1988 because, prior to the termination of a minimum premium plan, all events necessary to fix MassMutual's right to receive supplemental premiums had not occurred. The affirmative claim also included related adjustments decreasing death benefits and decreasing year-end reserves as listed in the preceding paragraph.

123. The Commissioner has erred by rejecting MassMutual's affirmative claim described in the preceding paragraph.

124. On its Federal income tax returns for the years 1989 through 1994, MassMutual excluded from income the supplemental premiums with respect to minimum premium plans and made corresponding adjustments to death benefits and reserves.

125. The Commissioner has adjusted MassMutual's taxable income for each of the years 1989 through 1994 to include the supplemental premiums with respect to minimum premium plans. The Commissioner also made corresponding changes to death benefits and year-end reserves. The proposed adjustments are as follows:

| Year | Supplemental Premiums | Death Benefits | Year-End Reserves |
|---|---|---|---|
| 1989 | $ 31,559,332 | $ 7,515,766 | $ 35,254,416 |
| 1990 | $ 26,603,447 | $ 8,618,679 | $ 47,463,654 |
| 1991 | $ 9,921,083 | ($ 1,579,158) | $ 48,914,039 |
| 1992 | ($ 129,562) | $ 52,154 | $ 36,170,445 |
| 1993 | ($ 5,890,772) | ($ 394,652) | $ 33,923,772 |
| 1994 | ($ 4,205,061) | ($ 259,169) | $ 33,133,342 |

126. The reserve amount for year-end 1992 shown in the preceding paragraph reflects $8,189,996 of reserve weakening attributable to pre-1992 issue years. For the years

1993 and 1994, the Commissioner also increased reserve weakening income by $819,000 and $819,000, respectively.

127. For the years 1993 and 1994, the Commissioner also increased MassMutual's year-end 1992 equity base by $1,488,530, year-end 1993 equity base by $1,347,164, and year-end 1994 equity base by $1,212,048.

128. MassMutual is not required to include the supplemental premiums with respect to minimum premium plans in its taxable income because, prior to the termination of a minimum premium plan, all events necessary to fix MassMutual's right to receive supplemental premiums had not occurred.

129. The Commissioner has rejected MassMutual's claims to exclude supplemental premiums from life insurance company taxable income and to make corresponding changes to death benefits and reserves for 1988 through 1994, and to reserve weakening income and year-end equity base for the years 1993 and 1994.

130. The Commissioner has erred by rejecting MassMutual's claims described in the preceding paragraph.

131. If the Commissioner's position is implemented for certain of the years 1988 through 1994, MassMutual will be entitled to overpayments of tax in excess of the amounts claimed in paragraph 8, supra.

**Section 809 Equity Base Adjustment – No Bonds**

132. On its Federal income tax return for each of the years 1988 through 1991, MassMutual computed its "average equity base" under Code section 809(b) as the average of its "equity base" for the year and its "equity base" for the immediately preceding year.

133. With respect to the years 1988 through 1991, the Commissioner has made various adjustments that increase MassMutual's equity bases for the years 1988 through 1991.

134. The term "no bonds" refers to bonds designated by the National Association of Insurance Commissioners ("NAIC") as ineligible for amortization by insurance companies.

135. On its NAIC annual statement for each of the years 1988 through 1991, MassMutual wrote down "no bonds" to fair market value.

136. On its Federal income tax returns for each of the years 1988 through 1991, MassMutual's equity bases did not include the amounts written down with respect to "no bonds," as follows:

| Tax Return for | Equity Base | "No Bond" Write Down |
|---|---|---|
| 1988 | Year end 1987 | $ 35,058,049 |
| 1989 | Year end 1988 | $ 25,654,690 |
| 1990 | Year end 1989 | $ 3,732,610 |
| 1991 | Year end 1990 | $ 1,516,452 |

137. MassMutual's equity bases for the years 1988 through 1991 are properly computed without including the amounts written down with respect to "no bonds."

138. For the years 1988 through 1991, the Commissioner has rejected MassMutual's claim to decrease its equity bases by the amounts of the write downs with respect to "no bonds" described in the preceding paragraph.

139. The Commissioner has erred by rejecting MassMutual's claims described in the preceding paragraph.

**Deposit Administration Group Annuity Contract Reserves**

140. During the years 1990 through 1997, MassMutual had in force deposit administration group annuity contracts ("DA contracts"). Under the DA contracts, MassMutual maintained a policyholder's fund, referred to as the "Active Life Fund" (or "ALF").

141. On its Federal income tax returns for each of the years 1990 through 1997, MassMutual reported life insurance reserves held with respect to the DA contracts.

142. On its annual statements for the years 1990 through 1997, MassMutual reported reserves for DA contracts in amounts equal to 97.5% of ALF.

