Form **1120X** (Rev. April 1999) Department of the Treasury Internal Revenue Service

# Amended U.S. Corporation Income Tax Return

OMB No. 1545-0132

For tax year ending December 1988 (Enter month and year)

Please Type or Print

Name: Massachusetts Mutual Life Insurance Company (Consolidated)

Employer identification number: 04 : 1590850

Number, street, and room or suite no. (If a P.O. box, see instructions.): 1295 State Street, E104

City or town, state, and ZIP code: Springfield, MA 01111

Telephone number (optional): ( 413 ) 744-7684

Enter name and address used on original return (If same as above, write "Same.")

Same

Internal Revenue Service Center where original return was filed ▶ Andover, MA

## Fill in Applicable Items and Use Part II To Explain Any Changes

**Part I** Income and Deductions (See instructions.)

| | | (a) As originally reported or as previously adjusted | (b) Net change (increase or decrease—explain in Part II) | (c) Correct amount |
|---|---|---|---|---|
| 1 | Total income ~~(Form 1120 or 1120-A, line 11)~~ | 4,925,628,786 | (33,613,320) | 4,892,015,466 |
| 2 | Total deductions ~~(total of lines 27 and 29c, Form 1120, or lines 23 and 25c, Form 1120-A)~~ | 4,828,794,226 | (5,677,406) | 4,823,116,820 |
| 3 | Taxable income. Subtract line 2 from line 1 | 96,834,560 | (27,935,914) | 68,898,646 |
| 4 | Tax ~~(Form 1120, line 31, or Form 1120-A, line 27)~~ | 30,216,968 | (9,508,597) | 20,708,371 |

**Payments and Credits** (See instructions.)

| | | (a) | (b) | (c) |
|---|---|---|---|---|
| 5a | Overpayment in prior year allowed as a credit | 5,858,697 | | 5,858,697 |
| b | Estimated tax payments | 30,310,000 | | 30,310,000 |
| c | Refund applied for on Form 4466 | | | |
| d | Subtract line 5c from the sum of lines 5a and 5b | 36,168,697 | | 36,168,697 |
| e | Tax deposited with Form 7004 | | | |
| f | Credit from Form 2439 | | | |
| g | Credit for Federal tax on fuels | | | |
| 6 | Tax deposited or paid with (or after) the filing of the original return | | | 7,476,256 |
| 7 | Add lines 5d through 6, column (c) | | | 43,644,953 |
| 8 | Overpayment, if any, as shown on original return or as later adjusted | | | 13,427,985 |
| 9 | Subtract line 8 from line 7 | | | 30,216,968 |

**Tax Due or Refund**

| | | |
|---|---|---|
| 10 | **Tax due.** Subtract line 9 from line 4, column (c). If paying by check, make it payable to the "United States Treasury" (see instructions) ▶ | |
| 11 | **Refund.** Subtract line 4, column (c), from line 9 ▶ | 9,508,597* |

**Please Sign Here**

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ [signature] Signature of officer ▶ 12/18/01 Date ▶ Vice President Title

**Paid Preparer's Use Only**

Preparer's signature ▶ | Date | Check if self-employed ▶ ☐ | Preparer's social security no.

Firm's name (or yours if self-employed) and address ▶ | EIN ▶ | ZIP code ▶

For Paperwork Reduction Act Notice, see instructions on page 4. Cat. No. 11530Z Form **1120X** (Rev. 4-99)

*Plus any other amount legally refundable, plus interest.

**Massachusetts Mutual Life Ins. Co. -- Tax Year 1988**
**Form 1120L Recomputation Per Claim for Refund**

| | PER RAR | ADJUSTMENTS | PER CLAIM |
|---|---|---|---|
| **Tax Computation** | | | |
| 1. LICTI | | | |
| MassMutual Life Ins. Co. | $138,074,612 | $76,085,305 | $61,989,307 |
| MML Pension | $3,163,221 | | $3,163,221 |
| MML Baystate | $1,612,127 | | $1,612,127 |
| MML Life | $2,044,499 | | $2,044,499 |
| Mass Life of NY | $89,492 | | $89,492 |
| 4. LICTI | $144,983,951 | $76,085,305 | $68,898,646 |
| 5. Regular Tax | | | |
| LICTI | $144,983,951 | | $68,898,646 |
| Less: NCG @ 31.6% | $23,782,455 | | $23,782,455 |
| LICTI @ 34% | $121,201,496 | | $45,116,191 |
| Tax at 31.6% Rate | $7,515,256 | | $7,515,256 |
| Tax at 34% Rate | $41,208,509 | | $15,339,505 |
| Total Regular Tax | $48,723,765 | | $22,854,761 |
| 6. Total Credits | $2,310,396 | | $2,310,396 |
| 7. Balance | $46,413,369 | | $20,544,365 |
| 8. Recapture Taxes | $50,351 | | $50,351 |
| 9. Environmental Tax | | | |
| Line 1 | $145,081,401 | | $68,996,096 |
| Line 4 | $153,195,081 | | $77,109,776 |
| Line 5c | $0 | | $19,602,859 |
| Line 6 | $153,195,081 | | $96,712,636 |
| Line 17 | $181,434 | | $113,655 |
| Environmental Tax | $181,434 | $67,779 | $113,655 |
| 10. Total Tax | $46,645,154 | $25,936,783 | $20,708,371 |
| 11. Tax Per Return | $24,739,230 | | |
| 11. Tax Per Appeals | | | $30,216,968 |
| 12. Overassessment or (Deficiency) | ($21,905,924) | | $9,508,597 |

