Form **1120X** (Rev. December 2001) Department of the Treasury Internal Revenue Service

# Amended U.S. Corporation Income Tax Return

OMB No. 1545-0132

For tax year ending ▶ December 1990 (Enter month and year.)

Please Type or Print

Name: Massachusetts Mutual Life Insurance Company (Consolidated)

Employer identification number: 04-1590850

Number, street, and room or suite no. (If a P.O. box, see instructions.): 1295 State Street, E104

City or town, state, and ZIP code: Springfield, MA 01111

Telephone number (optional): (413) 744-7684

Enter name and address used on original return (If same as above, write "Same.")

Same

Internal Revenue Service Center where original return was filed ▶ Andover, MA

## Fill in Applicable Items and Use Part II To Explain Any Changes

**Part I** Income and Deductions (see instructions)

| | | (a) As originally reported or as previously adjusted | (b) Net change increase or decrease - explain in Part II | (c) Correct amount |
|---|---|---|---|---|
| 1 Total income ~~(Form 1120 or 1120-A, line 11)~~ | 1 | 6,888,919,706 | (26,603,447) | 6,862,316,259 |
| 2 Total deductions ~~(total of lines 27 and 29c, Form 1120, or lines 23 and 25c, Form 1120-A)~~ | 2 | 6,737,835,560 | 39,230,919 | 6,777,066,479 |
| 3 Taxable income. Subtract line 2 from line 1 | 3 | 151,084,146 | (65,834,366) | 85,249,780 |
| 4 Tax ~~(Form 1120, line 31, or Form 1120-A, line 27)~~ | 4 | 48,163,755 | (22,432,104) | 25,731,651 |

**Payments and Credits** (see instructions)

| | | (a) | (b) | (c) |
|---|---|---|---|---|
| 5a Overpayment in prior year allowed as a credit | 5a | 12,741,124 | | 12,741,124 |
| b Estimated tax payments | b | 19,217,371 | | 19,217,371 |
| c Refund applied for on Form 4466 | c | | | |
| d Subtract line 5c from the sum of lines 5a and 5b | d | 31,958,495 | | 31,958,495 |
| e Tax deposited with Form 7004 | e | | | |
| f Credit from Form 2439 | f | | | |
| g Credit for Federal tax on fuels | g | | | |

| | | |
|---|---|---|
| 6 Tax deposited or paid with (or after) the filing of the original return | 6 | 22,085,502 |
| 7 Add lines 5d through 6, column (c) | 7 | 54,043,997 |
| 8 Overpayment, if any, as shown on original return or as later adjusted | 8 | 5,880,242 |
| 9 Subtract line 8 from line 7 | 9 | 48,163,755 |

**Tax Due or Overpayment** (see instructions)

| | | |
|---|---|---|
| 10 **Tax due.** Subtract line 9 from line 4, column (c). If paying by check, make it payable to the "**United States Treasury.**" ▶ | 10 | |
| 11 **Overpayment.** Subtract line 4, column (c), from line 9 ▶ | 11 | 22,432,104 * |
| 12 Enter the amount of line 11 you want: **Credited to 20 estimated tax** ▶ **Refunded** ▶ | 12 | 22,432,104 * |

**Sign Here**

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ [signature] Signature of officer — Date 12/22/03 — ▶ Sr. Vice President Title

**Paid Preparer's Use Only**

Preparer's signature ▶ | Date | Check if self-employed ☐ | Preparer's SSN or PTIN

Firm's name (or yours if self-employed), address, and ZIP code ▶ | EIN | Phone no.

**For Paperwork Reduction Act Notice, see page 4.** Form **1120X** (Rev. 12-2001)

JSA 2C1820 1.000

* Plus any other amount legally refundable, plus interest.

**Part II** **Explanation of Changes to Items in Part I** (Enter the line number from page 1 for the items you are changing, and give the reason for each change. Show any computation in detail. Also, see **What To Attach** on page 3 of the instructions.)

If the change is due to a net operating loss carryback, a capital loss carryback, or a general business credit carryback, see **Carryback Claims** on page 3, and check here . . . ▶ ☐

1. See attached "Form 1120L Recomputation Per Claim for Refund."

2. See attached "Addendum to 1990 Claim for Refund."

**Massachusetts Mutual Life Ins. Co. -- Tax Year 1990**
**Form 1120L Recomputation Per Claim for Refund**

| | PER RAR | ADJUSTMENTS | PER APPEALS | ADJUSTMENTS | PER CLAIM |
|---|---|---|---|---|---|
| **Tax Computation** | | | | | |
| 1. LICTI | | | | | |
| MassMutual Life Ins. Co. | $176,944,771 | $32,061,951 | $144,882,820 | | $79,048,454 |
| MML Pension | $2,316,874 | | $2,316,874 | | $2,316,874 |
| MML Baystate | $1,196,560 | | $1,196,560 | | $1,196,560 |
| Less: SIA-DRD | | | ($156,309) | | ($156,309) |
| MML Life | $2,844,201 | | $2,844,201 | | $2,844,201 |
| Mass Life of NY | $0 | | $0 | | $0 |
| 4. LICTI | $183,302,406 | $32,218,260 | $151,084,146 | | $85,249,780 |
| 5. Regular Tax | | | | | |
| LICTI | $183,302,406 | | $151,084,146 | | $85,249,780 |
| Less: NCG @ 31.6% | $2,156,008 | | $2,156,008 | | $2,156,008 |
| LICTI @ 34% | $181,146,398 | | $148,928,138 | | $83,093,772 |
| Tax at 31.6% Rate | $681,299 | | $681,299 | | $681,299 |
| Tax at 34% Rate | $61,589,775 | | $50,635,567 | | $28,251,882 |
| Total Regular Tax | $62,271,074 | | $51,316,866 | | $28,933,181 |
| 6. Total Credits | $3,355,244 | | $3,355,244 | | $3,355,244 |
| 7. Balance | $58,915,830 | | $47,961,622 | | $25,577,937 |
| 8. Recapture Taxes | $13,287 | | $13,287 | | $13,287 |
| 9. Environmental Tax | | | | | |
| Line 1 | $183,458,593 | | $151,240,333 | | $85,405,967 |
| Line 4 | $191,590,462 | | $159,372,202 | | $93,537,836 |
| Line 5a -- ANBI | $144,507,433 | | $144,507,433 | | $144,507,433 |
| Line 5b | $0 | | $0 | | $50,969,597 |
| Line 6 | $191,590,462 | | $159,372,202 | | $119,022,634 |
| Line 16 | $227,509 | | $188,847 | | $140,427 |
| Environmental Tax | $227,509 | $38,662 | $188,847 | | $140,427 |
| 10. Total Tax | $59,156,625 | $10,992,870 | $48,163,755 | | $25,731,651 |
| 11. Tax Per Return | $26,078,253 | | | | |
| Increase in Tax | $3,363,555 | | | | |
| Tax as Last Adjusted | $29,441,808 | | $29,441,808 | | $48,163,755 |
| 12. Overassessment or (Deficiency) | ($29,714,817) | $10,992,870 | ($18,721,947) | | $22,432,104 |