143. On its tax returns, MassMutual reported tax reserves for DA contracts in the same amounts (97.5% of ALF).

144. On its Federal income tax returns for each of the years 1990 through 1997, MassMutual reported the following DA contract reserves:

| Date | Reserves |
|---|---|
| December 31, 1990 | $ 140,152,006 |
| December 31, 1991 | $ 131,214,803 |
| December 31, 1992 | $ 127,908,016 |
| December 31, 1993 | $ 121,892,644 |
| December 31, 1994 | $ 105,091,791 |
| December 31, 1995 | $ 100,110,011 |
| December 31, 1996 | $ 94,269,833 |
| December 31, 1997 | $ 67,551,715 |

145. The Commissioner disallowed a portion of these reserves and reduced the DA contract reserves to the following amounts:

| Year | Reserves |
|---|---|
| December 31, 1990 | $ 136,567,208 |
| December 31, 1991 | $ 128,032,378 |
| December 31, 1992 | $ 124,587,727 |

| | |
|---|---|
| December 31, 1993 | $ 118,777,569 |
| December 31, 1994 | $ 102,408,263 |
| December 31, 1995 | $ 97,554,885 |
| December 31, 1996 | $ 91,865,293 |
| December 31, 1997 | $ 65,817,859 |

146. MassMutual is entitled to include the amounts in the second preceding paragraph in its tax reserves.

147. In addition to the allowance of the correct amounts of reserves for DA contracts listed in the third preceding paragraph, MassMutual is entitled to a corresponding adjustment, reducing the excess of statutory over tax reserves in the computation of its year-end equity base under Code section 809(b) in the following amounts:

| Year-End | Reduction in Excess of Statutory Over Tax Reserves |
|---|---|
| 1990 | $ 3,584,798 |
| 1991 | $ 3,182,425 |
| 1992 | $ 3,320,289 |
| 1993 | $ 3,115,075 |
| 1994 | $ 2,683,528 |
| 1995 | $ 2,555,126 |
| 1996 | $ 2,404,540 |
| 1997 | $ 1,733,856 |

148. Moreover, as a result of allowance of the reserves in the correct amounts listed in paragraph 144, <u>supra</u>, MassMutual is entitled to a corresponding adjustment, increasing its policy interest under Code section 812(b)(2) in the following amounts:

| Year | Increase in Policy Interest |
|---|---|
| 1990 | $ 143,997 |
| 1991 | $ 273,390 |
| 1992 | $ 262,105 |
| 1993 | $ 250,487 |
| 1994 | $ 208,241 |
| 1995 | $ 176,908 |
| 1996 | $ 159,138 |
| 1997 | $ 126,962 |

149. The Commissioner has rejected MassMutual's claim to include the correct amounts of the tax reserves with respect to the DA contracts, and to make corresponding adjustments to the excess of statutory over tax reserves and the policy interest for 1990 through 1994.

150. The Commissioner has erred by rejecting MassMutual's claims described in the preceding paragraph.

151. The Commissioner has erred by failing to allow MassMutual's to include the correct amounts of the tax reserves with respect to the DA contracts, and to make corresponding adjustments to the excess of statutory over tax reserves and the policy interest for 1995 through 1997.

**Required Interest**

152. On its Federal income tax returns for each of the years 1990 through 1997, MassMutual reported required interest for certain contracts calculated using the interest rate actually used to compute the reserve for the contract for purposes of Code section 812(b)(2). In the case of reserves computed as the federally prescribed reserve, MassMutual reported required interest using the greater of the prevailing State rate or the Federal rate, i.e., the rate actually used to compute the reserve. In the case of reserves computed as the net surrender value or as the annual statement reserve, MassMutual reported required interest using "another appropriate rate," i.e., the rate reflected in the contract's guaranteed minimum nonforfeiture values or the rate reflected in the contract's annual statement reserves, respectively.

153. MassMutual's required interest, computed as described in the preceding paragraph with respect to certain contracts, is as follows:

| Year | Required Interest |
|---|---|
| 1990 | $ 391,944,961 |
| 1991 | $ 426,009,871 |
| 1992 | $ 338,873,319 |
| 1993 | $ 332,602,695 |
| 1994 | $ 319,632,055 |
| 1995 | $ 318,384,524 |
| 1996 | $ 393,692,486 |
| 1997 | $ 386,760,609 |

154. The Commissioner required MassMutual to use the greater of the prevailing State rate or the Federal rate, instead of the rates used by MassMutual in computing required interest with respect to certain contracts. As a result, the Commissioner increased the amount of required interest, resulting in the following required interest amounts:

| Year | Required Interest |
|---|---|
| 1990 | $ 464,736,125 |
| 1991 | $ 513,630,949 |
| 1992 | $ 440,876,299 |
| 1993 | $ 432,718,179 |
| 1994 | $ 415,843,295 |
| 1995 | $ 414,220,249 |
| 1996 | $ 511,886,414 |
| 1997 | $ 502,873,455 |

155. With respect to these contracts, MassMutual is entitled to report required interest using the rates described in paragraph 152, supra.