| | PER RAR | ADJUSTMENTS | PER CLAIM |
|---|---|---|---|
| **Schedule A -- LICTI** | | | |
| 1. Gross Premiums | $3,014,438,604 | ($21,337,083) | $2,993,101,521 |
| Less Return Premiums | $0 | | $0 |
| | $3,014,438,604 | | $2,993,101,521 |
| 2. Decrease in Reserves | $0 | | $0 |
| 3. Sec. 807(f)(1)(B)(ii) | $0 | | $0 |
| 4. Investment Income | $1,716,094,531 | | $1,716,094,531 |
| 5. Net Capital Gain | $42,722,382 | $0 | $42,722,382 |
| 6. Other Amounts | $102,769,177 | ($17,228,538) | $85,540,639 |
| 7. Gross Income | $4,876,024,694 | | $4,837,459,073 |
| 8. Death Benefits | $1,453,859,058 | ($10,902,639) | $1,442,956,419 |
| 9. Increase in Reserves | $2,014,960,711 | $40,642,783 | $2,055,603,494 |
| 10. Sec. 807(f)(1)(B)(ii) | $821,854 | | $821,854 |
| 11. Policyholder Dividend | $511,509,773 | ($2,599,242) | $508,910,531 |
| 12. Assumption Reins | $0 | | $0 |
| 13. Reimbursable Divs | $0 | | $0 |
| 14. Other Deductions | $755,698,374 | $6,970,526 | $762,668,900 |
| 15. DRD | $1,109,597 | | $4,517,854 |
| 16. Operations Loss | $0 | | $0 |
| 17. Total Deductions | $4,737,959,368 | $37,519,684 | $4,775,479,052 |
| 18. Gain From Operations | $138,065,326 | ($76,085,305) | $61,980,021 |
| 19.1. Separate Account | $9,286 | | $9,286 |
| 20. LICTI | $138,074,612 | ($76,085,305) | $61,989,307 |
| **Schedule B -- Increase In Reserves** | | | |
| JANUARY 1, 1988 | | | |
| 1. Section 807(c)(1) | $9,938,763,840 | | $9,938,763,840 |
| 2. Section 807(c)(2) | $74,831,222 | | $74,831,222 |
| 3. Section 807(c)(3) | $90,601,571 | | $90,601,571 |
| 4. Section 807(c)(4) | $4,947,943,568 | | $4,947,943,568 |
| 5. Section 807(c)(5) | $248,097,568 | | $248,097,568 |
| 6. Section 807(c)(6) | $11,211,612 | | $11,211,612 |
| | $15,311,449,381 | $78,649,801 | $15,390,099,182 |
| DECEMBER 31, 1988 | | | |
| 1. Section 807(c)(1) | $10,811,333,916 | | $10,811,333,916 |
| 2. Section 807(c)(2) | $93,629,893 | | $93,629,893 |
| 3. Section 807(c)(3) | $105,047,025 | | $105,047,025 |
| 4. Section 807(c)(4) | $6,031,989,470 | | $6,031,989,470 |
| 5. Section 807(c)(5) | $274,266,853 | | $274,266,853 |
| 6. Section 807(c)(6) | $11,688,080 | | $11,688,080 |
| | $17,327,955,237 | $119,300,464 | $17,447,255,701 |

| | PER RAR | ADJUSTMENTS | PER CLAIM |
|---|---|---|---|
| **Schedule B -- (continued)** | | | |
| 7. End of Year Total | $17,327,955,237 | $119,300,464 | $17,447,255,701 |
| 9. Policyholders T/E Int | $1,545,145 | | $1,553,025 |
| 10. Balance | $17,326,410,092 | $119,292,584 | $17,445,702,676 |
| 11. Adjustment | $0 | | $0 |
| 12. Balance | $17,326,410,092 | | $17,445,702,676 |
| | $0 | | $0 |
| | $2,014,960,711 | $40,642,783 | $2,055,603,494 |
| **Schedule C -- Gross Investment Income** | | | |
| 1. Interest | $1,599,536,542 | $0 | $1,599,536,542 |
| 2. Dividends | $12,488,304 | | $12,488,304 |
| 3. Rents | $58,538,243 | | $58,538,243 |
| 4. Royalties | $23,007 | | $23,007 |
| 5. Leases. etc. | $3,179,698 | | $3,179,698 |
| 6. STCG over LTCL | $0 | | $0 |
| 7. Noninsurance Income | $42,328,737 | | $42,328,737 |
| 8. Investment Income | $1,716,094,531 | | $1,716,094,531 |
| 9. T/E Interest | $1,931,804 | | $1,931,804 |
| 10. Total | $1,718,026,335 | | $1,718,026,335 |
| 11. 100% Dividends | $0 | | $0 |
| 12. Gross Inv Income | $1,718,026,335 | | $1,718,026,335 |
| **Schedule E -- Policyholder Dividends** | | | |
| 1. Paid or Accrued | $487,552,032 | ($2,599,242) | $484,952,790 |
| 2. Excess Interest | $2,502,715 | | $2,502,715 |
| 3. Premium Adjustments | $6,800,270 | | $6,800,270 |
| 4. Experience Refunds | $14,654,756 | | $14,654,756 |
| 5. Total | $511,509,773 | | $508,910,531 |
| 6. DEA | $0 | | $0 |
| 7. Deductible Dividends | $511,509,773 | ($2,599,242) | $508,910,531 |
| 8. | $0 | | $0 |
| 9. Deductible Percentage | 100.0000000% | | 100.0000000% |
| **Schedule F -- Section 809 DEA** | | | |
| DECEMBER 31, 1987 | | | |
| 1. | $1,007,805,765 | | $1,007,805,765 |
| 2. | $58,173,537 | | $58,173,537 |
| 3. | $289,216,572 | | $289,216,572 |
| 4. | $21,428,802 | | $21,428,802 |
| 5. | $145,072,216 | | $145,072,216 |
| 6. | $2,021,742 | | $2,021,742 |
| 7. | $253,236,424 | | $253,236,424 |
| 8.a. | $1,776,955,058 | ($149,254,363) | $1,627,700,695 |
| 8.b. | $0 | | $0 |
| 8.c. | $1,776,955,058 | | $1,627,700,695 |

| | PER RAR | ADJUSTMENTS | PER CLAIM |
|---|---|---|---|
| **Schedule F -- (continued)** | | | |
| DECEMBER 31, 1988 | | | |
| 1. | $1,017,166,562 | | $1,017,166,562 |
| 2. | $58,355,404 | | $58,355,404 |
| 3. | $341,697,288 | | $341,697,288 |
| 4. | $19,236,057 | | $19,236,057 |
| 5. | $181,529,514 | | $181,529,514 |
| 6. | $3,562,770 | | $3,562,770 |
| 7. | $255,287,084 | | $255,287,084 |
| 8.a. | $1,876,834,679 | ($203,889,878) | $1,672,944,801 |
| 8.b. | $0 | | $0 |
| 8.c. | $1,876,834,679 | | $1,672,944,801 |
| 9. Total | $3,653,789,737 | | $3,300,645,496 |
| 10. 50% of Total | $1,826,894,869 | | $1,650,322,748 |
| 11. | $0 | | $0 |
| 12. | $1,826,894,869 | | $1,650,322,748 |
| 13. | $0 | | $0 |
| 14. Average Equity Base | $1,826,894,869 | | $1,650,322,748 |
| 15. Times DER = DEA | $0 | $0 | $0 |
| **Schedule G -- Dividends and DRD** | | | |
| 10. Gross DRD | $5,543,702 | $0 | $5,543,702 |
| 11. | 20.01545797% | | 19.60754463% |
| 12. | $1,109,597 | | $1,086,984 |
| 13. | $0 | | $0 |
| 14. | | | |
| 15. | $1,109,597 | ($22,613) | $1,086,984 |
| Plus: SIA DRD | $1,109,597 | $3,430,870 | $4,517,854 |