| | PER RAR | ADJUSTMENTS | PER APPEALS | ADJUSTMENTS | PER CLAIM |
|---|---|---|---|---|---|
| **Schedule A -- LICTI** | | | | | |
| 1. Gross Premiums | $4,614,673,149 | $0 | $4,614,673,149 | ($26,603,447) | $4,588,069,702 |
| Less Return Premiums | $0 | | $0 | | $0 |
| | $4,614,673,149 | | $4,614,673,149 | | $4,588,069,702 |
| 2. Decrease in Reserves | $0 | | $0 | | $0 |
| 3. Sec. 807(f)(1)(B)(ii) | $0 | | $0 | | $0 |
| 5. Investment Income | $2,111,111,634 | | $2,111,111,634 | | $2,111,111,634 |
| 6. Net Capital Gain | $2,403,341 | $0 | $2,403,341 | | $2,403,341 |
| 7. Other Amounts | $80,827,884 | $116,608 | $80,944,492 | | $80,944,492 |
| 8. Gross Income | $6,809,016,008 | | $6,809,132,616 | | $6,782,529,169 |
| 9. Death Benefits | $3,305,997,245 | $0 | $3,305,997,245 | ($8,618,679) | $3,297,378,566 |
| 10. Increase in Reserves | $1,791,665,489 | $16,763,687 | $1,808,429,176 | ($19,547,159) | $1,788,882,017 |
| 11. Sec. 807(f)(1)(B)(ii) | $2,120,332 | | $2,120,332 | | $2,120,332 |
| 12. Policyholder Dividend | $576,933,429 | ($1,614,142) | $575,319,287 | | $575,319,287 |
| 13. Assumption Reins | $0 | | $0 | | $0 |
| 14. Reimbursable Divs | $0 | | $0 | | $0 |
| 16. Other Deductions | $953,780,256 | $11,756,876 | $965,537,132 | $4,587,562 | $970,124,694 |
| Negative RDER | | | | $62,809,195 | $62,809,195 |
| 17. DRD | $1,929,937 | | $7,202,075 | | $7,202,075 |
| 18. Operations Loss | $0 | | $0 | | $0 |
| 19. Total Deductions | $6,632,426,688 | $32,178,559 | $6,664,605,247 | | $6,703,836,166 |
| 20. Gain From Operations | $176,589,320 | ($32,061,951) | $144,527,369 | | $78,693,003 |
| 21.b. Separate Account | $355,451 | | $355,451 | | $355,451 |
| 22. LICTI | $176,944,771 | ($32,061,951) | $144,882,820 | | $79,048,454 |
| **Schedule B -- Increase In Reserves** | | | | | |
| JANUARY 1, 1990 | | | | | |
| 1. Section 807(c)(1) | $11,727,842,438 | | $11,727,842,438 | | $11,727,842,438 |
| 2. Section 807(c)(2) | $121,939,114 | | $121,939,114 | | $121,939,114 |
| 3. Section 807(c)(3) | $108,297,345 | | $108,297,345 | | $108,297,345 |
| 4. Section 807(c)(4) | $7,146,000,107 | | $7,146,000,107 | | $7,146,000,107 |
| 5. Section 807(c)(5) | $274,198,805 | | $274,198,805 | | $274,198,805 |
| 6. Section 807(c)(6) | $11,445,401 | | $11,445,401 | | $11,445,401 |
| | $19,389,723,210 | ($33,769,253) | $19,355,953,957 | $8,098,996 | $19,364,052,953 |
| DECEMBER 31, 1990 | | | | | |
| 1. Section 807(c)(1) | $12,503,062,011 | | $12,503,062,011 | | $12,503,062,011 |
| 2. Section 807(c)(2) | $121,905,192 | | $121,905,192 | | $121,905,192 |
| 3. Section 807(c)(3) | $121,660,729 | | $121,560,729 | | $121,660,729 |
| 4. Section 807(c)(4) | $8,133,480,761 | | $8,133,480,761 | | $8,133,480,761 |
| 5. Section 807(c)(5) | $266,654,235 | | $266,654,235 | | $266,654,235 |
| 6. Section 807(c)(6) | $36,701,556 | | $36,701,556 | | $36,701,556 |
| | $21,183,464,484 | ($17,009,053) | $21,166,455,431 | ($11,533,699) | $21,154,921,732 |

| | PER RAR | ADJUSTMENTS | PER APPEALS | ADJUSTMENTS | PER CLAIM |
|---|---|---|---|---|---|
| **Schedule B -- (continued)** | | | | | |
| 7. End of Year Total | $21,183,464,484 | ($17,009,053) | $21,166,455,431 | | $21,154,921,732 |
| 9. Policyholders T/E Int | $2,075,785 | | $2,072,298 | | $1,986,762 |
| 10. Balance | $21,181,388,699 | ($17,005,566) | $21,164,383,133 | | $21,152,934,970 |
| 11. Adjustment | $0 | | $0 | | $0 |
| 12. Balance | $21,181,388,699 | | $21,164,383,133 | | $21,152,934,970 |
| 13. | $0 | | $0 | | $0 |
| 14. | $1,791,665,489 | $16,763,687 | $1,808,429,176 | ($19,547,159) | $1,788,882,017 |
| **Schedule C -- Gross Investment Income** | | | | | |
| 1. Interest | $1,923,749,081 | $0 | $1,923,749,081 | | $1,923,749,081 |
| 2. Dividends | $19,982,900 | | $19,982,900 | | $19,982,900 |
| 3. Rents | $76,784,537 | | $76,784,537 | | $76,784,537 |
| 4. Royalties | $65,374 | | $65,374 | | $65,374 |
| 5. Leases, etc. | $3,818,500 | | $3,818,500 | | $3,818,500 |
| 6. STCG over LTCL | $0 | | $0 | | $0 |
| 7. Noninsurance Income | $86,711,242 | | $86,711,242 | | $86,711,242 |
| 8. Investment Income | $2,111,111,634 | | $2,111,111,634 | | $2,111,111,634 |
| 9. T/E Interest | $2,546,931 | | $2,546,931 | | $2,546,931 |
| 10. Total | $2,113,658,565 | | $2,113,658,565 | | $2,113,658,565 |
| 11. 100% Dividends | $0 | | $0 | | $0 |
| 12. Gross Inv Income | $2,113,658,565 | | $2,113,658,565 | | $2,113,658,565 |
| **Schedule E -- Policyholder Dividends** | | | | | |
| 1. Paid or Accrued | $497,331,638 | ($1,614,142) | $495,717,496 | | $495,717,496 |
| 2. Excess Interest | $26,449,858 | | $26,449,858 | | $26,449,858 |
| 3. Premium Adjustments | $35,738,323 | | $35,738,323 | | $35,738,323 |
| 4. Experience Refunds | $17,413,610 | | $17,413,610 | | $17,413,610 |
| 5. Total | $576,933,429 | | $575,319,287 | | $575,319,287 |
| 6. DEA | $0 | | $0 | | $0 |
| 7. Deductible Dividends | $576,933,429 | ($1,614,142) | $575,319,287 | | $575,319,287 |
| 8. | $0 | | $0 | | $0 |
| 9. Deductible Percentage | 100.0000000% | | 100.0000000% | | 100.0000000% |
| **Schedule F -- Section 809 DEA** | | | | | |
| DECEMBER 31, 1989 | | | | | |
| 1. | $1,124,773,746 | | $1,124,773,746 | | $1,124,773,746 |
| 2. | $81,283,264 | | $81,283,264 | | $81,283,264 |
| 3. | $232,578,651 | | $232,578,651 | | $232,578,651 |
| 4. | $17,407,158 | | $17,407,158 | | $17,407,158 |
| 5. | $227,985,941 | | $227,985,941 | | $227,985,941 |
| 6. | $3,668,344 | | $3,668,344 | | $3,668,344 |
| 7. | $257,812,661 | | $257,812,661 | | $257,812,661 |
| 8.a. | $1,945,509,765 | $31,512,923 | $1,977,022,688 | ($128,305,020) | $1,848,717,668 |
| 8.b. | $0 | | $0 | | $0 |
| 8.c. | $1,945,509,765 | | $1,977,022,688 | | $1,848,717,668 |