156. For 1990 through 1994, the Commissioner has rejected MassMutual's claim to compute required interest as described in paragraph 152, supra.

157. The Commissioner has erred by not allowing MassMutual to compute required interest as described in paragraph 152, supra.

158. For 1995 through 1997, the Commissioner has erred by failing to allow MassMutual's claim to compute required interest as described in paragraph 152, supra.

**Differential Earnings Amount Reconciliation Recoverable**

159. For each of the taxable years 1987 through 1996, MassMutual reported a "differential earnings amount" under Code section 809, computed as the product of the average equity base claimed on MassMutual's tax return for the year times the "differential earnings rate" for the year.

160. For each of the taxable years 1988 through 1997, MassMutual reported a "recomputed differential earnings amount" under Code section 809, computed as the product of the average equity base claimed on MassMutual's tax return for the prior year times the "recomputed differential earnings rate" for the prior year.

161. For each of the years 1988 through 1997, under section 809(f), the prior-year differential earnings amount is compared to the prior-year recomputed differential earnings amount and an adjustment is required to increase income or deductions.

162. The Commissioner has adjusted MassMutual's average equity base for some of the years at issue. Such adjustments affect computations under section 809(f).

163. The Commissioner has erred with respect to the items described above in adjusting MassMutual's average equity bases for 1987 through 1997.

164. MassMutual is entitled to calculate its recomputed differential earnings amounts for the years 1988 through 1997 to correctly reflect the average equity bases for the years 1987 through 1996 as finally determined or agreed.

165. In addition, MassMutual is entitled to correct errors made in calculations under Code section 809(f) for the years 1995 and 1997.

## CARRYOVERS AND CARRYBACKS

166. For each of the years 1988 through 1997, MassMutual is entitled to the allowance of credits and losses arising during each of those years, as well as to the allowance of credit and loss carryovers and carrybacks to those years.

167. For the year 1995, ConnMutual is entitled to the allowance of credits and losses arising during 1995, as well as to the allowance of credit and loss carryovers and carrybacks to that year.

168. The Commissioner is required to allow the full amount of the credits and losses, and the credit and loss carryovers and carrybacks, to which MassMutual is entitled for the years 1988 through 1997, and to which ConnMutual is entitled for the year 1995.

## INTEREST CALCULATIONS

169. MassMutual claims on its behalf for the years 1988 through 1997, and on ConnMutual's behalf for the year 1995, that it is entitled to have deficiency interest calculated in accordance with the interest netting procedures provided under section 6621(d). MassMutual also claims that it is entitled to have deficiency interest calculated in accordance with the "use of money" principles sets forth in *Sequa* and *May Department Stores* cases and Revenue Ruling 99-40.

## OVERPAYMENT OF TAXES

170. For the reasons set forth herein, MassMutual on its own behalf and as successor to ConnMutual, has overpaid its Federal income taxes for the taxable years 1988,

1989, 1990, 1991, 1992, 1993, 1994, 1995, 1996, and 1997, and there is now due and owing from Defendant to Plaintiff the sum of $103,429,531 of tax, together with assessed and deficiency interest properly recoverable, plus statutory interest thereon from the dates of payment thereof.

**REFUNDS NOT MADE**

171. Although payment thereof has been demanded, no part of the overpaid tax, and interest thereon, has been credited, remitted, refunded, or repaid to Plaintiff or to anyone on its account.

172. MassMutual has made no transfer or assignment of the claim for relief herein presented or any part thereof and is the sole and absolute owner of the claim. No action on this claim has been taken by the Congress of the United States or by any of the departments of the Government, other than the action by the Commissioner hereinbefore described. No other suit or process by plaintiff is pending on such claim in any other court.

WHEREFORE, Plaintiff prays for:

(1) Judgment in favor of Plaintiff on Plaintiff's claim for relief against Defendant United States, in the amount of $103,429,531 of tax, or such other amount as this Honorable Court may determine to be legally refundable, plus interest thereon as provided by law from the due dates for payment thereof; and

(2) Plaintiff's costs of this action, and for such other relief as may to this Honorable Court seem just and proper.

Respectfully submitted,

ARTHUR L. BAILEY
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-6409
(202) 429-3902 (fax)

Attorney for Plaintiff

Of Counsel:

J. WALKER JOHNSON
ALEXIS A. MACIVOR
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-64225

PETER J. BAUTZ
Corporate Vice President
Massachusetts Mutual Life
Insurance Company
1295 State Street
Springfield, MA 0111

DAVID S. ALLEN
Vice President and Associate
General Counsel
Massachusetts Mutual Life
Insurance Company
1295 State Street
Springfield, MA 0111

Dated: September 4, 2007