| | PER RAR | ADJUSTMENTS | PER CLAIM |
|---|---|---|---|
| **Schedule K -- Policyholders Share** | | | |
| 1. GII | $1,718,026,335 | | $1,718,026,335 |
| 2. Policy Interest | $1,143,278,419 | | $1,148,296,038 |
| 3. Balance | $574,747,916 | | $569,730,297 |
| 4. Gross Income | $4,876,024,694 | | $4,837,459,073 |
| 5. T/E Interest | $1,931,804 | | $1,931,804 |
| 6. Total | $4,877,956,498 | | $4,839,390,877 |
| 7. Reserve Increase | $2,016,505,856 | | $2,057,156,519 |
| 8. | $2,861,450,642 | | $2,782,234,358 |
| 9. Investment Inc Ratio | 20.085893% | | 20.477437% |
| 10. Policyholder Dividends | $511,509,773 | | $508,910,531 |
| 11. Excess Interest | $2,502,715 | | $2,502,715 |
| 12. | $15,276,682 | | $15,276,682 |
| 13. | $21,620,811 | | $21,620,811 |
| 14. | $6,800,270 | | $6,800,270 |
| 15. Total | $46,200,478 | | $46,200,478 |
| 16. | $465,309,295 | | $462,710,053 |
| 17. | $93,461,527 | | $94,751,161 |
| 18. | $1,143,278,419 | | $1,148,296,038 |
| 19. | $1,236,739,946 | | $1,243,047,199 |
| 20. GII | $1,718,026,335 | | $1,718,026,335 |
| 21. Net Invest Income | $1,546,223,702 | | $1,546,223,702 |
| 22. Policyholder Share | $1,236,739,946 | | $1,243,047,199 |
| 23. Company Share | $309,483,755 | | $303,176,502 |
| 24. Total Percentage | 100.00000000% | | 100.00000000% |
| 25. Company Percentage | 20.01545797% | | 19.60754463% |
| 26. Policyholder Percent | 79.98454203% | | 80.39245537% |
| **Schedule L -- Policy Interest** | | | |
| 1. | $1,103,878,211 | $5,017,619 | $1,108,895,830 |
| 2. | $2,502,715 | | $2,502,715 |
| 3. | $15,276,682 | | $15,276,682 |
| 4. | $21,620,811 | | $21,620,811 |
| 5. | $1,143,278,419 | | $1,148,296,038 |
| **Schedule D -- Capital Gains and Losses** | | | |
| 4. Net STCG | $0 | | $0 |
| Net STCL | ($768,262) | | ($768,262) |
| 8. Net LTCG | $43,490,644 | | $43,490,644 |
| Net LTCL | $0 | | $0 |
| 9. Net STG over LTCL | $0 | | $0 |
| 10. Net Capital Gain | $42,722,382 | | $42,722,382 |

**Adjustments Per Refund Claim (and Per Appeals Settlement)**

| | | |
|---|---|---|
| Interest Income | | |
| PIK Notes | $0 | |
| | | |
| Premium Income | | |
| Minimum Premium Plan | ($21,337,083) | |
| | | |
| Other Income | | |
| Issue No. 16 | $0 | |
| True-Up Income (TBR) | ($17,228,538) | |
| | ($17,228,538) | |
| | | |
| Death Benefits | | |
| Resisted Claims (#4) | $0 | |
| Minimum Premium Plan | ($10,902,639) | |
| | | |
| Other Deductions | | |
| Business Expansion Exp | $210,442 | |
| Interest on Def. Comp. | $4,482,606 | |
| Issue No. 10 | $2,114,876 | |
| SWL (#11) | ($34,260) | |
| 85/87 Issue #4 | $66,962 | |
| 85/87 Issue #6 | $129,900 | |
| | $6,970,526 | |
| | | |
| Div Received Deduction | $3,430,870 | |
| Policyholder Dividends | ($2,599,242) | |
| | | |
| Reserves | Beginning | Ending |
| Minimum Premium Plan | ($10,409,283) | ($22,671,240) |
| Correct Stat Reserves | $5,329,876 | $5,329,876 |
| Dividend Accums. | $0 | $0 |
| Issue No. 10 | $20,857,359 | $21,203,316 |
| SWL (#11) | $2,581,081 | $3,397,548 |
| 58 CSO (84&85) | $26,971,070 | $29,946,605 |
| 58 CSO (86&87) | $5,554,780 | $12,366,053 |
| 58 CSO (88&89) | $0 | $42,511 |
| Term Conversions | $0 | $28,396,675 |
| GA Contract Reserves | $0 | $880,000 |
| UL Reserves | $27,764,918 | $39,181,422 |
| Reins. Res. Credits | $0 | $1,227,698 |
| | $78,649,801 | $119,300,464 |

**Adjustments Per Refund Claim (continued)**

| Policy Interest | |
|---|---|
| Correct Stat Reserves | $408,344 |
| Dividend Accums. | $0 |
| Issue No. 10 | $830,894 |
| SWL (#11) | $131,559 |
| 58 CSO (84&85) | $1,252,467 |
| 58 CSO (86&87) | $394,346 |
| 58 CSO (88&89) | $935 |
| Term Conversions | $650,644 |
| UL Reserves | $1,312,672 |
| Reins. Res. Credits | $35,758 |
| | $5,017,619 |

| Equity Base | Beginning | Ending |
|---|---|---|
| Resisted Claims | ($2,021,742) | ($3,562,770) |
| Correct Stat Reserves | ($5,329,876) | ($5,329,876) |
| Dividend Accums. | $0 | $0 |
| Issue No. 10 | ($20,857,359) | ($21,203,316) |
| SWL (#11) | ($2,581,081) | ($3,397,548) |
| 58 CSO (84&85) | ($26,971,070) | ($29,946,605) |
| 58 CSO (86&87) | ($5,554,780) | ($12,366,053) |
| 58 CSO (88&89) | $0 | ($42,511) |
| Term Conversions | $0 | ($28,396,675) |
| GA Contract Reserves | $0 | ($880,000) |
| UL Reserves | ($27,764,918) | ($39,181,422) |
| Reins. Res. Credits | $0 | ($1,227,698) |
| NO Bonds | ($35,058,049) | ($25,654,690) |
| Unrealized Loss Bonds | ($21,717,666) | ($28,444,499) |
| Duplication Adj. | $2,497,991 | $2,363,292 |
| Unrealized Loss Stocks | ($3,895,813) | ($6,619,507) |
| | ($149,254,363) | ($203,889,878) |

**Recomputed 1987 DEA**

| | Per RAR | Per Claim | |
|---|---|---|---|
| Average Equity Base | $1,845,495,154 | $1,645,402,500 | |
| DER | 3.676% | 3.676% | |
| DEA | $67,840,402 | $60,484,996 | |
| | | | |
| Average Equity Base | $1,845,495,154 | $1,645,402,500 | |
| Recomputed DER | 8.0760% | 7.5640% | Tax Benefit Rule |
| Recomputed DEA | $149,042,189 | $124,458,245 | |
| | | | |
| 808(f) Income | $81,201,787 | $63,973,249 | |
| Reduction in Income | | ($17,228,538) | |

**MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY**
**ADDENDUM TO 1988 CLAIM FOR REFUND**

This Addendum is annexed to and forms a part of the claim for refund filed on Form 1120X by Massachusetts Mutual Life Insurance Company, hereinafter referred to as "Taxpayer." Taxpayer has overpaid its Federal income tax for 1988 by $9,508,597. It hereby claims a refund in that amount, or such greater amount as is legally refundable, together with assessed interest, as well as statutory interest on the amount to be refunded.