| | PER RAR | ADJUSTMENTS | PER APPEALS | ADJUSTMENTS | PER CLAIM |
|---|---|---|---|---|---|
| **Schedule F -- (continued)** | | | | | |
| DECEMBER 31, 1990 | | | | | |
| 1. | $1,192,143,880 | | $1,192,143,880 | | $1,192,143,880 |
| 2. | $121,943,952 | | $121,943,952 | | $121,943,952 |
| 3. | $309,108,544 | | $309,108,544 | | $309,108,544 |
| 4. | $15,396,347 | | $15,396,347 | | $15,396,347 |
| 5. | $162,828,671 | | $162,828,671 | | $162,828,671 |
| 6. | $47,864,243 | | $47,864,243 | | $47,864,243 |
| 7. | $279,739,181 | | $279,739,181 | | $279,739,181 |
| 8.a. | $2,129,024,818 | $14,680,875 | $2,143,705,693 | ($200,338,150) | $1,943,367,543 |
| 8.b. | $0 | | $0 | | $0 |
| 8.c. | $2,129,024,818 | | $2,143,705,693 | | $1,943,367,543 |
| 9. Total | $4,074,534,583 | | $4,120,728,381 | | $3,792,085,211 |
| 10. 50% of Total | $2,037,267,292 | | $2,060,364,191 | | $1,896,042,606 |
| 11. | $0 | | $0 | | $0 |
| 12. | $2,037,267,292 | | $2,060,364,191 | | $1,896,042,606 |
| 13. | $0 | | $0 | | $0 |
| 14. Average Equity Base | $2,037,267,292 | | $2,060,364,191 | | $1,896,042,606 |
| 15. Times DER = DEA | $0 | $0 | $0 | | $0 |
| **Schedule G -- Dividends and DRD** | | | | | |
| 10. Gross DRD | $10,432,905 | $0 | $10,432,905 | | $10,432,905 |
| 11. Company Share | 18.49856189% | | 18.63547211% | | 21.99388105% |
| 12. | $1,929,937 | | $1,944,221 | | $2,294,601 |
| 13. | $0 | | $0 | | $0 |
| 14. | | | | | |
| 14.a. SIA-DRD | | $5,257,854 | $5,257,854 | | $5,257,854 |
| 15. | $1,929,937 | $5,272,138 | $7,202,075 | | $7,552,455 |

| | PER RAR | ADJUSTMENTS | PER APPEALS | ADJUSTMENTS | PER CLAIM |
|---|---|---|---|---|---|
| **Schedule K -- Policyholders Share** | | | | | |
| 1. GII | $2,113,658,565 | | $2,113,658,565 | | $2,113,658,565 |
| 2. Policy Interest | $1,490,362,980 | | $1,485,445,842 | | $1,414,411,968 |
| 3. Balance | $623,295,585 | | $628,212,723 | | $699,246,597 |
| 4. Gross Income | $6,776,245,416 | | $6,776,362,024 | | $6,749,758,577 |
| 5. T/E Interest | $2,546,931 | | $2,546,931 | | $2,546,931 |
| 6. Total | $6,778,792,347 | | $6,778,908,955 | | $6,752,305,508 |
| 7. Reserve Increase | $1,793,741,274 | | $1,810,501,474 | | $1,790,868,779 |
| 8. | $4,985,051,073 | | $4,968,407,481 | | $4,961,436,729 |
| 9. Investment Inc Ratio | 12.503294% | | 12.644147% | | 14.093631% |
| 10. Policyholder Dividends | $576,933,429 | | $575,319,287 | | $575,319,287 |
| 11. Excess Interest | $26,449,858 | | $26,449,858 | | $26,449,858 |
| 12. | $12,890,298 | | $12,189,290 | | $12,189,290 |
| 13. | $21,717,994 | | $18,594,740 | | $18,594,740 |
| 14. | $35,738,323 | | $25,006,336 | | $25,006,336 |
| 15. Total | $96,796,473 | | $82,240,224 | | $82,240,224 |
| 16. | $480,136,956 | | $493,079,063 | | $493,079,063 |
| 17. | $60,032,935 | | $62,345,639 | | $69,492,745 |
| 18. | $1,490,362,980 | | $1,485,445,842 | | $1,414,411,968 |
| 19. | $1,550,395,915 | | $1,547,791,481 | | $1,483,904,713 |
| 20. GII | $2,113,658,565 | | $2,113,658,565 | | $2,113,658,565 |
| 21. Net Invest Income | $1,902,292,709 | | $1,902,292,709 | | $1,902,292,709 |
| 22. Policyholder Share | $1,550,395,915 | | $1,547,791,481 | | $1,483,904,713 |
| 23. Company Share | $351,896,794 | | $354,501,227 | | $418,387,996 |
| 24. Total Percentage | 100.00000000% | | 100.00000000% | | 100.00000000% |
| 25. Company Percentage | 18.49856189% | | 18.63547211% | | 21.99388105% |
| 26. Policyholder Percent | 81.50143811% | | 81.36452789% | | 78.00611895% |
| **Schedule L -- Policy Interest** | | | | | |
| 1. | $1,429,304,830 | ($1,092,876) | $1,428,211,954 | ($71,033,874) | $1,357,178,080 |
| 2. | $26,449,858 | | $26,449,858 | | $26,449,858 |
| 3. | $12,890,298 | | $12,189,290 | | $12,189,290 |
| 4. | $21,717,994 | | $18,594,740 | | $18,594,740 |
| 5. | $1,490,362,980 | | $1,485,445,842 | | $1,414,411,968 |
| **Schedule D -- Capital Gains and Losses** | | | | | |
| 1. Net STCG | $0 | | $0 | | $0 |
| Net STCL | $11,755,359 | | $11,755,359 | | $11,755,359 |
| 8. Net LTCG | $14,158,700 | $0 | $14,158,700 | | $14,158,700 |
| Net LTCL | $0 | | $0 | | $0 |
| 9. Net STG over LTCL | $0 | | $0 | | $0 |
| 10. Net Capital Gain | $2,403,341 | | $2,403,341 | | $2,403,341 |