Jurisdictional Statement

At all times during 1988 Taxpayer was a life insurance company as defined in section 816 of the Internal Revenue Code (hereinafter all references are to sections of the Internal Revenue Code as in effect for 1988, unless otherwise indicated). Taxpayer timely filed its Federal income tax return for 1988 and paid in full the tax liability reported on that return.

Upon audit of Taxpayer's return for the year 1988, a number of adjustments were proposed by the District Director's Office. Upon consideration of those proposed adjustments by the Taxpayer and the Boston Appeals Office of the Internal Revenue Service, a settlement on Form 870-AD was reached pursuant to which a deficiency of $5,477,738 in Federal income tax for 1988 was determined. A Federal income tax deficiency, and related deficiency interest, were assessed on March 30, 2001. By check dated April 27, 2001, Taxpayer paid $12,960,526.70 of tax plus assessed interest with respect to the years 1988 and 1989.

As part of the agreement reached on the Form 870-AD, Taxpayer reserved the right to file a refund claim for 1988 with respect to certain issues. Those issues form the basis for this claim for refund.

This refund claim is timely filed pursuant to section 6511(c) and 6511(d)(2), which permit a refund claim to be filed before the expiration of six months after the expiration of the period for assessment. The period for assessment for the year 1988 was extended by means of Forms 872 and (pursuant to the most recently executed Form 872) did not expire any earlier than June 30, 2001, and the period for timely filing this refund claim thus extends at least through December 31, 2001.

Statement of Claim

The refund sought in this claim for refund is based on the following issues. With respect to each issue, Taxpayer incorporates herein by reference the relevant portions of its Protest filed with the Internal Revenue Service for the years 1988 and 1989 and dated September 7, 1994. Taxpayer is entitled to prevail with respect to each of these issues for the reasons set forth below.

1. Minimum Premium Plan Supplemental Premium

On its Federal income tax return for 1988, Taxpayer erroneously included in its income "supplemental premiums" with respect to minimum premium plans. Taxpayer hereby claims that supplemental premiums with respect to minimum premium plans should be excluded from its premium income, and claims related adjustments to death benefits and reserves. The claimed adjustments are as follows:

| Claimed Adjustment | Amount |
|---|---|
| Reduce gross premiums | $ 21,337,083 |
| Reduce death benefits | $ 10,902,639 |

| | |
|---|---|
| Reduce beginning-of-year reserves | $ 10,409,283 |
| Reduce year-end reserves | $ 22,671,240 |

The Internal Revenue Service has erroneously rejected Taxpayer's affirmative claim to exclude such supplemental premiums and to make corresponding adjustments to death benefits and reserves.

A "minimum premium plan" is one where the employer agrees to pay with its own funds an "expected" amount of claims for health benefits, while Taxpayer agrees to pay claims in excess of the "expected" amount of claims. A "supplemental premium" is an amount intended to compensate Taxpayer for its obligation to pay extended benefit claims, and claims incurred prior to plan termination but not filed or processed until after termination. In 1988, Taxpayer erroneously included supplemental premiums in taxable income prior to plan termination, which was its annual statement practice.

Whether supplemental premiums must be treated as income prior to plan termination depends upon whether such premiums are accrued under the all-events test. Under such test, income is to be included under the accrual method "when all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy." Treas. Reg. § 1.446-1(c)(1)(ii).

Here, supplemental premiums are not due or payable prior to plan termination. Under the minimum premium plan, prior to termination, Taxpayer has not earned the supplemental premium, does not have any right to receive it, and has not actually received it. Prior to plan termination, all events necessary to fix Taxpayer's right to receive supplemental premiums have not occurred, and, therefore, Taxpayer should not be required to accrue the supplemental premiums as income. Claim is hereby made for the adjustments necessary to correctly reflect

this issue.

2. Interest on Deferred Compensation

On its Federal income tax return for 1988, Taxpayer has claimed, and the Internal Revenue Service has allowed, deductions for interest with respect to non-qualified plans of deferred compensation when such amounts of interest are paid to employees. However, Taxpayer is entitled to a deduction for such interest as it credits the interest to the employees' deferred compensation accounts. The Internal Revenue Service has failed to allow such additional interest deductions. For 1988, Taxpayer claims an additional deduction in the amount of $4,482,606.

While under section 404 deferred compensation may only be deducted when paid to an employee, interest is not compensation, and is thus deductible under section 805(a)(8) when Taxpayer's liability for the interest accrues. Section 404 does not for any reason prohibit the accrual of interest.

In Albertson's Inc. v. Commissioner, the Ninth Circuit originally held that a corporation could currently deduct interest credited under non-qualified deferred compensation agreements, because such interest is not subject to section 404. Albertson's Inc. v. Commissioner, 38 F.3d 1046 (9th Cir. 1993), aff'g in part, rev'g in part 95 T.C. 415 (1990). However, the Court reversed itself upon rehearing and held that such interest is nondeductible until paid to the employee, although the court stated that "the answer is far from clear." Albertson's Inc. v. Commissioner, 42 F.3d 537 (9th Cir. 1994), vacating 38 F.3d 1046 (9th Cir. 1993). Taxpayer believes that the Court's original decision is correct, and that the reasoning of such decision ultimately will prevail.

Accordingly, Taxpayer is entitled to a refund of all overpayments in tax due to the Internal Revenue Service's failure to allow the claimed interest deductions.

3. Interest on Dividend Accumulations

Taxpayer's ordinary life insurance contracts provide, inter alia, an option whereby policyholder dividends may be held by Taxpayer to accumulate at interest. Under the terms of these contracts, dividend accumulations are credited with interest at the end of each policy year. On its Federal income tax return for 1988, with respect to its ordinary life insurance contracts, Taxpayer included as a section 807(c) "item to be taken into account," and thus as part of its increase in reserves deduction under sections 805(a)(2) and 807(b), interest on dividend accumulations for the period beginning on each contract's policy anniversary date and ending on December 31, 1988.

The Internal Revenue Service has disallowed this treatment. The deficiency assessed against Taxpayer for 1988 is based in part upon this disallowance. The interest on dividend accumulations described above should be included as a section 807(c) "item to be taken into account" and used to determine Taxpayer's increase in reserves deduction under sections 805(a)(2) and 807(b). The amounts of such interest, and the impact on the amount that is allowable as a deduction for 1988, are as follows:

| | Interest on Dividend Accumulations |
|---|---|
| December 31, 1987 | $9,970,181 |
| December 31, 1988 | ($9,741,258) |
| Decreased Deduction Claimed | $ 228,923 |

In addition, as a result of allowance of the interest on dividend accumulations described above, Taxpayer is entitled to a corresponding adjustment reversing an adjustment previously

made by the Internal Revenue Service that increased the excess of statutory over tax reserves in the computation of Taxpayer's year-end 1987 equity base under section 809(b) by $9,970,181 and that increased Taxpayer's year-end 1988 equity base under section 809(b) by $9,741,258. In addition, Taxpayer is entitled to a corresponding adjustment reversing an adjustment previously made by the Internal Revenue Service which decreased policy interest under section 812(b)(2) for the year 1988 by $817,320.