| Adjustments Per Appeals Settlement | | | | | Adjustments Per Claim |
|---|---|---|---|---|---|
| Premium Income | | | | | |
| #2 -- MPP | $0 | (Reserved) | | | ($26,603,447) |
| | | | | | |
| Other Income | | | | | |
| #8 -- A&H IBNR | $0 | (No spread adj in 1990) | | | |
| 1988-89 Issue #16 | $116,608 | (Prior agreement) | | | |
| | $116,608 | | | | |
| Death Benefits | | | | | |
| #2 -- MPP | $0 | (Reserved) | | | ($8,618,679) |
| | | | | | |
| Capital Gain | | | | | |
| #1 -- Foreclosures | $0 | (Not an issue in 1990) | | | |
| #3 -- Daseke Note | $0 | (Not an issue in 1990) | | | |
| | $0 | | | | |
| Other Deductions | | | | | |
| #1 Depreciation | $0 | | | | |
| #4 -- Int on Def Comp | $0 | (Reserved) | | | $4,587,562 |
| #5 -- Roof Repairs | $0 | (MML conceded) | | | |
| #6 -- Treat Bad Debt | $0 | (Not an issue in 1990) | | | |
| #9 -- Losses Incurred | $5,271,621 | (MML conceded, but spread the 1990 adj.) | | | |
| #12 -- section 481 | $928,457 | (Spread adjustment) | | | |
| #23 -- RDER (below) | $5,496,672 | (Reserved) | | | |
| 1985-87 Issue #4 | $0 | (Reflected in RAR) | | | |
| 1988-89 Issue #6 | $60,126 | (Prior agreement) | | | |
| | $11,756,876 | | | | |
| | | | | | |
| #7 - SIA DRD | | | | | |
| MassMutual | $5,257,854 | (IRS conceded) | | | |
| MML Baystate | $156,309 | (IRS conceded) | | | |
| | | | | | |
| Policyholder Dividends | | | | | |
| #20 -- DA Contracts | ($1,614,142) | (IRS conceded) | | | |
| #21 -- Other Contracts | $0 | (Not an issue in 1990) | | | |
| | ($1,614,142) | | | | |

| Reserves | Beginning | Ending | | | |
|---|---|---|---|---|---|
| #2 -- MPP | $0 | $0 | (Reserved) | ($35,254,416) | ($47,463,654) |
| #8 -- A&H IBNR | $0 | $4,313,326 | (Spread BY bal) | | |
| #12 -- Int on Div Accums | $3,713,830 | $3,793,798 | (Settle per FSA) | | |
| #13 -- SWIL | $0 | $0 | (Reserved) | $3,455,974 | $2,778,751 |
| #14 -- 58 CSO | ($37,483,083) | ($25,720,799) | (Reserved PS) | $37,483,083 | $25,720,799 |
| #15 -- Term Conversions | $0 | $0 | (Reserved) | $1,454,355 | $2,370,607 |
| #16 -- Group Annuities | $0 | $0 | (Reserved) | $960,000 | $1,475,000 |
| #17 -- DA Contracts | $0 | $0 | (Reserved) | $0 | $3,584,798 |
| #18 -- LTD Claims | $0 | $604,622 | (Settle 50/50) | | |
| | $0 | $0 | | $0 | $0 |
| | ($33,769,253) | ($17,009,053) | | $8,098,996 | ($11,533,699) |

**Adjustments Per Appeals Settlement (continued)** | **Adjustments Per Claim**

| Policy Interest | | | Adjustments Per Claim |
|---|---|---|---|
| #12 -- Int on Div Accums | $297,918 | (Settle per FSA) | |
| #13 -- SWIL | $0 | (Reserved) | $137,194 |
| #14 -- 58 CSO | ($1,390,794) | (Reserved--"PS") | $1,390,794 |
| #15 -- Term Conversions | $0 | (Reserved) | $85,305 |
| #16 -- Group Annuities | $0 | (n/a) | |
| #17 -- DA Contracts | $0 | (Reserved) | $143,997 |
| #18 -- LTD Claims | $0 | (n/a) | |
| #19 -- Required Interest | $0 | (Reserved) | ($72,791,164) |
| | $0 | | |
| | $0 | | $0 |
| | ($1,092,876) | | ($71,033,874) |

| Equity Base | Beginning | Ending | | | |
|---|---|---|---|---|---|
| #8 -- A&H IBNR | $0 | ($4,313,326) | (Spread BY bal) | | |
| #12 -- Int on Div Accums | ($5,970,160) | ($6,121,976) | (Settle per FSA) | | |
| #13 -- SWIL | $0 | $0 | (Reserved) | ($3,455,974) | ($2,778,751) |
| #14 -- 58 CSO | $37,483,083 | $25,720,799 | (Reserved PS) | ($37,483,083) | ($25,720,799) |
| #15 -- Term Conversions | $0 | $0 | (Reserved) | ($1,454,355) | ($2,370,607) |
| #16 -- Group Annuities | $0 | $0 | (Reserved) | ($960,000) | ($1,475,000) |
| #17 -- DA Contracts | $0 | $0 | (Reserved) | $0 | ($3,584,798) |
| #18 -- LTD Claims | $0 | ($604,622) | (Settle 50/50) | | |
| #22 -- NO Bonds | $0 | $0 | (Reserved) | ($3,732,610) | ($1,516,452) |
| #22 -- Loss on Bonds | $0 | $0 | (Reserved) | ($56,632,744) | ($93,218,820) |
| #22 -- Duplication | $0 | $0 | (Reserved) | $874,331 | |
| #22 -- Daseke Note | $0 | $0 | (Reserved) | ($19,000,000) | ($20,000,000) |
| #22 -- Loss on Stock | $0 | $0 | (Reserved) | ($2,792,241) | ($7,208,680) |
| #22 -- Resisted Claims | $0 | $0 | (Reserved) | ($3,668,344) | ($7,022,243) |
| #22 -- Mort. Reserve | $0 | $0 | (Reserved) | $0 | ($35,442,000) |
| #22 -- Guarantee Fund | $0 | $0 | (Reserved) | | |
| | $0 | $0 | | | |
| | $0 | $0 | | $0 | $0 |
| | $31,512,923 | $14,680,875 | | ($128,305,020) | ($200,338,150) |

**Recomputed 1989 DEA** | **Adjustments Per Claim**

| | Per RAR | Per Appeals | | Adjustments Per Claim |
|---|---|---|---|---|
| Average Equity Base | $1,756,186,747 | $1,886,873,197 | | $1,886,873,197 |
| DER | 4.2060% | 4.2060% | | |
| DEA | $73,865,215 | $79,361,887 | | |
| | | | | |
| Average Equity Base | $1,756,186,747 | $1,886,873,197 | | $1,761,334,694 |
| Recomputed DER | 0.0000% | 0.0000% | (Reserved) | -3.566% |
| Recomputed DEA | $0 | $0 | | ($62,809,195) |
| | | | | |
| 808(f) Income | ($73,865,215) | ($79,361,887) | | |
| Reduction in Income | | ($5,496,672) | | |

**MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY**
**ADDENDUM TO 1990 CLAIM FOR REFUND**

This Addendum is annexed to and forms a part of the claim for refund filed on Form 1120X by Massachusetts Mutual Life Insurance Company, hereinafter referred to as "Taxpayer." Taxpayer has overpaid its Federal income tax for 1990 by $22,432,104. It hereby claims a refund in that amount, or such greater amount as is legally refundable, together with assessed interest, as well as statutory interest on the amount to be refunded.

Jurisdictional Statement

At all times during 1990 Taxpayer was a life insurance company as defined in section 816 of the Internal Revenue Code (hereinafter all references are to sections of the Internal Revenue Code as in effect for 1990, unless otherwise indicated). Taxpayer timely filed its Federal income tax return for 1990 and paid in full the tax liability reported on that return.

Upon audit of Taxpayer's return for the year 1990, a number of adjustments were proposed by the District Director's Office. Upon consideration of those proposed adjustments by the Taxpayer and the Boston Appeals Office of the Internal Revenue Service, a settlement on Form 870-AD was reached pursuant to which a deficiency of $18,721,948 in Federal income tax for 1990 was determined. On July 2, 1997, Taxpayer made an advance payment of $19,980,078 of tax, plus $14,094,490 of assessed interest, with respect to the year 1990.

As part of the agreement reached on the Form 870-AD, Taxpayer reserved the right to file a refund claim for 1990 with respect to certain issues. Those issues form the basis for this claim for refund.