While Taxpayer should be allowed the interest on dividend accumulations listed above, the Internal Revenue Service has failed to permit use of such reserves, resulting in an improper adjustment to Taxpayer's Federal income taxes for 1988. Claim is hereby made for refund of the overpayment in tax computed disregarding this improper adjustment.

4. Survivorship Whole Life Insurance Reserves

On its 1988 Federal income tax return, Taxpayer reported life insurance reserves for its 1984 through 1987 issues of survivorship whole life ("SWL") insurance policies computed using the 1958 CSO mortality table and a 4.5 percent assumed interest rate. On audit, the Internal Revenue Service took the position that, for 1984 and 1985 issues of these contracts, the prevailing valuation standard is the 1958 CSO table and a 6 percent assumed interest rate. For 1986 issues of these contracts, the Internal Revenue Service took the position that the prevailing valuation standard is the 1980 CSO table and a 6 percent assumed interest rate. For 1987 issues of these contracts, the Internal Revenue Service took the position that the prevailing valuation standard is the 1980 CSO table and a 5.5 percent assumed interest rate. The amounts of the originally reported reserves and the reserves as computed by the Internal Revenue Service are as

follows:

| | Reserves Claimed per Return | Amount Disallowed | Reserves per Internal Revenue Service |
|---|---|---|---|
| December 31, 1987 | $ 36,765,836 | $2,581,081 | $ 34,184,755 |
| December 31, 1988 | $ 48,591,053 | $3,397,548 | $ 45,193,505 |
| 1988 Reserve Increase | $ 11,825,217 | $ 816,467 | $ 11,008,750 |

The Internal Revenue Service has disallowed Taxpayer's use of the reserves computed on the basis of the prevailing standards listed above. These reserves meet all of the requirements necessary to constitute "life insurance reserves" within the meaning of sections 816 and 807, and are properly computed under section 807. Consequently, Taxpayer is entitled to use such reserves in computing its tax due for 1988, and is entitled to an additional reserve increase deduction for 1988 of $816,467.

In addition, as a result of allowance of the reserves computed on the basis of prevailing standards listed above, Taxpayer is entitled to a corresponding adjustment reducing the excess of statutory over tax reserves in the computation of its year-end 1987 equity base under section 809(b) in the amount of $2,581,081 and its year-end 1988 equity base under section 809(b) in the amount of $3,397,548. Moreover, as a result of allowance of the reserves computed on the basis of prevailing standards listed above, Taxpayer is entitled to a corresponding adjustment increasing its policy interest under section 812(b)(2) in the amount of $131,559.

Finally, the Internal Revenue Service has denied Taxpayer's request to correct its reserve calculations for prior years, and as a result has imposed a reserve strengthening deduction for the year 1988 in the amount of $34,260. Taxpayer is entitled to correct its reserve calculations for prior years, and the issue concerning the allowance of the strengthening deduction should be resolved in accordance with the resolution of that issue in prior years.

While Taxpayer should be allowed to use the reserves listed above, the Internal Revenue Service has failed to permit use of such reserves, resulting in an overpayment of Taxpayer's Federal income taxes for 1988. Claim is hereby made for refund of that overpayment in tax.

5. "58 CSO" Permanent Life Insurance Reserves

On its 1988 Federal income tax return, Taxpayer reported life insurance reserves for its 1984 through 1987 issues of "58 CSO" permanent life insurance policies computed using the 1958 CSO mortality table and a 4.5 percent assumed interest rate. For 1988 issues of these policies, Taxpayer calculated reserves using the 1958 CSO mortality table and a 7.77 percent assumed interest rate. On audit, the Internal Revenue Service took the position that, for 1984 and 1985 issues of these contracts, the prevailing valuation standard is the 1958 CSO table and a 6 percent assumed interest rate. For 1986 issues of these contracts, the Internal Revenue Service took the position that the prevailing valuation standard is the 1980 CSO table and a 6 percent assumed interest rate. For 1987 issues of these contracts, the Internal Revenue Service took the position that the prevailing valuation standard is the 1980 CSO table and a 5.5 percent assumed interest rate. For 1988 issues of these contracts, the Internal Revenue Service took the position that the prevailing valuation standard is the 1980 CSO table and a 7.77 percent assumed interest rate. The amounts of the originally reported reserves are as follows:

| | January 1, 1988 | December 31, 1988 |
|---|---|---|
| 1984, 1985 Issues | $198,739,052 | $272,057,738 |
| 1986, 1987 Issues | $ 83,840,291 | $120,782,652 |
| 1988 Issues | $ -0- | $ 4,359,094 |

The amounts of the reserves allowed by the Internal Revenue Service are as follows:

| | January 1, 1988 | December 31, 1988 |
|---|---|---|
| 1984, 1985 Issues | $171,767,982 | $242,111,133 |
| 1986, 1987 Issues | $ 78,285,511 | $108,416,599 |
| 1988 Issues | $ -0- | $ 4,316,583 |

The Internal Revenue Service has disallowed Taxpayer's use of the reserves computed on the basis of the prevailing standards listed above. These reserves meet all of the requirements necessary to constitute "life insurance reserves" within the meaning of sections 816 and 807, and are properly computed under section 807. Consequently, Taxpayer is entitled to use such reserves in computing its tax due for 1988, and is entitled to an additional reserve increase deduction for 1988.

In addition, as a result of allowance of the reserves computed on the basis of prevailing standards listed above, Taxpayer is entitled to a corresponding adjustment reducing the excess of statutory over tax reserves in the computation of its year-end 1987 equity base under section 809(b) in the amount of $32,525,850 and its year-end 1988 equity base under section 809(b) in the amount of $42,355,169. Moreover, as a result of allowance of the reserves computed on the basis of prevailing standards listed above, Taxpayer is entitled to a corresponding adjustment increasing its policy interest under section 812(b)(2) in the amount of $1,647,748.

While Taxpayer should be allowed to use the reserves listed above, the Internal Revenue Service has failed to permit use of such reserves, resulting in an overpayment of Taxpayer's Federal income taxes for 1988. Claim is hereby made for refund of that overpayment in tax.