This refund claim is timely filed pursuant to section 6511(c) and 6511(d)(2), which permit a refund claim to be filed before the expiration of six months after the expiration of the period for assessment. The period for assessment for the year 1990 was extended by means of Forms 872 and (pursuant to the most recently executed Form 872) did not expire any earlier than June 30, 2003, and the period for timely filing this refund claim thus extends at least through December 31, 2003.

Statement of Claim

The refund sought in this claim for refund is based on the following issues. With respect to each issue, Taxpayer incorporates herein by reference the relevant portions of its Protest filed with the Internal Revenue Service for the years 1990, 1991 and 1992 and dated August 29, 1997. Taxpayer is entitled to prevail with respect to each of these issues for the reasons set forth below.

1. Minimum Premium Plan Supplemental Premium

On its Federal income tax return for 1990, Taxpayer excluded "supplemental premiums" with respect to minimum premium plans from its premium income, and made consistent adjustments to death benefits and reserves. The Internal Revenue Service has disallowed this tax return treatment, making the following adjustments:

| Adjustment | Amount |
|---|---|
| Increase gross premiums | $ 26,603,447 |
| Increase death benefits | $ 8,618,679 |
| Increase beginning-of-year reserves | $ 35,254,416 |
| Increase year-end reserves | $ 47,463,654 |

A "minimum premium plan" is one where the employer agrees to pay with its own funds an "expected" amount of claims for health benefits, while Taxpayer agrees to pay claims in excess of the "expected" amount of claims. A "supplemental premium" is an amount intended to compensate Taxpayer for its obligation to pay extended benefit claims, and claims incurred prior to plan termination but not filed or processed until after termination. In 1990, Taxpayer excluded supplemental premiums from taxable income prior to plan termination.

Whether supplemental premiums must be treated as income prior to plan termination depends upon whether such premiums are accrued under the all-events test. Under such test, income is to be included under the accrual method "when all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy." Treas. Reg. § 1.446-1(c)(1)(ii).

Supplemental premiums are not due or payable prior to plan termination. Under the minimum premium plan, prior to termination, Taxpayer has not earned the supplemental premium, does not have any right to receive it, and has not actually received it. Prior to plan termination, all events necessary to fix Taxpayer's right to receive supplemental premiums have not occurred, and, therefore, Taxpayer is not required to accrue the supplemental premiums as income. Thus the Internal Revenue Service's adjustments should be rejected.

Accordingly, Taxpayer is entitled to a refund of all overpayments in tax due to the Internal Revenue Service's minimum premium plan adjustments.

2. <u>Interest on Deferred Compensation</u>

On its Federal income tax return for 1990, Taxpayer claimed, and the Internal Revenue Service allowed, deductions for interest with respect to non-qualified plans of deferred

compensation when such amounts of interest are paid to employees. However, Taxpayer is entitled to deductions for such interest as it credits the interest to the employees' deferred compensation accounts. For 1990, Taxpayer claims an additional deduction for interest credited in the amount of $4,587,562. The Internal Revenue Service has failed to allow that claim for an additional interest deduction.

While under section 404 deferred compensation may only be deducted when paid to an employee, interest is not compensation, and is thus deductible under section 805(a)(8) when Taxpayer's liability for the interest accrues. Section 404 does not for any reason prohibit the accrual of interest.

In Albertson's Inc. v. Commissioner, the Ninth Circuit originally held that a corporation could currently deduct interest credited under non-qualified deferred compensation agreements, because such interest is not subject to section 404. Albertson's Inc. v. Commissioner, 38 F.3d 1046 (9th Cir. 1993), aff'g in part, rev'g in part 95 T.C. 415 (1990). However, the Court reversed itself upon rehearing and held that such interest is nondeductible until paid to the employee, although the court stated that "the answer is far from clear." Albertson's Inc. v. Commissioner, 42 F.3d 537 (9th Cir. 1994), vacating 38 F.3d 1046 (9th Cir. 1993). Taxpayer believes that the Court's original decision is correct, and that the reasoning of such decision ultimately will prevail.

Accordingly, Taxpayer is entitled to a refund of all overpayments in tax due to the Internal Revenue Service's failure to allow the claimed interest deductions.

3. Survivorship Whole Life Insurance Reserves

On its 1990 Federal income tax return, Taxpayer reported life insurance reserves for its 1984 through 1987 issues of survivorship whole life ("SWL") insurance policies computed using

the 1958 CSO mortality table and a 4.5 percent assumed interest rate. On audit, the Internal Revenue Service took the position that, for 1984 and 1985 issues of these contracts, the prevailing valuation standard is the 1958 CSO table and a 6 percent assumed interest rate. For 1986 issues of these contracts, the Internal Revenue Service took the position that the prevailing valuation standard is the 1980 CSO table and a 6 percent assumed interest rate. For 1987 issues of these contracts, the Internal Revenue Service took the position that the prevailing valuation standard is the 1980 CSO table and a 5.5 percent assumed interest rate. Based on its position, the Internal Revenue Service allowed decreased amounts of reserves. The amounts of the originally reported reserves are as follows:

| January 1, 1990 | December 31, 1990 |
|---|---|
| $ 31,283,165 | $ 38,474,232 |

The amounts of the decreased reserves as computed and allowed by the Internal Revenue Service are as follows:

| January 1, 1990 | December 31, 1990 |
|---|---|
| $ 27,827,191 | $ 35,695,481 |

The Internal Revenue Service has disallowed a portion of Taxpayer's reported reserves, which were computed on the basis of the prevailing standards listed above. These reserves meet all of the requirements necessary to constitute "life insurance reserves" within the meaning of sections 816 and 807, and are properly computed under section 807. Consequently, Taxpayer is entitled to use such reported reserves in computing its reserve increase deduction and its tax due for 1990.

In addition, as a result of allowance of the reserves computed on the basis of prevailing standards listed above, Taxpayer is entitled to a corresponding adjustment reducing the excess of

statutory over tax reserves in the computation of its year-end 1989 equity base under section 809(b) in the amount of $3,455,974 and its year-end 1990 equity base under section 809(b) in the amount of $2,778,751. Moreover, as a result of allowance of the reserves computed on the basis of prevailing standards listed above, Taxpayer is entitled to a corresponding adjustment increasing its policy interest under section 812(b)(2) in the amount of $137,194.

While Taxpayer should be allowed to use the reserves listed above, the Internal Revenue Service has failed to permit use of such reserves, resulting in an overpayment of Taxpayer's Federal income taxes for 1990. Claim is hereby made for refund of that overpayment in tax.