6. Term Conversion Reserves

On its 1988 Federal income tax return, Taxpayer reported life insurance reserves under certain contracts with respect to term conversion provisions. Under these provisions, for which there was a separately identified premium or charge, the insured had the ability to convert the term policy into a permanent policy at a standard rate, regardless of any medical or physical impairment. On its return for 1988, Taxpayer reported these term conversion reserves as reserves for "qualified supplemental benefits" within the meaning of section 807(e)(3). On audit, the Internal Revenue Service disallowed those reserves. The amounts of the term conversion reserves in dispute are as follows:

| | January 1, 1988 | December 31, 1988 |
|---|---|---|
| Individual | $ n/a | $21,634,297 |
| Group | $ n/a | $ 6,762,378 |

These term conversion reserves meet all of the requirements necessary to constitute "life insurance reserves" within the meaning of section 816 and are properly computed under section 807. In addition, the reserves qualify as "life insurance reserves" under section 807(c)(1) and as reserves for "qualified supplemental benefits" under section 807(e)(3). Consequently, Taxpayer is entitled to use such reserves in computing its tax due for 1988. (In the alternative, if the term conversion reserves are disallowed, Taxpayer is entitled to an adjustment that would prevent Taxpayer from being denied fresh start benefits to which it is entitled under section 216(b)(1) of the Deficit Reduction Act of 1984.)

In addition, as a result of allowance of the term conversion reserves listed above, Taxpayer is entitled to a corresponding adjustment reducing the excess of statutory over tax reserves in the computation of its year-end 1988 equity base under section 809(b) in the amount

of $28,396,675. Moreover, as a result of allowance of the reserves computed on the basis of prevailing standards listed above, Taxpayer is entitled to a corresponding adjustment increasing its policy interest under section 812(b)(2) in the amount of $650,644.

While Taxpayer should be allowed to use the reserves listed above, the Internal Revenue Service has failed to permit use of such reserves, resulting in an overpayment of Taxpayer's Federal income taxes for 1988. Claim is hereby made for refund of that overpayment in tax.

7. Group Annuity Contract Reserves

On its 1988 Federal income tax return, Taxpayer reported life insurance reserves under certain group annuity contracts. Under these group annuity contracts, which are issued to employers, Taxpayer issues annuity certificates that evidence its obligation to pay annuity benefits to retired employees. Taxpayer holds reserves with respect to its obligation to provide these annuity benefits. On its return for 1988, Taxpayer reported these group annuity reserves as life insurance reserves under section 807(c)(1). In computing these reserves, Taxpayer applied the section 807(d) "annual statement cap" by comparing tax reserves to statutory reserves at the group annuity contract level, rather than at the individual certificate level. On audit, the Internal Revenue Service required the comparison between tax reserves and statutory reserves on a certificate-by-certificate basis, rather than on the group annuity contract basis. On this basis, the Internal Revenue Service disallowed a portion of the group annuity reserves. The amounts of the group annuity reserves that were disallowed and that are in dispute are as follows:

| January 1, 1988 | December 31, 1988 |
|---|---|
| $ n/a | $880,000 |

These group annuity reserves meet all of the requirements necessary to constitute "life insurance reserves" within the meaning of section 816. In addition, the reserves qualify as "life

insurance reserves" under section 807(c)(1) and are properly computed under section 807(d). Consequently, Taxpayer is entitled to use such reserves in computing its tax due for 1988.

Moreover, as a result of allowance of the reserves listed above Taxpayer is entitled to a corresponding adjustment reducing the excess of statutory over tax reserves in the computation of its year-end 1988 equity base under section 809(b) in the amount of $880,000.

While Taxpayer should be allowed to use the reserves listed above, the Internal Revenue Service has failed to permit use of such reserves, resulting in an overpayment of Taxpayer's Federal income taxes for 1988. Claim is hereby made for refund of that overpayment in tax.

8. Deposit Administration Contract Dividends

On its Federal income tax return for 1988, Taxpayer claimed a deduction for "paid or accrued" policyholder dividends on Deposit Administration contracts computed using its accrued dividends liability determined on the basis of the recurring item exception of section 461(h)(3). Under the recurring item exception, Taxpayer is entitled to compute its deductions taking into account the portion of each year-end's accrued policyholder dividends liability that is paid within 8 1/2 months after the end of the year.

In computing its deduction, Taxpayer reflected the $2,599,242 decrease in its year-end policyholder dividends liability (payable by the following September 15th), from $12,674,689 as of December 31, 1987, to $10,075,447 as of December 31, 1988. On audit, the Internal Revenue Service disallowed the claimed accrual of policyholder dividends, and increased Taxpayer's policyholder dividends deduction claimed for 1988 by the amount of the claimed decrease in the accrued policyholder dividends liability, or $2,599,242.

The recurring item exception provides that an item shall be treated as incurred during any taxable year if (1) the all events test is met, (2) economic performance occurs within the shorter

of a reasonable period after the taxable year, or 8 1/2 months after the close of the taxable year, (3) such item is recurring in nature and consistently treated, and (4) such item is not material, or the accrual of such item in the year in which the all-events test is met results in a more proper match against income than accruing such item in the year in which economic performance occurs. See section 461(h)(3). All four requirements are satisfied here, and therefore the accrued liability determined under the recurring item exception must be used to compute the amount of Taxpayer's policyholder dividends deduction for 1988.

In addition, Taxpayer is entitled to a section 481 adjustment for 1988 as a result of the correction of its accounting method in 1986 to the treatment required by the recurring item exception. Section 481 requires that Taxpayer be allowed to deduct a section 481 adjustment equal to its year-end 1985 accrual balance under the recurring item exception, in the amount of $13,010,225. The section 481 adjustment is claimed over a spread period that includes 1988. Claim is hereby made for refund of Taxpayer's overpayment of tax attributable to this issue.

9. Section 809 Equity Base Adjustments

Section 809 adjusts the life insurance company taxable income of mutual life insurance companies based on a comparison of the relative returns on equity of the 50 largest stock life insurance companies and all mutual life insurance companies. Section 809(a), first, provides that the deduction allowed mutual life insurance companies for policyholder dividends (and in some instances the deduction for reserve increases) must be reduced by the "differential earnings amount," which equals the "average equity base" multiplied by the "differential earnings rate." Section 809(f), second, provides for certain adjustments based upon the "recomputed differential earnings amount." Annual statement accounting treatment is controlling for section 809

purposes.

The "average equity base" for each year is the average of the equity base for that year and the equity base for the preceding year. Section 809(b)(1). The starting point for determining the equity base for a year is the surplus and capital reported on the annual statement for the year. From this amount, certain adjustments are required, such as for "nonadmitted financial assets," for any "voluntary reserve," and for the excess of statutory reserves over tax reserves. Section 809(b).

On its Federal income tax return for the year 1988, Taxpayer properly reported its average equity base. However, the Internal Revenue Service has adjusted Taxpayer's average equity base based upon the following issues. Taxpayer disagrees with each of these adjustments.

On its 1987 and 1988 annual statements, Taxpayer wrote down "no-bonds" to fair market value, which reduced nonadmitted financial assets. The term "no-bond" refers to bonds designated by the National Association of Insurance Commissioners ("NAIC") as ineligible for amortization by insurance companies. Consistently, on its 1988 Federal income tax return, Taxpayer reduced its year-end 1987 and 1988 equity bases by the amounts of the write-down. On audit, the Internal Revenue Service treated the amounts of the reduction as a non-admitted financial asset, thereby increasing Taxpayer's reported equity bases. The Internal Revenue Service increased Taxpayer's year-end 1987 equity base by $35,058,049 and its year-end 1988 equity base by $25,654,690.