4. <u>"58 CSO" Permanent Life Insurance Reserves</u>

On its 1990 Federal income tax return, Taxpayer reported life insurance reserves for its 1984 through 1987 issues of "58 CSO" permanent life insurance policies computed using the 1958 CSO mortality table and a 4.5 percent assumed interest rate. For 1988 issues of these policies, Taxpayer calculated reserves using the 1958 CSO mortality table and a 7.77 percent assumed interest rate. On audit, the Internal Revenue Service took the position that, for 1984 and 1985 issues of these contracts, the prevailing valuation standard is the 1958 CSO table and a 6 percent assumed interest rate. For 1986 issues of these contracts, the Internal Revenue Service took the position that the prevailing valuation standard is the 1980 CSO table and a 6 percent assumed interest rate. For 1987 issues of these contracts, the Internal Revenue Service took the position that the prevailing valuation standard is the 1980 CSO table and a 5.5 percent assumed interest rate. For 1988 and 1989 issues of these contracts, the Internal Revenue Service took the position that the prevailing valuation standard is the 1980 CSO table and assumed interest rates of 7.77 percent and 8.16 percent, respectively. Based on its position, the Internal Revenue

Service allowed decreased amounts of reserves. The amounts of the originally reported reserves are as follows:

| | January 1, 1990 | December 31, 1990 |
|---|---|---|
| 1984, 1985 Issues | $339,256,217 | $402,239,390 |
| 1986, 1987 Issues | $154,965,519 | $188,204,406 |
| 1988, 1989 Issues | $ 12,273,958 | $ 23,149,345 |

The amounts of the decreased reserves computed and allowed by the Internal Revenue Service are as follows:

| | January 1, 1990 | December 31, 1990 |
|---|---|---|
| 1984, 1985 Issues | $315,921,954 | $388,378,684 |
| 1986, 1987 Issues | $141,064,861 | $176,685,625 |
| 1988, 1989 Issues | $ 12,025,796 | $ 22,808,033 |

The Internal Revenue Service has disallowed a portion of Taxpayer's reported reserves, which were computed on the basis of the prevailing standards listed above. These reserves meet all of the requirements necessary to constitute "life insurance reserves" within the meaning of sections 816 and 807, and are properly computed under section 807. Consequently, Taxpayer is entitled to use such reported reserves in computing its reserve increase deduction and its tax due for 1990.

In addition, as a result of allowance of the reserves computed on the basis of prevailing standards listed above, Taxpayer is entitled to a corresponding adjustment reducing the excess of statutory over tax reserves in the computation of its year-end 1989 equity base under section 809(b) in the amount of $37,483,083 and its year-end 1990 equity base under section 809(b) in the amount of $25,720,799. Moreover, as a result of allowance of the reserves computed on the basis of prevailing standards listed above, Taxpayer is entitled to a corresponding adjustment increasing its policy interest under section 812(b)(2) in the amount of $1,390,794.

While Taxpayer should be allowed to use the reserves listed above, the Internal Revenue Service has failed to permit use of such reserves, resulting in an overpayment of Taxpayer's Federal income taxes for 1990. Claim is hereby made for refund of that overpayment in tax.

5. Term Conversion Reserves

On its 1990 Federal income tax return, Taxpayer reported life insurance reserves under certain contracts with respect to term conversion provisions. Under these provisions, for which there was a separately identified premium or charge, the insured had the ability to convert the term policy into a permanent policy at a standard rate, regardless of any medical or physical impairment. On its return for 1990, Taxpayer reported these term conversion reserves as reserves for "qualified supplemental benefits" within the meaning of section 807(e)(3). On audit, the Internal Revenue Service disallowed that treatment, and allowed decreased amounts of reserves. The amounts of the originally reported reserves are as follows:

| | January 1, 1990 | December 31, 1990 |
|---|---|---|
| Individual | $ 24,832,387 | $ 28,915,029 |
| Group | $ 7,321,610 | $ 8,496,128 |

The amounts of the decreased reserves computed and allowed by the Internal Revenue Service are as follows:

| | January 1, 1990 | December 31, 1990 |
|---|---|---|
| Individual | $ 23,700,183 | $ 26,918,252 |
| Group | $ 6,999,459 | $ 8,122,298 |

These term conversion reserves as reported by Taxpayer meet all of the requirements necessary to constitute "life insurance reserves" within the meaning of section 816 and are properly computed under section 807. In addition, the reserves qualify as "life insurance

reserves" under section 807(c)(1) and as reserves for "qualified supplemental benefits" under section 807(e)(3). Consequently, Taxpayer is entitled to use such reported reserves in computing its reserve increase deduction and its tax due for 1990.

In addition, as a result of allowance of the term conversion reserves listed above, Taxpayer is entitled to a corresponding adjustment reducing the excess of statutory over tax reserves in the computation of its year-end 1989 equity base under section 809(b) in the amount of $1,454,355, and an adjustment reducing the excess of statutory over tax reserves in the computation of its year-end 1990 equity base under section 809(b) in the amount of $2,370,607. Moreover, as a result of allowance of the term conversion reserves listed above, Taxpayer is entitled to a corresponding adjustment increasing its policy interest under section 812(b)(2) in the amount of $85,305.

While Taxpayer should be allowed to use the reserves listed above, the Internal Revenue Service has failed to permit use of such reserves, resulting in an overpayment of Taxpayer's Federal income taxes for 1990. Claim is hereby made for refund of that overpayment in tax.

6. <u>Group Annuity Contract Reserves</u>

On its 1990 Federal income tax return, Taxpayer reported life insurance reserves under certain group annuity contracts. Under these group annuity contracts, which are issued to employers, Taxpayer issues annuity certificates that evidence its obligation to pay annuity benefits to retired employees. Taxpayer holds reserves with respect to its obligation to provide these annuity benefits. On its return for 1990, Taxpayer reported these group annuity reserves as life insurance reserves under section 807(c)(1). In computing these reserves, Taxpayer applied the section 807(d) "annual statement cap" by comparing tax reserves to statutory reserves at the group annuity contract level, rather than at the individual certificate level. On audit, the Internal

Revenue Service required that the comparison between tax reserves and statutory reserves be made on a certificate-by-certificate basis, rather than on the group annuity contract basis. On this basis, the Internal Revenue Service disallowed a portion of the group annuity reserves. The amounts of the originally reported reserves are as follows:

| January 1, 1990 | December 31, 1990 |
|---|---|
| $3,449,402,851 | $3,475,860,114 |

The amounts of the decreased reserves computed and allowed by the Internal Revenue Service are as follows:

| January 1, 1990 | December 31, 1990 |
|---|---|
| $3,448,442,851 | $3,474,385,114 |

These group annuity reserves as reported by Taxpayer meet all of the requirements necessary to constitute "life insurance reserves" within the meaning of section 816. In addition, the reserves qualify as "life insurance reserves" under section 807(c)(1) and are properly computed under section 807(d). Consequently, Taxpayer is entitled to use such reported reserves in computing its tax due for 1990.

Moreover, as a result of allowance of the reserves listed above Taxpayer is entitled to a corresponding adjustment reducing the excess of statutory over tax reserves in the computation of its year-end 1989 equity base under section 809(b) in the amount of $960,000, and a corresponding adjustment reducing the excess of statutory over tax reserves in the computation of its year-end 1990 equity base under section 809(b) in the amount of $1,475,000.

While Taxpayer should be allowed to use the reserves listed above, the Internal Revenue Service has failed to permit use of such reserves, resulting in an overpayment of Taxpayer's Federal income taxes for 1990. Claim is hereby made for refund of that overpayment in tax.

7. Deposit Administration Group Annuity Contract Reserves

On its 1990 Federal income tax return, Taxpayer reported life insurance reserves held with respect to deposit administration group annuity contracts ("DA contracts"). Under these DA contracts, Taxpayer maintained a policyholder's fund, referred to as the "Active Life Fund" (or "ALF"). On its annual statement for the year 1990, Taxpayer reported reserves for DA contracts equal in amount to 97.5 percent of the ALF. On its 1990 Federal income tax return, Taxpayer reported tax reserves for DA contracts in accordance with section 807(d) and 807(e)(1)(B) equal in amount to 97.5 percent of the ALF. On audit, the Internal Revenue Service allowed reserves for DA contracts equal in amount to only 95 percent of the ALF. The amounts of the originally reported reserves are as follows:

December 31, 1990

$ 140,152,006

The amounts of the decreased reserves computed and allowed by the Internal Revenue Service are as follows:

December 31, 1990

$ 136,567,208

The basis for the Internal Revenue Service's adjustment is that the DA contracts provide for surrender charges, which must be excluded from tax reserves. However, the DA contracts do not provide for surrender charges. The reserves as reported on the 1990 Federal income tax return meet all of the requirements necessary to constitute tax reserves and are properly computed under section 807. Consequently, Taxpayer is entitled to use such reported reserves in computing its reserve increase deduction and its tax due for 1990.