On its 1987 and 1988 annual statements, Taxpayer wrote down the book value of certain bonds reported in Schedule D, Part I to account for the Taxpayer's "unrealized loss on bonds." Consistently, on its 1988 Federal income tax return, Taxpayer's year-end 1987 and 1988 equity bases were reduced by the amounts of the "unrealized loss on bonds." On audit, the Internal

Revenue Service treated the amounts of the reduction as a non-admitted financial asset, thereby increasing Taxpayer's reported equity bases. The Internal Revenue Service increased Taxpayer's year-end 1987 equity base by $21,717,666 and its year-end 1988 equity base by $28,444,499.

(The Internal Revenue Service also has made adjustments to eliminate duplication between its "No-Bonds" adjustments and its "unrealized loss on bonds" adjustments. These adjustments decreased Taxpayer's year-end 1987 equity base by $2,497,991 and its year-end 1988 equity base by $2,363,292. Because those adjustments are incorrect and should be reversed, the duplication adjustments also should be rejected.)

On its 1987 and 1988 annual statements, Taxpayer also wrote down the book value of certain preferred stock to account for the Taxpayer's "unrealized loss on preferred stock." Consistently, on its 1988 Federal income tax return, Taxpayer's year-end 1987 and 1988 equity bases were reduced by the amounts of the "unrealized loss on preferred stock." On audit, the Internal Revenue Service treated the amounts of the reduction as a non-admitted financial asset, thereby increasing Taxpayer's reported equity bases. The Internal Revenue Service increased Taxpayer's year-end 1987 equity base by $3,895,813 and its year-end 1988 equity base by $6,619,507.

Taxpayer is entitled to its tax return treatment of the items described above. Section 809(g)(3) requires that all determinations made under section 809 "shall be made on the basis of the amounts required to be set forth on the annual statement," and Taxpayer properly reported the items described above in its annual statement. The NAIC requires that certain no-bonds be reduced in value to at least a specified value, and Taxpayer was required to reduce the value of other bonds and preferred stock that it determined to be permanently impaired during the tax year. Furthermore, generally accepted accounting principles ("GAAP") must be applied in the

absence of specific rules, and GAAP requires that permanently impaired investments must be written down.

On its annual statements for 1987 and 1988, Taxpayer reported its liability for resisted death claims, and used those amounts in computing its year-end 1987 and 1988 equity bases. On audit, the Internal Revenue Service disallowed a portion of Taxpayer's reported liability as a deduction for income tax purposes and made a related adjustment to the year-end 1987 and 1988 equity bases, treating a portion of such liability as a voluntary reserve. The Internal Revenue Service increased the year-end 1987 equity base by $2,021,742 and the year-end 1988 equity base by $3,562,770. The Internal Revenue Service improperly increased the year-end 1987 and 1988 equity bases by such resisted claim amounts. The Internal Revenue Service incorrectly substituted tax accounting standards for annual statement accounting rules. Life insurers are required to establish liabilities for resisted claims. In fact, various schedules to the annual statement make specific reference to resisted claims. Thus, the adjustments made to the equity bases should be reversed, and the section 809 equity bases should be reduced by the amounts in issue.

Lastly, based on various reserve adjustments that are characterized as erroneous adjustments in this and related refund claims, the Internal Revenue Service has increased Taxpayer's section 809 equity bases for year-end 1987 and 1988 by the excess of statutory reserves over tax reserves. Because those reserve adjustments are erroneous for the reasons described in this and related refund claims, there is no such excess, there is no basis for such adjustment.

Based on the foregoing, claim is hereby made for refund of all overpayments in tax due to section 809 equity base adjustments.

10. <u>Dividends Received Deduction Related to the Separate Accounts</u>

Under section 805(a)(4), life insurance companies are allowed a dividends received deduction with respect to the "company's share" of the dividends received. Section 812 provides rules to determine the amount of the "company's share" for each year. Under section 812(a)(1), the "company's share" equals the company's share of the net investment income for the year divided by the net investment income for the year.

The company's share of the net investment income for the year is defined by section 812(b)(1) as the net investment income for the year minus certain specified reductions, one of which is the "policy interest" for the year. Section 812(b)(2)(A) defines policy interest to include, among various items, the "required interest" for the year. Taxpayer claims that it is entitled to properly compute the "required interest" for separate accounts under section 812 for the year 1988. For separate accounts, neither the prevailing State assumed interest rate nor the applicable Federal rate are appropriate to compute required interest, and section 812(b)(2) requires that "another appropriate rate" be used.

Under pre-Deficit Reduction Act of 1984 ("1984 Act") law, detailed treasury regulations specified how required interest was computed in the case of separate accounts. Treasury Regulation section 1.801-8(e). In computing the required interest for separate accounts under the prior law, it was mandatory that life insurance companies use the method prescribed by Treasury Regulation section 1.801-8(e). This regulation continues to apply under the 1984 Act, and provides the correct manner of computing the appropriate required interest rate under section 812(b)(2). TAM 200038008.

In its Federal income tax return filed for the year 1988, Taxpayer did not compute its separate account required interest in accordance with the requirements of section 812(b)(2) and

Treasury Regulations section 1.801-8(e). In this affirmative claim, Taxpayer seeks to correct its computation of separate account required interest and, thereby, to correct its calculation of the "company's share" for the year 1988. The amount of the separate account dividends received deduction claimed per the return was $2,657, and the revised amount reflecting the corrected separate account required interest calculations is $3,433,527. Thus, in computing separate account taxable income, Taxpayer is entitled to an increased deduction in the amount of $3,430,870.

For the reasons set forth above, Taxpayer is entitled to a refund of the overpayment in tax due to use of the corrected separate account dividends received deduction.

11. Tax Benefit Rule

Under section 809, for each year after 1983, mutual life insurance companies are required to adjust their taxable income by a "differential earnings amount" ("DEA"), which equals the company's "average equity base" for a year times the "differential earnings rate" ("DER") for that year. Section 809(a)(3). The DER for each year is computed as the "imputed earnings rate" for the year minus the "average mutual earnings rate" for the second preceding year. Section 809(c)(1). In this computation, the average mutual earnings rate for the second preceding year is used.

The DER for a year is recomputed in the following year, producing the recomputed DER. This calculation is made in the same manner as the calculation of the DER for any given year, except that the average mutual earnings rate for the given year is substituted for the average mutual earnings rate for the second preceding year. Section 809(f)(3). The recomputed DER for

a year is multiplied by each mutual company's average equity base for that year to calculate the company's "recomputed differential earnings amount." Section 809(f)(3).

If a mutual life insurance company's recomputed differential earnings amount for a year is greater than the originally computed differential earnings amount for that year, the difference is included in the company's life insurance gross income for the following year. If the company's recomputed differential earnings amount for a year is less than the originally computed differential earnings amount for that year, the difference is allowed to the company as a life insurance deduction for the following year. Section 809(f)(1), (2).