In addition, as a result of allowance of the reserves for DA contracts listed above,

Taxpayer is entitled to a corresponding adjustment reducing the excess of statutory over tax reserves in the computation of its year-end 1990 equity base under section 809(b) in the amount of $3,584,798. Moreover, as a result of allowance of the reserves for DA contracts listed above, Taxpayer is entitled to a corresponding adjustment increasing its policy interest under section 812(b)(2) in the amount of $143,997.

While Taxpayer should be allowed to use the reserves listed above, the Internal Revenue Service has failed to permit use of such reserves, resulting in an overpayment of Taxpayer's Federal income taxes for 1990. Claim is hereby made for refund of that overpayment in tax.

8. Required Interest

On its 1990 Federal income tax return, Taxpayer reported tax reserves for certain contracts computed as the net surrender value under section 807(d)(1). With respect to these contracts, Taxpayer reported "required interest" under section 812(b)(2) using "another appropriate rate," *i.e.*, the rate reflected in the contract's guaranteed minimum nonforfeiture values. On its 1990 Federal income tax return, Taxpayer reported required interest in the amount of $391,944,961. On audit, the Internal Revenue Service increased the amount of required interest to $464,736,125.

The basis for the Internal Revenue Service's adjustment is that, under LTR 9246001 (October 30, 1991), required interest must be computed using the prevailing State interest rate even in cases where the tax reserve for a contract is the net surrender value. However, in cases where the tax reserve for a contract is the net surrender value, the rate reflected in the contract's guaranteed minimum nonforfeiture values is the "other appropriate rate" that must be utilized for purposes of section 812(b)(2).

While Taxpayer should be allowed to use the rate reflected in the contract's

guaranteed minimum nonforfeiture values as the "other appropriate rate" for purposes of section 812(b)(2), the Internal Revenue Service has failed to permit use of such rate, resulting in an overstatement of required interest for 1990 and an overpayment of Taxpayer's Federal income taxes for 1990. Claim is hereby made for refund of that overpayment in tax.

9. Section 809 Equity Base Adjustments

Section 809 adjusts the life insurance company taxable income of mutual life insurance companies based on a comparison of the relative returns on equity of the 50 largest stock life insurance companies and all mutual life insurance companies. Section 809(a), first, provides that the deduction allowed mutual life insurance companies for policyholder dividends (and in some instances the deduction for reserve increases) must be reduced by the "differential earnings amount," which equals the "average equity base" multiplied by the "differential earnings rate." Section 809(f), second, provides for certain adjustments based upon the "recomputed differential earnings amount." Annual statement accounting treatment is controlling for section 809 purposes.

The "average equity base" for each year is the average of the equity base for that year and the equity base for the preceding year. Section 809(b)(1). The starting point for determining the equity base for a year is the surplus and capital reported on the annual statement for the year. From this amount, certain adjustments are required, such as for "nonadmitted financial assets," for any "voluntary reserve," and for the excess of statutory reserves over tax reserves. Section 809(b).

On its Federal income tax return for the year 1990, Taxpayer properly reported its average equity base. However, the Internal Revenue Service has adjusted Taxpayer's average

equity base based upon the following issues. Taxpayer disagrees with each of these adjustments.

On its 1989 and 1990 annual statements, Taxpayer wrote down "no-bonds" to fair market value, which reduced nonadmitted financial assets. The term "no-bond" refers to bonds designated by the National Association of Insurance Commissioners ("NAIC") as ineligible for amortization by insurance companies. Consistently, on its 1990 Federal income tax return, Taxpayer reduced its year-end 1989 and 1990 equity bases by the amounts of the write-downs. On audit, the Internal Revenue Service treated the amounts of the reduction as a non-admitted financial asset, thereby increasing Taxpayer's reported equity bases. The Internal Revenue Service increased Taxpayer's year-end 1989 equity base by $3,732,610 and its year-end 1990 equity base by $1,516,452.

On its 1989 and 1990 annual statements, Taxpayer wrote down the book value of certain bonds reported in Schedule D, Part I to account for the Taxpayer's "unrealized loss on bonds." Consistently, on its 1990 Federal income tax return, Taxpayer's year-end 1989 and 1990 equity bases were reduced by the amounts of the "unrealized loss on bonds." On audit, the Internal Revenue Service treated the amounts of the reduction as a non-admitted financial asset, thereby increasing Taxpayer's reported equity bases. The Internal Revenue Service increased Taxpayer's year-end 1989 equity base by $56,632,744 and its year-end 1990 equity base by $93,218,820.

(The Internal Revenue Service also made an adjustment, decreasing Taxpayer's year-end 1989 equity base by $874,331, to eliminate duplication between its "No-Bonds" adjustment and its "unrealized loss on bonds" adjustment. Because these adjustments are incorrect and should be reversed, the duplication adjustment also should be rejected.)

On its 1989 and 1990 annual statements, Taxpayer also wrote down the book value of certain preferred stock to account for the Taxpayer's "unrealized loss on preferred stock."

Consistently, on its 1990 Federal income tax return, Taxpayer's year-end 1989 and 1990 equity bases were reduced by the amounts of the "unrealized loss on preferred stock." On audit, the Internal Revenue Service treated the amounts of the reduction as a non-admitted financial asset, thereby increasing Taxpayer's reported equity bases. The Internal Revenue Service increased Taxpayer's year-end 1989 equity base by $2,792,241 and its year-end 1990 equity base by $7,208,680.

Taxpayer is entitled to its tax return treatment of the items described above. Section 809(g)(3) requires that all determinations made under section 809 "shall be made on the basis of the amounts required to be set forth on the annual statement," and Taxpayer properly reported the items described above in its annual statement. The NAIC requires that certain no-bonds be reduced in value to at least a specified value, and Taxpayer was required to reduce the value of other bonds and preferred stock that it determined to be permanently impaired during the tax year. Furthermore, generally accepted accounting principles ("GAAP") must be applied in the absence of specific rules, and GAAP requires that permanently impaired investments must be written down.

As reported on its 1989 and 1990 annual statements, Taxpayer wrote down the book value and investment value of the Daseke Group, Inc., note from $20 million to $1 million and zero, respectively. Consistent with this treatment, on its 1990 Federal income tax return Taxpayer included only $1 million in its 1989 equity base and zero in its 1990 equity base. On audit, consistent with its position that the Daseke note was not worthless, the Internal Revenue Service increased Taxpayer's 1989 and 1990 equity base by $19 million and $20 million, respectively. However, the Daseke note became worthless during 1989 and Taxpayer properly reported the value of that note in its 1989 and 1990 equity bases.