Under section 111(a), gross income "does not include income attributable to the recovery during the taxable year of any amount deducted in any taxable year to the extent such amount did not reduce the amount of tax" for the year in which the deduction was taken.

On its 1986 Federal income tax return, the Taxpayer reported a 1986 DER of 10.539 percent, and reported a 1986 DEA computed as the product of the 1986 DER of 10.539 percent times the Taxpayer's 1986 average equity base. The Taxpayer reflected the 1986 DEA in its 1986 taxable income by reducing the amount of its otherwise allowable policyholder dividends deduction.

On its 1987 Federal income tax return, the Taxpayer reported a 1986 recomputed DER of negative 1.695 percent, and a 1986 recomputed DEA computed as the product of the 1986 recomputed DER of negative 1.695 percent times the Taxpayer's 1986 average equity base. The Taxpayer claimed the difference between its 1986 DEA and its 1986 recomputed DEA as a deduction for the taxable year 1987 under Code section 809(f)(2).

The IRS has disallowed the portion of the Code section 809(f)(2) deduction attributable to the negative 1986 recomputed DER to which the Company is entitled for the year 1987. The

basis of the IRS's disallowance is its position that the 1986 recomputed DER cannot be a negative percentage, but must be considered to be zero.

The Company claims that its 1986 recomputed DER equals negative 1.695 percent. The grounds for the Company's position are the same as the arguments advanced by the taxpayers in American Mutual Life Ins. Co. v. United States, 93-2 U.S.T.C. (CCH) ¶ 50,652 (S.D. Iowa 1993), rev'd, 43 F.3d 1172 (8th Cir. 1994), cert. denied, 516 U.S. 930 (1995); Indianapolis Life Ins. Co. v. United States, 940 F. Supp. 1370 (S.D. Ind. 1996), aff'd, 115 F.3d 430 (7th Cir. 1997); and CUNA Mutual Life Ins. Co. v. United States, 39 Fed. Cl. 660 (1997), aff'd, 99-1 U.S.T.C. (CCH) ¶ 50,245 (Fed. Cir. 1999).

The tax benefit rule is a judicially created rule partially codified in section 111 of the Code that requires the exclusion of income from a transaction when deductions from the same transaction do not provide a tax benefit. The purpose of the rule is to alleviate "some of the inflexibilities of the annual accounting system" by more correctly measuring income and associated tax liability from a transaction when the annual accounting system would otherwise distort that measurement. See Hillsboro National Bank v. Commissioner, 460 U.S. 370, 377 (1983); Allstate Ins. Co. v. United States, 936 F.2d 1271 (Fed. Cir. 1991)

If the Company does not prevail on its claim relating to the negative differential for tax years 1985 and 1986, the measurement of income from the Company's equity returns pursuant to section 809 would be distorted in the absence of the application of the tax benefit exclusionary rule. This is because a portion of the average mutual earnings rate used to measure such returns would not be deductible in one year while directly related stock company returns used to measure mutual company equity returns would be included in income in subsequent years. By applying the tax benefit rule to exclude stock company returns in subsequent years to the extent

that no tax benefit was received from deduction of the average mutual earnings rate in an earlier year, mutual company equity returns are more accurately measured.

While not technically required in every circumstance, the tax benefit rule is sometimes expressed in terms of "recoveries." A "recovery" will invoke the application of the tax benefit rule, and a recovery will occur when an event occurs in the later year that is "fundamentally inconsistent" with the premise on which the earlier deduction was based. The exclusionary aspect of the tax benefit rule more generally requires the exclusion of an amount otherwise required to be included in income when a tax benefit was not derived from a related deduction involving the same transaction.

If the Taxpayer does not prevail on the negative DER issue, then the Company is entitled to exclude from income for the year 1988, under the tax benefit rule, a portion of the amount associated with the above-described prior year (1987) deductions that did not produce a tax benefit to the Taxpayer. The amount that must be excluded from income in such year constitutes a "recovery" and is based on "fundamentally inconsistent" events for purposes of the tax benefit rule. The "fundamentally inconsistent" event, and thus the "recovery," occurs as the full 1986 stock rate is used to compute the imputed rate for 1987. This is "fundamentally inconsistent" because the full 1986 mutual rate was not allowed to produce a tax benefit as a deduction in computing the 1986 recomputed DER (but rather a mutual rate reduced by 1.695%). This also is "fundamentally inconsistent" because, due to the different year rate comparison used to compute the 1986 recomputed DER, the amount of the section 809(f)(2) deduction attributable to 1.695% of the 1986 recomputed DER was not allowed to produce a tax benefit. To be consistent, as the 1986 stock rate is fully taken into account in the year 1988, the income for those years that constitutes the "recovery" should be excluded. The effect of the exclusion will be to more

accurately measure equity returns of the Taxpayer consistent with the intent of section 809 and the requirements of the tax benefit rule. (See the plaintiff's filings in *John Hancock Financial Services, Inc. and John Hancock Life Insurance Co. v. United States*, Court of Federal Claims No. 01-543T, for additional explanation of Taxpayer's position.)

The "recovery" that occurs for the year 1988 can be measured by "recalculating" the 1987 imputed earnings rate using an adjusted 1986 stock earnings rate of 18.584 percent (i.e., the announced rate of 20.279 percent reduced by 1.695 percent). Under the statutory formula, this will reduce the 1987 imputed earnings rate from 16.810 percent to a "recalculated" rate of 16.298 percent. In turn, under the statutory formula, this will reduce the 1987 recomputed differential earnings rate from 8.076 percent to a "recalculated" rate of 7.563 percent. Under this measure, the amount of the income recovery to be excluded for the year 1988 is computed by multiplying the difference between the 8.076 recomputed differential earnings rate and the 7.563 percent "recalculated" recomputed differential earnings rate for the year 1987 times the average equity base for that year.

Alternatively, the measure of the "recovery" that can occur for the year 1988, and which the Taxpayer is entitled to exclude from income under the tax benefit rule, is the entire amount associated with the above-described prior year deductions that did not produce a tax benefit to the Taxpayer in 1987. This amount must be excluded from income because it constitutes a "recovery" and is based on "fundamentally inconsistent" events for purposes of the tax benefit rule.

The Company's claim is supported by other legal and equitable doctrines that reinforce and supplement its position under the tax benefit rule.

12. Interest Netting

The Taxpayer claims that it is entitled to have its deficiency interest with respect to the year 1988 calculated in accordance with the interest netting procedures provided under section 6621(d).

13. Additional Claim Based on Credits and Credit and Loss Carryovers and Carrybacks

In subsequent computations, Taxpayer hereby claims its right to fully utilize all credits that arise in 1988 and all credit carryovers and carrybacks to 1988 from other years, to the extent such credits are available. In subsequent computations, Taxpayer also claims its right to fully utilize all operations loss carryovers and carrybacks to 1988 from other years, to the extent such carryovers and carrybacks are available.