On its annual statements for 1989 and 1990, Taxpayer reported its liability for resisted death claims, and used those amounts in computing its year-end 1989 and 1990 equity bases. On audit, the Internal Revenue Service disallowed a portion of Taxpayer's reported liability as a deduction for income tax purposes and made a related adjustment to the year-end 1989 and 1990 equity bases, treating a portion of such liability as a voluntary reserve. The Internal Revenue Service increased the year-end 1989 equity base by $3,668,344 and the year-end 1990 equity base by $7,022,243. The Internal Revenue Service improperly increased the year-end 1989 and 1990 equity bases by such resisted claim amounts. The Internal Revenue Service incorrectly substituted tax accounting standards for annual statement accounting rules. Life insurers are required to establish liabilities for resisted claims. In fact, various schedules to the annual statement make specific reference to resisted claims. Thus, the adjustments made to the equity bases should be reversed, and the section 809 equity bases should be reduced by the amounts in issue.

On its annual statement for 1990, Taxpayer established a mortgage loan reserve and a real estate reserve. The mortgage loan reserve reflects, for mortgage loans in default, the excess of the outstanding debt over the expected value of the collateral property. The real estate reserve reflects, for depreciated property, the excess of book value over market value. Taxpayer reflected those amounts in computing its year-end 1990 equity base. On audit, the Internal Revenue Service made an adjustment to the year-end 1990 equity base, treating such reserves as voluntary reserves. The Internal Revenue Service increased the year-end 1990 equity base by $35,422,000. The Internal Revenue Service improperly increased the year-end 1990 equity base by such reserve amounts. The Internal Revenue Service incorrectly substituted tax accounting standards for annual statement accounting rules. Life insurers are required to establish these

reserves. In fact, instructions to the annual statement make specific reference to these reserves. Thus, the adjustments made to the equity base should be reversed, and the section 809 equity base should be reduced by the amounts in issue.

Lastly, based on various reserve adjustments that are characterized as erroneous adjustments in this and related refund claims, the Internal Revenue Service has increased Taxpayer's section 809 equity bases for year-end 1989 and 1990 by the excess of statutory reserves over tax reserves. Because those reserve adjustments are erroneous for the reasons described in this and related refund claims, there is no such excess, there is no basis for such adjustment.

Based on the foregoing, claim is hereby made for refund of all overpayments in tax due to section 809 equity base adjustments.

10. Negative Recomputed Differential Earnings Rate

Section 809 requires each mutual life insurance company to compute a differential earnings amount ("DEA"). The DEA for a year is the product of the mutual company's "average equity base" for the year multiplied by the differential earnings rate ("DER") for the year. Section 809(a)(3). The DEA for a year is reported on the mutual company's Federal income tax return for that year, and it affects the company's taxable income for that year by affecting the policyholder dividends deduction (and, if necessary, the closing balance of reserves). Sections 808(c)(2), 809(a)(1) and (2).

A mutual company's DEA for a year is recomputed on its Federal income tax return for the following year. In that following year, the recomputed DEA is determined as the product of the mutual company's "average equity base" for the prior year multiplied by the "recomputed

DER" for the prior year. Section 809(f)(3). In that following year, any increase or decrease of the recomputed DEA for the prior year over the originally computed DEA for the prior year is either included in income or deducted. Section 809(f).

On its 1989 Federal income tax return, Taxpayer reported a 1989 DER in the amount of 4.206 percent, and reported a 1989 DEA of $73,865,215, computed as the product of its 1989 average equity base times the 1989 recomputed DER. Taxpayer reduced its otherwise allowable policyholder dividends deduction for the year 1989 by the amount of the 1989 DEA.

On its 1990 income tax return, Taxpayer reported a 1989 recomputed DER in the amount of negative 3.566 percent, and reported a 1989 recomputed DEA of negative $62,625,619, computed as the product of its 1989 average equity base times the 1989 recomputed DER of negative 3.566 percent. Taxpayer claimed a section 809(f)(2) deduction in an amount equal to the difference between its initially computed 1989 DEA ($73,865,215) and the 1989 recomputed DEA (negative $62,625,619). Accordingly, Taxpayer claimed a section 809(f)(2) deduction of $136,490,834 for the taxable year 1990.

The Internal Revenue Service takes the position that the 1989 recomputed DER cannot be less than zero. Based on this contention, the Internal Revenue Service failed to allow $62,625,619 of Taxpayer's claimed deduction under section 809(f)(2) for 1990.

A strict application of the formula in section 809 produces the negative values in dispute. The Service itself has acknowledged this fact. See Announcement 88-47, 1988-12 I.R.B. 56 (announcing a 1986 recomputed DER of (1.7%)); T.D. 8499, 1993-2 C.B. 246 (acknowledging that the calculated rate was negative). While section 809 is generally intended to reduce policyholder dividend deductions, its purpose is not to do so haphazardly and arbitrarily. Section 809 produces the correct result over time only if negative values are recognized. If negative

values are not recognized, the result will be to disallow a greater portion of policyholder dividend deductions than can be justified under the theory of section 809. Such a result would be contrary to Congress' intent in enacting the statute.

It is true that in American Mutual Life Ins. Co. v. United States, 43 F.3d 1172 (8th Cir. 1994), Indianapolis Life Ins. Co. v. United States, 115 F.3d 430 (7th Cir. 1997), and CUNA Mutual Life Ins. Co. v. United States, 97-2 U.S.T.C. ¶ 50,904 (Fed. Cl. 1997), courts have held that the recomputed DER may not be less than zero. However, Taxpayer believes that those decisions are incorrect.

Based on the foregoing, Taxpayer is entitled to the allowance of a deduction under section 809(f)(2) for the taxable year 1990. The amount of the deduction allowable, based on a negative 1989 recomputed DER of (3.566%), and a 1989 average equity base of $1,761,334,694 (per Taxpayer's refund claim filed for the year 1989), equals $62,809,195. Accordingly, Taxpayer is entitled to the allowance of a $62,809,195 (or some other amount, as properly computed) deduction under section 809(f)(2) for the taxable year 1990.

Alternatively, Taxpayer is entitled to exclude from income, under the tax benefit rule, the amount associated with prior year deductions that, due to the disallowance of negative recomputed DERs, did not produce a tax benefit to the Taxpayer. This amount must be excluded from income for 1990 because it constitutes a "recovery" and is based on "fundamentally inconsistent" events for purposes of the tax benefit rule.

## 11. Additional Claim Based on Credits and Credit and Loss Carryovers and Carrybacks

In subsequent computations, Taxpayer hereby claims its right to fully utilize all credits

that arise in 1990 and all credit carryovers and carrybacks to 1990 from other years, to the extent such credits are available. In subsequent computations, Taxpayer also claims its right to fully utilize all operations loss carryovers and carrybacks to 1990 from other years, to the extent such carryovers and carrybacks are available.

In particular, Taxpayer claims that it is entitled to an operations loss carryback from the year 1994 in the amount of $81,521,730. Allowance of that carryback to the year 1990 would increase the refund allowable for 1990 by $27,717,388 (this amount is in addition to the amount claimed in the Form 1120X to which this addendum is attached), and Taxpayer hereby claims a refund in that amount. Moreover, Taxpayer claims that it is entitled to a credit carryback from the year 1994 in the amount of $3,885,916. Allowance of that carryback to the year 1990 would increase the refund allowable for 1990 by $3,885,916 (this amount is in addition to the amount claimed in the Form 1120X to which this addendum is attached), and Taxpayer hereby claims a refund in that amount. Taxpayer also claims that it is entitled to any refund that results from any other operations loss or credit carryovers and carrybacks that are determined to be allowable for the year 1990.

12. Interest Netting

The Taxpayer claims that it is entitled to have its deficiency interest with respect to the year 1990 calculated in accordance with the interest netting procedures provided under section 6621(d).