orm **1120X**
Rev. December 2001)
Department of the Treasury
Internal Revenue Service

# Amended U.S. Corporation Income Tax Return

OMB No. 1545-0132

For tax year ending ▶ DECEMBER 1995 (Enter month and year.)

Please Type or Print

Name: MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY (CONSOLIDATED)

Employer identification number: 04-1590850

Number, street, and room or suite no. (If a P.O. box, see instructions.): 1295 STATE STREET MIP:E171

City or town, state, and ZIP code: SPRINGFIELD, MA 01111-0001

Telephone number (optional): (413) 744-7684

Enter name and address used on original return (If same as above, write "Same."): SAME

Internal Revenue Service Center where original return was filed ▶ ANDOVER, MA

## Fill in Applicable Items and Use Part II To Explain Any Changes

**Part I** Income and Deductions (see instructions)

| | | (a) As originally reported or as previously adjusted | (b) Net change increase or decrease - explain in Part II | (c) Correct amount |
|---|---|---|---|---|
| 1 Total income (Form 1120 or 1120-A, line 11) | 1 | | | |
| 2 Total deductions (total of lines 27 and 29c, Form 1120, or lines 23 and 25c, Form 1120-A) | 2 | | | |
| 3 Taxable income. Subtract line 2 from line 1 | 3 | 741,879,993 | (214,315,476) | 527,564,517 |
| 4 Tax (Form 1120, line 31, or Form 1120-A, line 27) | 4 | 254,309,442 | (75,267,904) | 179,041,538 |
| **Payments and Credits** (see instructions) | | | | |
| 5 a Overpayment in prior year allowed as a credit | 5a | 9,242,210 | | 9,242,210 |
| b Estimated tax payments | b | 196,873,484 | | 196,873,484 |
| c Refund applied for on Form 4466 | c | | | |
| d Subtract line 5c from the sum of lines 5a and 5b | d | 206,115,694 | | 206,115,694 |
| e Tax deposited with Form 7004 | e | 20,847,727 | | 20,847,727 |
| f Credit from Form 2439 | f | | | |
| g Credit for Federal tax on fuels | g | | | |
| 6 Tax deposited or paid with (or after) the filing of the original return | 6 | | | 35,966,674 |
| 7 Add lines 5d through 6, column (c) | 7 | | | 262,930,095 |
| 8 Overpayment, if any, as shown on original return or as later adjusted | 8 | | | 8,620,653 |
| 9 Subtract line 8 from line 7 | 9 | | | 254,309,442 |
| **Tax Due or Overpayment** (see instructions) | | | | |
| 10 **Tax due.** Subtract line 9 from line 4, column (c). If paying by check, make it payable to the "**United States Treasury.**" ▶ | 10 | | | |
| 11 **Overpayment.** Subtract line 4, column (c), from line 9 ▶ | 11 | | | 75,267,904* |
| 12 Enter the amount of line 11 you want: **Credited to 20** estimated tax ▶ **Refunded** ▶ | 12 | | | 75,267,904* |

**Sign Here**

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ Signature of officer RICHARD BOURGEOIS — Date 2/28/05 — ▶ SENIOR VICE PRESIDENT Title CORPORATE TAX

**Paid Preparer's Use Only**

Preparer's signature ▶ Date Check if self-employed ☐ Preparer's SSN or PTIN

Firm's name (or yours if self-employed), address, and ZIP code ▶ EIN Phone no.

**For Paperwork Reduction Act Notice, see page 4.** Form **1120X** (Rev. 12-2001)

JSA
3C1820 1.000

* PLUS ANY OTHER AMOUNT LEGALLY REFUNDABLE, PLUS INTEREST.

**Part II** **Explanation of Changes to Items in Part I** (Enter the line number from page 1 for the items you are changing, and give the reason for each change. Show any computation in detail. Also, see **What To Attach** on page 3 of the instructions.)

If the change is due to a net operating loss carryback, a capital loss carryback, or a general business credit carryback, see **Carryback Claims** on page 3, and check here . . . . ▶ ☐

1. SEE ATTACHED "FORM 1120L RECOMPUTATION PER CLAIM FOR REFUND."

2. SEE ATTACHED "ADDENDUM TO 1995 CLAIM FOR REFUND."

## Massachusetts Mutual Life Ins. Co. -- Tax Year 1995
## Form 1120L Recomputation Per Claim for Refund

| | PER RAR | ADJUSTMENTS | PER APPEALS | ADJUSTMENTS | PER CLAIM |
|---|---|---|---|---|---|
| **Tax Computation** | | | | | |
| 1. Life Subgroup LICTI | | | | | |
| MassMutual (page1) | $693,940,373 | | $655,434,136 | | $441,118,661 |
| RAR adjustment | $4,171 | | $4,171 | | $4,171 |
| MML Baystate | ($2,068,746) | | ($2,068,746) | | ($2,068,746) |
| SIA DRD Adjustment | $0 | | ($239,765) | | ($239,765) |
| Subtotal | $691,875,798 | ($38,746,001) | $653,129,796 | ($214,315,475) | $438,814,321 |
| 2. NonLife Subgroup TI | | | | | |
| 5yr+ Members | $71,903,456 | | $71,903,456 | | $71,903,456 |
| 5yr- Members | $16,651,050 | | $16,651,050 | | $16,651,050 |
| Adjustments | $195,690 | | $195,690 | | $195,690 |
| Subtotal | $88,750,196 | | $88,750,196 | | $88,750,196 |
| 3. Total Consolidated TI | $780,625,994 | ($38,746,001) | $741,879,992 | | $527,564,517 |
| 4. Regular Tax | | | | | |
| TI @ 35% | $273,219,098 | | $259,657,997 | | $184,647,581 |
| MD gains differential | ($1,158,129) | | ($1,158,129) | | ($1,158,129) |
| Total Regular Tax | $272,060,969 | | $258,499,868 | | $183,489,452 |
| 5. Total Credits | ($5,124,383) | | ($5,124,383) | | ($5,124,383) |
| 6. Balance | $266,936,586 | | $253,375,485 | | $178,365,069 |
| 7. Environmental Tax | | | | | |
| Line 1(adj. per RAR) | $779,632,014 | | $742,813,950 | | $528,240,987 |
| Line 5 | $789,111,430 | | $751,484,718 | | $536,911,755 |
| Line 6 -- ACE Adj. | $28,812,833 | | $28,812,833 | | $28,812,833 |
| Line 7 | $817,924,262 | | $780,297,550 | | $565,724,587 |
| Line 9 | $815,924,262 | | $778,297,550 | | $563,724,587 |
| Times .12% | 0.12% | | 0.12% | | 0.12% |
| Environmental Tax | $979,109 | | $933,957 | | $676,470 |
| 8. Total Tax Per RAR | $267,915,695 | | | | |
| 9. Total Tax Per Appeals | | | $254,309,442 | | |
| 11. Total Tax Per Claim | | | | | $179,041,539 |
| 12. Tax as Last Adjusted | $218,342,768 | | $218,342,768 | | $254,309,442 |
| 13. Overassessment or (Deficiency) | ($49,572,927) | | ($35,966,674) | | $75,267,904 |

| | PER RAR | ADJUSTMENTS | PER APPEALS | ADJUSTMENTS | PER CLAIM |
|---|---|---|---|---|---|
| **Page 1 -- LICTI** | | | | | |
| 1. Gross Premiums | $3,685,004,826 | | $3,685,004,826 | | $3,685,004,826 |
| Less Return Premiums | $0 | | $0 | | $0 |
| | $3,685,004,826 | | $3,685,004,826 | | $3,685,004,826 |
| 2. Sec. 807(f)(1)(B)(ii) | $3,510,928 | | $3,510,928 | | $3,510,928 |
| 4. 3 1/3% of YE Bal | $0 | | $0 | | $0 |
| 5. Investment Income | $2,528,259,895 | | $2,528,259,895 | | $2,528,259,895 |
| 6. Net Capital Gain | $60,917,377 | $1,805,603 | $62,722,980 | | $62,722,980 |
| 8. Other Amounts | $182,374,437 | $1,916,989 | $184,291,426 | ($86,051,381) | $98,240,045 |
| 9. Gross Income | $6,460,067,463 | | $6,463,790,055 | | $6,377,738,674 |
| | | | | | |
| 10. Death Benefits | $3,808,302,430 | | $3,808,302,430 | | $3,808,302,430 |
| 11. Increase in Reserves | $313,525,712 | $1,910,001 | $315,435,713 | $689,531 | $316,125,244 |
| 12. Sec. 807(f)(1)(B)(i) | $2,370,874 | | $2,370,874 | | $2,370,874 |
| 13. Policyholder Dividends | $678,900,997 | $2,573,765 | $681,474,762 | $118,975,383 | $800,450,145 |
| 14. Assumption Reins | $0 | | $0 | | $0 |
| 17. Policy Acq Exp | $49,577,674 | | $49,577,674 | | $49,577,674 |
| 19. Other Deductions | $873,660,738 | $26,207,390 | $899,868,128 | $8,513,845 | $908,381,973 |
| Negative RDER | | | | | |
| 20. DRD | $44,434,308 | | $55,846,670 | | $56,189,493 |
| 21. Operations Loss | $0 | | $0 | | $0 |
| 22. Total Deductions | $5,770,772,733 | $42,103,518 | $5,812,876,251 | | $5,941,397,833 |
| *** Env. Tax Deduction | | | ($125,310) | | $132,177 |
| 23. Gain From Operations | $689,294,730 | ($38,506,236) | $650,788,493 | | $436,473,018 |
| 26. Separate Account | $4,645,643 | | $4,645,643 | | $4,645,643 |
| | | | | | |
| 28. LICTI | $693,940,373 | ($38,506,236) | $655,434,136 | ($214,315,475) | $441,118,661 |

| | PER RAR | ADJUSTMENTS | PER APPEALS | ADJUSTMENTS | PER CLAIM |
|---|---|---|---|---|---|
| **Schedule A -- Dividends and DRD** | | | | | |
| 10. Gross DRD | $11,877,695 | | $11,877,695 | | $11,877,695 |
| 11. Company Share | 28.9922% | | 28.9756% | | 31.8619% |
| 12. | $3,443,607 | | $3,441,631 | | $3,784,454 |
| 13. SIA DRD write in | $40,990,701 | $11,414,338 | $52,405,039 | | $52,405,039 |
| 16. Total | $44,434,308 | | $55,846,670 | | $56,189,493 |

| | PER RAR | ADJUSTMENTS | PER APPEALS | ADJUSTMENTS | PER CLAIM |
|---|---|---|---|---|---|
| **Schedule B -- Gross Investment Income** | | | | | |
| 1. Interest | $2,024,391,565 | $0 | $2,024,391,565 | | $2,024,391,565 |
| 2. Dividends | $64,069,612 | | $64,069,612 | | $64,069,612 |
| 3. Rents | $209,575,794 | | $209,575,794 | | $209,575,794 |
| 4. Royalties | $17,727 | | $17,727 | | $17,727 |
| 5. Leases, etc. | $2,120,572 | | $2,120,572 | | $2,120,572 |
| 6. STCG over LTCL | $156,192,163 | | $156,192,163 | | $156,192,163 |
| 7. Noninsurance Income | $71,892,462 | | $71,892,462 | | $71,892,462 |
| 8. Investment income | $2,528,259,895 | | $2,528,259,895 | | $2,528,259,895 |
| 9. T/E Interest | $553,922 | | $553,922 | | $553,922 |
| 10. Total | $2,528,813,817 | | $2,528,813,817 | | $2,528,813,817 |
| 11. 100% Dividends | $40,990,571 | | $40,990,571 | | $40,990,571 |
| 12. Gross inv income | $2,487,823,246 | | $2,487,823,246 | | $2,487,823,246 |
| | | | | | |
| **Schedule C -- Section 809 DEA** | | | | | |
| DECEMBER 31, 1994 | | | | | |
| 1. | $1,614,123,963 | | $1,614,123,963 | | $1,614,123,963 |
| 2. | $38,108,541 | | $38,108,541 | | $38,108,541 |
| 3. | $336,039,339 | | $336,039,339 | | $336,039,339 |
| 4. | $39,471,556 | | $39,471,556 | | $39,471,556 |
| 5.a. | $347,609,098 | | $347,609,098 | | $347,609,098 |
| 5.b. | $190,606 | | | | |
| 6. | $112,396,169 | | $112,396,169 | | $112,396,169 |
| 7. | $265,996,723 | | $265,996,723 | | $265,996,723 |
| 8.a. | $2,753,935,995 | $2,149,759 | $2,756,085,754 | ($168,078,717) | $2,588,007,037 |
| 8.b. | $0 | | $0 | | $0 |
| 8.c. | $2,753,935,995 | | $2,756,085,754 | | $2,588,007,037 |
| | | | | | |
| DECEMBER 31, 1995 | | | | | |
| 1. | $1,757,576,830 | | $1,757,576,830 | | $1,757,576,830 |
| 2. | $68,122,137 | | $68,122,137 | | $68,122,137 |
| 3. | $413,645,480 | | $413,645,480 | | $413,645,480 |
| 4. | $52,215,306 | | $52,215,306 | | $52,215,306 |
| 5.a. | $411,970,059 | | $411,970,059 | | $411,970,059 |
| 5.b. | $61,570,910 | | | | |
| 6. | $88,437,406 | | $88,437,406 | | $88,437,406 |
| 7. | $263,574,133 | | $263,574,133 | | $263,574,133 |
| 8.a. | $3,117,112,261 | $239,666 | $3,117,351,927 | ($174,807,093) | $2,942,544,834 |
| 8.b. | $0 | | $0 | | $0 |
| 8.c. | $3,117,112,261 | | $3,117,351,927 | | $2,942,544,834 |
| | | | | | |
| 9. Total | $5,871,048,256 | | $5,873,437,681 | | $5,530,551,871 |
| 10. 50% of Total | $2,935,524,128 | | $2,936,718,841 | | $2,765,275,936 |
| 11. | $0 | | $0 | | $0 |
| 12. Average Equity Base | $2,935,524,128 | | $2,936,718,841 | | $2,765,275,936 |
| 13. Times DER = DEA | $0 | | $0 | | $0 |

| | PER RAR | ADJUSTMENTS | PER APPEALS | ADJUSTMENTS | PER CLAIM |
|---|---|---|---|---|---|
| **Schedule E -- Policyholder Dividends** | | | | | |
| 1. Paid or Accrued | $529,123,355 | $2,573,765 | $531,697,120 | $118,975,383 | $650,672,503 |
| 2. Excess Interest | $31,592,959 | | $31,592,959 | | $31,592,959 |
| 3. Premium Adjustments | $118,184,683 | | $118,184,683 | | $118,184,683 |
| 4. Experience Refunds | $0 | | $0 | | $0 |
| 5. Total | $678,900,997 | | $681,474,762 | | $800,450,145 |
| 6. DEA | $0 | | $0 | | $0 |
| 7. Deductible Dividends | $678,900,997 | $2,573,765 | $681,474,762 | | $800,450,145 |
| 8. | $0 | | $0 | | $0 |
| 9. Deductible Percentage | 100.0000000% | | 100.0000000% | | 100.0000000% |
| | | | | | |
| **Schedule F -- Increase in Reserves** | | | | | |
| JANUARY 1, 1995 | | | | | |
| 1. Section 807(c)(1) | $16,226,893,637 | | $16,226,893,637 | | $16,226,893,637 |
| 2. Section 807(c)(2) | $8,597,225 | | $8,597,225 | | $8,597,225 |
| 3. Section 807(c)(3) | $167,296,034 | | $167,296,034 | | $167,296,034 |
| 4. Section 807(c)(4) | $7,135,263,879 | | $7,135,263,879 | | $7,135,263,879 |
| 5. Section 807(c)(5) | $281,105,621 | | $281,105,621 | | $281,105,621 |
| 6. Section 807(c)(6) | $0 | | $0 | | $0 |
| 7. | $23,819,156,396 | ($2,149,759) | $23,817,006,637 | $17,574,007 | $23,834,580,644 |
| DECEMBER 31, 1995 | | | | | |
| 1. Section 807(c)(1) | $17,169,290,882 | | $17,169,290,882 | | $17,169,290,882 |
| 2. Section 807(c)(2) | $8,785,471 | | $8,785,471 | | $8,785,471 |
| 3. Section 807(c)(3) | $156,226,976 | | $156,226,976 | | $156,226,976 |
| 4. Section 807(c)(4) | $6,521,981,504 | | $6,521,981,504 | | $6,521,981,504 |
| 5. Section 807(c)(5) | $277,676,136 | | $277,676,136 | | $277,676,136 |
| 6. Section 807(c)(6) | $0 | | $0 | | $0 |
| RAR adjustment | ($885,533) | | ($885,533) | | ($885,533) |
| 7. | $24,133,075,436 | ($239,666) | $24,132,835,770 | $18,247,550 | $24,151,083,320 |
| 8. Increase in Reserves | $313,919,040 | | $315,829,133 | | $316,502,676 |
| 9. GII | $2,487,823,246 | | $2,487,823,246 | | $2,487,823,246 |
| 10.a. | $1,455,044,739 | ($16,605) | $1,455,028,134 | ($94,991,221) | $1,360,036,913 |
| 10.b. | $31,592,959 | | $31,592,959 | | $31,592,959 |
| 10.c. | $5,683,480 | | $5,683,480 | | $5,683,480 |
| 10.d. | $16,466,331 | | $16,466,331 | | $16,466,331 |
| 10.f. Policy Interest | $1,508,787,509 | | $1,508,770,904 | | $1,413,779,683 |
| 11. GII - Policy Interest | $979,035,737 | | $979,052,342 | | $1,074,043,563 |
| 12. Gross Income | $6,460,067,463 | | $6,463,790,055 | | $6,377,738,674 |
| RAR Adjustment | ($26,981,805) | | ($26,981,805) | | ($26,981,805) |
| Revised Gross Income | $6,433,085,658 | | $6,436,808,250 | | $6,350,756,869 |

| | PER RAR | ADJUSTMENTS | PER APPEALS | ADJUSTMENTS | PER CLAIM |
|---|---|---|---|---|---|
| 13. T/E Interest | $553,922 | | $553,922 | | $553,922 |
| 14. Total, l.12 + l.13 | $6,433,639,580 | | $6,437,362,172 | | $6,351,310,791 |
| 15. Increase in Reserves | $313,919,040 | | $315,829,133 | | $316,502,676 |
| 16. Total | $6,119,720,540 | | $6,121,533,039 | | $6,034,808,115 |
| 17. Ratio, l.11/1.16 | 15.9980% | | 15.9936% | | 17.7975% |
| 18. Policyholder Divs | $678,900,997 | | $681,474,762 | | $800,450,145 |
| 19. Excess Interest | $31,592,959 | | $31,592,959 | | $31,592,959 |
| 20. Dividends | $5,683,480 | | $5,683,480 | | $5,683,480 |
| 21. Dividends | $16,466,331 | | $16,466,331 | | $16,466,331 |
| 22. Charges | $118,184,683 | | $118,184,683 | | $118,184,683 |
| 23. Total, l.19 to l.22 | $171,927,453 | | $171,927,453 | | $171,927,453 |
| 24. L.18-L.23 | $506,973,544 | | $509,547,309 | | $628,522,692 |
| 25. L.17 times L.24 | $81,105,863 | | $81,494,861 | | $111,861,179 |
| 26. Policy Interest | $1,508,787,509 | ($16,605) | $1,508,770,904 | | $1,413,779,683 |
| 27. Plcdr Share Amount | $1,589,893,372 | | $1,590,265,765 | | $1,525,640,862 |
| 28. Net inv Income | $2,239,040,921 | | $2,239,040,921 | | $2,239,040,921 |
| 29. Plcdr Share Amount | $1,589,893,372 | | $1,590,265,765 | | $1,525,640,862 |
| 30. Co Share of NII | $649,147,549 | | $648,775,156 | | $713,400,059 |
| 31. Total Share Percent | 100.0000% | | 100.0000% | | 100.0000% |
| 32. Co Share Percent | 28.9922% | | 28.9756% | | 31.8619% |
| 33. Plcdr Share Percent | 71.0078% | | 71.0244% | | 68.1381% |
| 34. Plcdr Share of T/E | $393,328 | | $393,420 | | $377,432 |
| 35. L.8 minus L.34 | $313,525,712 | | $315,435,713 | | $316,125,244 |
| 36. Sec. 809 Adj | $0 | | $0 | | $0 |
| 37. Net Increase in Res | $313,525,712 | | $315,435,713 | | $316,125,244 |

**Schedule D -- Capital Gains and Losses**

| | PER RAR | ADJUSTMENTS | PER APPEALS | ADJUSTMENTS | PER CLAIM |
|---|---|---|---|---|---|
| 5. Net STCG | $156,192,163 | | $156,192,163 | | $156,192,163 |
| 10. Net LTCL | $0 | | $0 | | $0 |
| 11. Net STCG over LTCL | $156,192,163 | | $156,192,163 | | $156,192,163 |
| 10. Net LTCG | $60,917,377 | $1,805,603 | $62,722,980 | | $62,722,980 |
| 5. Net STCL | $0 | | $0 | | $0 |
| 12. Net Capital Gain | $60,917,377 | | $62,722,980 | | $62,722,980 |
| 13. Line 11 + Line 12 | $217,109,540 | | $218,915,143 | | $218,915,143 |

| Adjustments Per Appeals Settlement | | | Adjustments Per Claim |
|---|---|---|---|
| Capital Gains | | | |
| #1 -- Jackson Mall | $1,805,603 | | |
| Other Income | | | |
| 90-94 #8 -- Spread | $862,665 | (Agreed spread adj.) | |
| 90-94 #9 -- Spread | $1,054,324 | (Agreed spread adj.) | |
| | $1,916,989 | | |
| Other Deductions | | | |
| #1 -- Contribution | $2,500,000 | | |
| #2 -- Int on Def Comp | $0 | (Reserved) | $8,513,845 |
| #3 -- Mercantile | $0 | (not 95 issue) | |
| #4 -- Depreciation | $95,586 | (Per settlement) | |
| #5 -- Roof Repairs | $8,796 | (Per settlement) | |
| #6 -- Resisted Claims | ($421,227) | (Per settlement) | |
| #10 -- DI Claim Reserves | $0 | (Appeals conceded) | |
| #12 -- DI Reserves | $334,775 | (Appeals conceded) | |
| #13 -- Ordinary Life IBNR | $0 | (Appeals conceded) | |
| #23 -- section 481 | $23,647,369 | (Settled) | |
| #25 -- RDER | $0 | (not 1995 issue) | |
| 1990-94 Issue #3 | $42,091 | | |
| | $26,207,390 | | |
| #7 -- SIA DRD | | | |
| MassMutual (to Sch A) | $11,414,338 | (Appeals conceded) | |
| MML Baystate (to Pg 1) | $239,765 | (Appeals conceded) | |
| Policyholder Dividends | | | |
| #8 -- Guaranteed Divs | $0 | (Reserved) | $118,975,383 |
| #9 -- Guaranteed Divs | $0 | (not 1995 issue) | |
| #20 -- January Divs | $0 | (not 1995 issue) | |
| #22 -- DA Contracts | $88,585 | (Appeals conceded) | |
| #23 -- Other Contracts | $2,485,180 | (Appeals conceded) | |
| | $2,573,765 | | |

**Adjustments Per Appeals Settlement (continued)** **Adjustments Per Claim**

| Reserves | Beginning | Ending | | Beginning | Ending |
|---|---|---|---|---|---|
| #11 -- DI IBNR | $8,187,527 | $7,264,144 | (IRS conceded) | | |
| #14 -- Int on Div Accums | ($4,590,605) | ($4,249,626) | (Settle per FSA) | | |
| #15 -- SWIL | ($376,975) | ($331,675) | (Reserve "PS") | $376,975 | $331,675 |
| #16 -- 58 CSO | ($2,686,178) | ($1,269,098) | (Reserve "PS") | $2,686,178 | $1,269,098 |
| #17 -- Term Conversions | $0 | $0 | (Reserve) | $10,388,504 | $12,704,653 |
| #18 -- Group Annuities | $0 | $0 | (Reserve) | $1,438,822 | $1,386,998 |
| #19 -- DA Contracts | ($2,683,528) | ($2,555,126) | (Reserve "PS") | $2,683,528 | $2,555,126 |
| #26 -- Traditional Life | $0 | $901,715 | (IRS conceded) | | |
| | ($2,149,759) | ($239,666) | | $17,574,007 | $18,247,550 |

| Policy Interest | | | |
|---|---|---|---|
| #11 -- DI IBNR | $477,671 | (Appeals conceded) | |
| #14 -- Int on Div Accums | ($245,190) | (Settle per FSA) | |
| #15 -- SWIL | ($15,594) | (Reserve -- "PS") | $15,594 |
| #16 -- 58 CSO | ($87,035) | (Reserve -- "PS") | $87,035 |
| #17 -- Term Conversions | $0 | (Reserve) | $564,967 |
| #19 -- DA Contracts | ($176,908) | (Reserve -- "PS") | $176,908 |
| #21 -- Required Interest | $0 | (Reserve) | ($95,835,725) |
| #26 -- Traditional Life | $30,451 | (IRS conceded) | |
| | ($16,605) | | ($94,991,221) |

| Equity Base | Beginning | Ending | | Beginning | Ending |
|---|---|---|---|---|---|
| #11 -- DI IBNR | ($8,187,527) | ($7,264,144) | (IRS conceded) | | |
| #14 -- Int on Div Accums | $4,590,605 | $4,249,626 | (Settle per FSA) | | |
| #15 -- SWIL | $376,975 | $331,675 | (Reserve "PS") | ($376,975) | ($331,675) |
| #16 -- 58 CSO | $2,686,178 | $1,269,098 | (Reserve "PS") | ($2,686,178) | ($1,269,098) |
| #17 -- Term Conversions | $0 | $0 | (Reserve) | ($10,388,504) | ($12,704,653) |
| #18 -- Group Annuities | $0 | $0 | (Reserve) | ($1,438,822) | ($1,386,998) |
| #19 -- DA Contracts | $2,683,528 | $2,555,126 | (Reserve "PS") | ($2,683,528) | ($2,555,126) |
| #24 -- Loss on Bonds | $0 | $0 | (Reserve) | ($35,602,453) | ($66,335,387) |
| #24 -- Loss on Stock | $0 | $0 | (Reserve) | ($2,506,088) | ($1,786,750) |
| #24 -- Resisted Claims | $0 | $0 | (Reserve) | ($250,804) | ($162,718) |
| #24 -- Mortgage Reserve | $0 | $0 | (Reserve) | ($95,767,365) | ($74,965,788) |
| #24 -- Guarantee Fund | $0 | $0 | (Reserve) | ($16,378,000) | ($13,308,900) |
| #26 -- Traditional Life | $0 | ($901,715) | (IRS conceded) | | |
| | $2,149,759 | $239,666 | | ($168,078,717) | ($174,807,093) |

**Adjustments Per Appeals Settlement (continued)**

**tments Per Claim**

**Recomputed 1994 DEA**

| | Per RAR | Per Appeals |
|---|---|---|
| Average Equity Base | $0 | $0 |
| DER | 0.0000% | 0.0000% |
| DEA | $0 | $0 |
| | | |
| Average Equity Base | $0 | $0 |
| Recomputed DER | 0.0000% | 0.0000% |
| Recomputed DEA | $0 | $0 |
| | | |
| 808(f) Income/Deduction | $0 | $0 |

| | |
|---|---|
| 1994 AEB | $2,630,736,196 |
| | 3.271% |
| Tax Benefit Rule | $86,051,381 |

Note re. cell D33 -- The environmental tax is computed based on TI before the deduction of environmental tax. Thus, this number starts with Total Consolidated TI, per cell D20, and adds back the amount in cell D75.

Note re. cell D75 -- This extra deduction is the difference between the $808,647 environmental tax deduction per the return and the Appeals deduction computed to be $933,957.

# MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY
# ADDENDUM TO 1995 CLAIM FOR REFUND

This Addendum is annexed to and forms a part of the claim for refund filed on Form 1120X by Massachusetts Mutual Life Insurance Company, hereinafter referred to as "Taxpayer." Taxpayer has overpaid its Federal income tax for 1995 by $75,267,904. It hereby claims a refund in that amount, or such greater amount as is legally refundable, together with assessed interest, as well as statutory interest on the amount to be refunded.

## Jurisdictional Statement

At all times during 1995 Taxpayer was a life insurance company as defined in section 816 of the Internal Revenue Code (hereinafter all references are to sections of the Internal Revenue Code as in effect for 1995, unless otherwise indicated). Taxpayer timely filed its Federal income tax return for 1995 and paid in full the tax liability reported on that return.

Upon audit of Taxpayer's return for the year 1995, a number of adjustments were proposed by the District Director's Office. Upon consideration of those proposed adjustments by the Taxpayer and the Boston Appeals Office of the Internal Revenue Service, a settlement on Form 870-AD was reached pursuant to which an deficiency of $35,966,674 in Federal income tax for 1995 was determined. Taxpayer has paid that deficiency.

As part of the agreement reached on the Form 870-AD, Taxpayer reserved the right to file a refund claim for 1995 with respect to certain issues. Those issues form the basis for this claim for refund.

This refund claim is timely filed pursuant to section 6511(c) and 6511(d)(2), which permit a refund claim to be filed before the expiration of six months after the expiration of the period for assessment. The period for assessment for the year 1995 was extended by means of Forms 872 and (pursuant to the most recently executed Form 872) did not expire any earlier than December 31, 2004, and the period for timely filing this refund claim thus extends at least through June 30, 2005.

Statement of Claim

The refund sought in this claim for refund is based on the following issues. With respect to each issue, Taxpayer incorporates herein by reference the relevant portions of its Protest filed with the Internal Revenue Service for the years 1995 through 1997 and dated November 15, 2002. Taxpayer is entitled to prevail with respect to each of these issues for the reasons set forth below.

1. Interest on Deferred Compensation

On its Federal income tax return for 1995, Taxpayer claimed, and the Internal Revenue Service allowed, deductions for interest with respect to non-qualified plans of deferred compensation when such amounts of interest are paid to employees. However, Taxpayer is entitled to deductions for such interest as it credits the interest to the employees' deferred compensation accounts. For 1995, Taxpayer claims an additional deduction for interest credited in the amount of $8,513,845. The Internal Revenue Service has failed to allow that claim for an additional interest deduction.

While under section 404 deferred compensation may only be deducted when paid to an employee, interest is not compensation, and is thus deductible under section 805(a)(8) when Taxpayer's liability for the interest accrues. Section 404 does not for any reason prohibit the accrual of interest.

In Albertson's Inc. v. Commissioner, the Ninth Circuit originally held that a corporation could currently deduct interest credited under non-qualified deferred compensation agreements, because such interest is not subject to section 404. Albertson's Inc. v. Commissioner, 38 F.3d 1046 (9th Cir. 1993), aff'g in part, rev'g in part 95 T.C. 415 (1990). However, the Court reversed itself upon rehearing and held that such interest is nondeductible until paid to the employee, although the court stated that "the answer is far from clear." Albertson's Inc. v. Commissioner, 42 F.3d 537 (9th Cir. 1994), vacating 38 F.3d 1046 (9th Cir. 1993). Taxpayer believes that the Court's original decision is correct, and that the reasoning of such decision ultimately will prevail.

Accordingly, Taxpayer is entitled to a refund of all overpayments in tax due to the Internal Revenue Service's failure to allow the claimed interest deductions.

2. Policyholder Dividend Guarantee

Taxpayer is entitled to deduct its liability for guaranteed aggregate policyholder dividends under the recurring item exception of section 461(h)(3). In the alternative, Taxpayer claims an additional deduction on the ground that the liability satisfies the economic performance requirements of section 461(h)(1) and (2).

For 1995, this issue involves policies issued by Massachusetts Mutual Life Insurance Company ("MassMutual Policies"). With respect to the MassMutual Policies, Taxpayer is obligated to pay policyholder dividends. At the end of each year, Taxpayer's board of directors approves a report, submitted to it by Taxpayer's management, that discusses Taxpayer's

financial results for the current year, recommends the adoption of bases and formulae upon which policyholder dividends for individual policies in the following year are to be computed, and sets forth an estimate of the total amount of divisible surplus to be paid as policyholder dividends in the following year. After this dividend resolution is approved by the board of directors, the total amount of dividends payable is set aside as a liability on Taxpayer's annual statement. The resulting policyholder dividends liability, in the amount of $517.3 million for the year 1995, was reported on page 3 (Liabilities, Surplus & Other Funds) of Taxpayer's annual statement for that year.

Subsequently, for the year 1995, on December 13, 1995, Taxpayer's board of directors adopted a second resolution supplementing the resolution previously adopted by the board of directors. In this second resolution, the board of directors determined that "the Company hereby absolutely and irrevocably commits and guarantees that, of the total [policyholder dividend] apportionment from its surplus funds for the [year 1995], it will pay or cause to be applied during [1996], in all events, annual dividends for participating individual life and annuity policies issued after December 31, 1983, in an amount of not less than" $185 million.

Taxpayer is entitled to accrue its liability to pay guaranteed aggregate policyholder dividends, and is entitled to deduct that accrual. Taxpayer determined this deduction, under the recurring item exception of section 461(h)(3), as the portion of the guaranteed aggregate policyholder dividend that was paid during the 8 1/2 months after year-end. The amounts of the accrued liability and the corresponding deduction that Taxpayer originally claimed are as follows:

| **MassMutual Policies** | 1995 |
|---|---|
| Current-Year Accrual | $125,705,981 |
| Prior-Year Accrual | $ -0- |
| Claimed Deduction | $125,705,981 |

Additional substantiation of the foregoing deduction revealed corrected amounts of aggregate policyholder dividends paid within 8 1/2 months after year-end 1995. Accordingly, Taxpayer now claims a deduction for its liability to pay guaranteed aggregate policyholder dividends in the following amount:

| **MassMutual Policies** | 1995 |
|---|---|
| Current-Year Accrual | $118,975,383 |
| Prior-Year Accrual | $ -0- |
| Claimed Deduction | $118,975,383 |

At year-end 1995, Taxpayer unconditionally and irrevocably committed itself to pay at least the specified amounts of aggregate policyholder dividends in the following year. At year-end, it was known with certainty that at least the guaranteed amount of aggregate policyholder dividend liability would be satisfied in the next year by the payment of annual dividends. That guaranteed aggregate dividend liability therefore must be considered "fixed" for purposes of the "all events" test. Hughes Properties, Inc v. United States, 476 U.S. 593 (1986); Gold Coast Hotel & Casino v. United States, 158 F.3d 484 (9th Cir. 1998); Burnham Corp. v. Commissioner, 90 T.C. 953 (1988), aff'd, 878 F.2d 86 (2d Cir. 1989). Both prongs of the all-events test are satisfied, and Taxpayer's guaranteed aggregate policyholder dividends liability is accrued.

Taxpayer is entitled to compute its aggregate policyholder dividend deduction for the year 1995 based on the recurring item exception. All four requirements needed for the recurring item exception to apply are satisfied and, under the terms of the statute, the recurring item exception must be used to account for the policyholder dividends in question.

In the alternative, Taxpayer claims that it is entitled to deduct the full amounts of its guaranteed aggregate policyholder dividends liability, not merely the amounts claimed under the recurring item exception, on the ground that such liability satisfies the requirements for economic performance. The amount of this aggregate policyholder dividends liability is $185 million for the year 1995.

In exchange for premiums received from its policyholders, Taxpayer provides underwriting and investment services to those policyholders. With respect to the services provided, those services are fully provided during the course of the year. With respect to Taxpayer's use of the policyholders' premiums, that use also fully occurs during the course of the year. Based on this provision of services and use of property, Taxpayer is able to determine and declare its policyholder dividends liability at each year end. With respect to that liability, economic performance has occurred by year end. Accordingly, Taxpayer is entitled to deduct the full amount of its guaranteed aggregate policyholder dividends liability for the year 1995.

3. Minimum Premium Plan

On its Federal income tax return for 1994, Taxpayer excluded "supplemental premiums" with respect to minimum premium plans from its premium income, and made consistent adjustments to death benefits and reserves. The Internal Revenue Service disallowed this tax return treatment, making the following adjustments:

| Adjustment | Amount |
|---|---|
| Decrease gross premiums | $(4,205,061) |
| Decrease death benefits | $ (259,169) |
| Increase beginning-of-year reserves | $ 33,923,772 |
| Increase year-end reserves | $ 33,133,342 |

In addition, the Internal Revenue Service increased reserve weakening income for the year 1994 by $819,000. Finally, the Internal Revenue Service increased Taxpayer's year-end 1993 equity base by $1,347,164 and Taxpayer's year-end 1994 equity base by $1,212,048.

As of the end of the year 1994, the amount of the supplemental premium income accrual that existed under the Internal Revenue Service's position was $96,035,595, the amount of the

liability for death benefits that existed under the Internal Revenue Service's position was $32,890,887, and the amount of the reserves that existed under the Internal Revenue Service's position was $33,133,342.

During the year 1995, the minimum premium plan line of business was reinsured to MMLPension, and MMLPension continued to take the position that supplemental premiums were not accrued and should not be included in income.

For years before 1995, Taxpayer has claimed that the Internal Revenue Service's adjustments with respect to minimum premium plans are erroneous and should be rejected. As of the date of the filing of this refund claim, that controversy was not resolved. In the event that Taxpayer does not ultimately prevail with respect to that controversy in pre-1995 years, Taxpayer makes this protective claim for adjustments for the year 1995 that are consistent with the resolution of the minimum premium plan issue in pre-1995 years. Such adjustments may involve the reversal of the year-end 1994 accrual balance and liability balances described above. Such adjustments also may involve the application of the tax benefit rule and other legal and equitable doctrines that may apply, including those that may reinforce and supplement the tax benefit rule.

4. Survivorship Whole Life Insurance Reserves

On its 1995 Federal income tax return, Taxpayer reported life insurance reserves for its 1984 through 1987 issues of survivorship whole life ("SWL") insurance policies computed using the 1958 CSO mortality table and a 4.5 percent assumed interest rate. On audit, the Internal Revenue Service took the position that, for 1984 and 1985 issues of these contracts, the prevailing valuation standard is the 1958 CSO table and a 6 percent assumed interest rate. For

1986 issues of these contracts, the Internal Revenue Service took the position that the prevailing valuation standard is the 1980 CSO table and a 6 percent assumed interest rate. For 1987 issues of these contracts, the Internal Revenue Service took the position that the prevailing valuation standard is the 1980 CSO table and a 5.5 percent assumed interest rate. Based on its position, the Internal Revenue Service allowed decreased amounts of reserves. The amounts of the originally reported reserves are as follows:

| January 1, 1995 | December 31, 1995 |
|---|---|
| $ 81,876,633 | $ 90,312,732 |

The amounts of the decreased reserves as computed and allowed by the Internal Revenue Service are as follows:

| January 1, 1995 | December 31, 1995 |
|---|---|
| $ 81,499,658 | $ 89,981,057 |

The Internal Revenue Service has disallowed a portion of Taxpayer's reported reserves, which were computed on the basis of the prevailing standards listed above. These reserves meet all of the requirements necessary to constitute "life insurance reserves" within the meaning of sections 816 and 807, and are properly computed under section 807. Consequently, Taxpayer is entitled to use such reported reserves in computing its reserve increase deduction and its tax due for 1995.

In addition, as a result of allowance of the reserves computed on the basis of prevailing standards listed above, Taxpayer is entitled to a corresponding adjustment reducing the excess of statutory over tax reserves in the computation of its year-end 1994 equity base under section 809(b) in the amount of $376,975 and its year-end 1995 equity base under section 809(b) in the amount of $331,675. Moreover, as a result of allowance of the reserves computed on the basis of

prevailing standards listed above, Taxpayer is entitled to a corresponding adjustment increasing its policy interest under section 812(b)(2) in the amount of $15,594.

While Taxpayer should be allowed to use the reserves listed above, the Internal Revenue Service has failed to permit use of such reserves, resulting in an overpayment of Taxpayer's Federal income taxes for 1995. Claim is hereby made for refund of that overpayment in tax.

5. "58 CSO" Permanent Life Insurance Reserves

On its 1995 Federal income tax return, Taxpayer reported life insurance reserves for its 1984 through 1987 issues of "58 CSO" permanent life insurance policies computed using the 1958 CSO mortality table and a 4.5 percent assumed interest rate. For 1988 issues of these policies, Taxpayer calculated reserves using the 1958 CSO mortality table and a 7.77 percent assumed interest rate. On audit, the Internal Revenue Service took the position that, for 1984 and 1985 issues of these contracts, the prevailing valuation standard is the 1958 CSO table and a 6 percent assumed interest rate. For 1986 issues of these contracts, the Internal Revenue Service took the position that the prevailing valuation standard is the 1980 CSO table and a 6 percent assumed interest rate. For 1987 issues of these contracts, the Internal Revenue Service took the position that the prevailing valuation standard is the 1980 CSO table and a 5.5 percent assumed interest rate. For 1988 and 1989 issues of these contracts, the Internal Revenue Service took the position that the prevailing valuation standard is the 1980 CSO table and assumed interest rates of 7.77 percent and 8.16 percent, respectively. Based on its position, the Internal Revenue Service allowed decreased amounts of reserves. The amounts of the originally reported reserves are as follows:

| January 1, 1995 | December 31, 1995 |
|---|---|
| $1,293,597,138 | $1,403,221,952 |

The amounts of the decreased reserves computed and allowed by the Internal Revenue Service are as follows:

| January 1, 1995 | December 31, 1995 |
|---|---|
| $1,290,910,960 | $1,401,952,854 |

The Internal Revenue Service has disallowed a portion of Taxpayer's reported reserves, which were computed on the basis of the prevailing standards listed above. These reserves meet all of the requirements necessary to constitute "life insurance reserves" within the meaning of sections 816 and 807, and are properly computed under section 807. Consequently, Taxpayer is entitled to use such reported reserves in computing its reserve increase deduction and its tax due for 1995.

In addition, as a result of allowance of the reserves computed on the basis of prevailing standards listed above, Taxpayer is entitled to a corresponding adjustment reducing the excess of statutory over tax reserves in the computation of its year-end 1994 equity base under section 809(b) in the amount of $2,686,178 and its year-end 1995 equity base under section 809(b) in the amount of $1,269,098. Moreover, as a result of allowance of the reserves computed on the basis of prevailing standards listed above, Taxpayer is entitled to a corresponding adjustment increasing its policy interest under section 812(b)(2) in the amount of $87,035.

While Taxpayer should be allowed to use the reserves listed above, the Internal Revenue Service has failed to permit use of such reserves, resulting in an overpayment of Taxpayer's Federal income taxes for 1995. Claim is hereby made for refund of that overpayment in tax.

6. Term Conversion Reserves

On its 1995 Federal income tax return, Taxpayer reported life insurance reserves under certain contracts with respect to term conversion provisions. Under these provisions, for which there was a separately identified premium or charge, the insured had the ability to convert the term policy into a permanent policy at a standard rate, regardless of any medical or physical impairment. On its return for 1995, Taxpayer reported these term conversion reserves as reserves for "qualified supplemental benefits" within the meaning of section 807(e)(3). On audit, the Internal Revenue Service disallowed that treatment, and allowed decreased amounts of reserves. The amounts of the originally reported reserves are as follows:

| | January 1, 1995 | December 31, 1995 |
|---|---|---|
| Individual | $ 39,451,783 | $ 39,293,953 |
| Group | $ 12,158,387 | $ 12,821,271 |

The amounts of the decreased reserves computed and allowed by the Internal Revenue Service are as follows:

| | January 1, 1995 | December 31, 1995 |
|---|---|---|
| Individual | $ 30,026,468 | $ 27,744,792 |
| Group | $ 11,195,198 | $ 11,665,779 |

These term conversion reserves as reported by Taxpayer meet all of the requirements necessary to constitute "life insurance reserves" within the meaning of section 816 and are properly computed under section 807. In addition, the reserves qualify as "life insurance reserves" under section 807(c)(1) and as reserves for "qualified supplemental benefits" under section 807(e)(3). Consequently, Taxpayer is entitled to use such reported reserves in computing its reserve increase deduction and its tax due for 1995.

In addition, as a result of allowance of the term conversion reserves listed above,

Taxpayer is entitled to a corresponding adjustment reducing the excess of statutory over tax reserves in the computation of its year-end 1994 equity base under section 809(b) in the amount of $10,388,504, and an adjustment reducing the excess of statutory over tax reserves in the computation of its year-end 1995 equity base under section 809(b) in the amount of $12,704,653. Moreover, as a result of allowance of the term conversion reserves listed above, Taxpayer is entitled to a corresponding adjustment increasing its policy interest under section 812(b)(2) in the amount of $564,967.

While Taxpayer should be allowed to use the reserves listed above, the Internal Revenue Service has failed to permit use of such reserves, resulting in an overpayment of Taxpayer's Federal income taxes for 1995. Claim is hereby made for refund of that overpayment in tax.

7. Group Annuity Contract Reserves

On its 1995 Federal income tax return, Taxpayer reported life insurance reserves under certain group annuity contracts. Under these group annuity contracts, which are issued to employers, Taxpayer issues annuity certificates that evidence its obligation to pay annuity benefits to retired employees. Taxpayer holds reserves with respect to its obligation to provide these annuity benefits. On its return for 1995, Taxpayer reported these group annuity reserves as life insurance reserves under section 807(c)(1). In computing these reserves, Taxpayer applied the section 807(d) "annual statement cap" by comparing tax reserves to statutory reserves at the group annuity contract level, rather than at the individual certificate level. On audit, the Internal Revenue Service required that the comparison between tax reserves and statutory reserves be made on a certificate-by-certificate basis, rather than on the group annuity contract basis. On this basis, the Internal Revenue Service disallowed a portion of the group annuity reserves. The amounts of the originally reported reserves are as follows:

| January 1, 1995 | December 31, 1995 |
|---|---|
| $2,120,838,427 | $2,073,140,058 |

The amounts of the decreased reserves computed and allowed by the Internal Revenue Service are as follows:

| January 1, 1995 | December 31, 1995 |
|---|---|
| $2,119,399,605 | $2,071,753,060 |

These group annuity reserves as reported by Taxpayer meet all of the requirements necessary to constitute "life insurance reserves" within the meaning of section 816. In addition, the reserves qualify as "life insurance reserves" under section 807(c)(1) and are properly computed under section 807(d). Consequently, Taxpayer is entitled to use such reported reserves in computing its tax due for 1995.

Moreover, as a result of allowance of the reserves listed above Taxpayer is entitled to a corresponding adjustment reducing the excess of statutory over tax reserves in the computation of its year-end 1994 equity base under section 809(b) in the amount of $1,438,822, and a corresponding adjustment reducing the excess of statutory over tax reserves in the computation of its year-end 1995 equity base under section 809(b) in the amount of $1,386,998.

While Taxpayer should be allowed to use the reserves listed above, the Internal Revenue Service has failed to permit use of such reserves, resulting in an overpayment of Taxpayer's Federal income taxes for 1995. Claim is hereby made for refund of that overpayment in tax.

8. Deposit Administration Group Annuity Contract Reserves

On its 1995 Federal income tax return, Taxpayer reported life insurance reserves held with respect to deposit administration group annuity contracts ("DA contracts"). Under these DA contracts, Taxpayer maintained a policyholder's fund, referred to as the "Active Life Fund"

(or "ALF"). On its annual statement for the year 1995, Taxpayer reported reserves for DA contracts equal in amount to 97.5 percent of the ALF. On its 1995 Federal income tax return, Taxpayer reported tax reserves for DA contracts in accordance with section 807(d) and 807(e)(1)(B) equal in amount to 97.5 percent of the ALF. On audit, the Internal Revenue Service allowed reserves for DA contracts equal in amount to only 95 percent of the ALF. The amounts of the originally reported reserves are as follows:

| December 31, 1994 | December 31, 1995 |
|---|---|
| $ 105,091,791 | $ 100,110,011 |

The amounts of the decreased reserves computed and allowed by the Internal Revenue Service are as follows:

| December 31, 1994 | December 31, 1995 |
|---|---|
| $ 102,408,263 | $ 97,554,885 |

The basis for the Internal Revenue Service's adjustment is that the DA contracts provide for surrender charges, which must be excluded from tax reserves. However, the DA contracts do not provide for surrender charges. The reserves as reported on the 1995 Federal income tax return meet all of the requirements necessary to constitute tax reserves and are properly computed under section 807. Consequently, Taxpayer is entitled to use such reported reserves in computing its reserve increase deduction and its tax due for 1995.

In addition, as a result of allowance of the reserves for DA contracts listed above, Taxpayer is entitled to a corresponding adjustment reducing the excess of statutory over tax reserves in the computation of its year-end 1994 equity base under section 809(b) in the amount of $2,683,528, and in the computation of its year-end 1995 equity base under section 809(b) in the amount of $2,555,126. Moreover, as a result of allowance of the reserves for DA contracts

listed above, Taxpayer is entitled to a corresponding adjustment increasing its policy interest under section 812(b)(2) in the amount of $176,908.

While Taxpayer should be allowed to use the reserves listed above, the Internal Revenue Service has failed to permit use of such reserves, resulting in an overpayment of Taxpayer's Federal income taxes for 1995. Claim is hereby made for refund of that overpayment in tax.

9. Required Interest

On its 1995 Federal income tax return, Taxpayer reported tax reserves for certain contracts computed as the net surrender value under section 807(d)(1). With respect to these contracts, Taxpayer reported "required interest" under section 812(b)(2) using "another appropriate rate," *i.e.*, the rate reflected in the contract's guaranteed minimum nonforfeiture values. On its 1995 Federal income tax return, Taxpayer reported required interest in the amount of $318,384,524. On audit, the Internal Revenue Service increased the amount of required interest to $414,220,249.

The basis for the Internal Revenue Service's adjustment is that, under LTR 9246001 (October 30, 1991), required interest must be computed using the prevailing State interest rate even in cases where the tax reserve for a contract is the net surrender value. However, in cases where the tax reserve for a contract is the net surrender value, the rate reflected in the contract's guaranteed minimum nonforfeiture values is the "other appropriate rate" that must be utilized for purposes of section 812(b)(2).

While Taxpayer should be allowed to use the rate reflected in the contract's guaranteed minimum nonforfeiture values as the "other appropriate rate" for purposes of section 812(b)(2), the Internal Revenue Service has failed to permit use of such rate, resulting in an overstatement of required interest for 1995 and an overpayment of Taxpayer's Federal income taxes for 1995.

Claim is hereby made for refund of that overpayment in tax.

10. Section 809 Equity Base Adjustments

Section 809 adjusts the life insurance company taxable income of mutual life insurance companies based on a comparison of the relative returns on equity of the 50 largest stock life insurance companies and all mutual life insurance companies. Section 809(a), first, provides that the deduction allowed mutual life insurance companies for policyholder dividends (and in some instances the deduction for reserve increases) must be reduced by the "differential earnings amount," which equals the "average equity base" multiplied by the "differential earnings rate." Section 809(f), second, provides for certain adjustments based upon the "recomputed differential earnings amount." Annual statement accounting treatment is controlling for section 809 purposes.

The "average equity base" for each year is the average of the equity base for that year and the equity base for the preceding year. Section 809(b)(1). The starting point for determining the equity base for a year is the surplus and capital reported on the annual statement for the year. From this amount, certain adjustments are required, such as for "nonadmitted financial assets," for any "voluntary reserve," and for the excess of statutory reserves over tax reserves. Section 809(b).

On its Federal income tax return for the year 1995, Taxpayer properly reported its average equity base. However, the Internal Revenue Service has adjusted Taxpayer's average equity base based upon the following issues. Taxpayer disagrees with each of these adjustments.

On its 1994 and 1995 annual statements, Taxpayer wrote down the book value of certain bonds reported in Schedule D, Part I to account for the Taxpayer's "unrealized loss on bonds."

Consistently, on its 1995 Federal income tax return, Taxpayer's year-end 1994 and 1995 equity bases were reduced by the amounts of the "unrealized loss on bonds." On audit, the Internal Revenue Service treated the amounts of the reduction as a non-admitted financial asset, thereby increasing Taxpayer's reported equity bases. The Internal Revenue Service increased Taxpayer's year-end 1994 equity base by $35,602,453 and its year-end 1995 equity base by $66,335,387.

On its 1994 and 1995 annual statements, Taxpayer also wrote down the book value of certain preferred stock to account for the Taxpayer's "unrealized loss on preferred stock." Consistently, on its 1995 Federal income tax return, Taxpayer's year-end 1994 and 1995 equity bases were reduced by the amounts of the "unrealized loss on preferred stock." On audit, the Internal Revenue Service treated the amounts of the reduction as a non-admitted financial asset, thereby increasing Taxpayer's reported equity bases. The Internal Revenue Service increased Taxpayer's year-end 1994 equity base by $2,506,088 and its year-end 1995 equity base by $1,786,750.

Taxpayer is entitled to its tax return treatment of the items described above. Section 809(g)(3) requires that all determinations made under section 809 "shall be made on the basis of the amounts required to be set forth on the annual statement," and Taxpayer properly reported the items described above in its annual statement. The NAIC requires that certain no-bonds be reduced in value to at least a specified value, and Taxpayer was required to reduce the value of other bonds and preferred stock that it determined to be permanently impaired during the tax year. Furthermore, generally accepted accounting principles ("GAAP") must be applied in the absence of specific rules, and GAAP requires that permanently impaired investments must be written down.

On its annual statements for 1994 and 1995, Taxpayer reported its liability for resisted

death claims, and used those amounts in computing its year-end 1994 and 1995 equity bases. On audit, the Internal Revenue Service disallowed a portion of Taxpayer's reported liability as a deduction for income tax purposes and made a related adjustment to the year-end 1994 and 1995 equity bases, treating a portion of such liability as a voluntary reserve. The Internal Revenue Service increased the year-end 1994 equity base by $250,804 and the year-end 1995 equity base by $162,718. The Internal Revenue Service improperly increased the year-end 1994 and 1995 equity bases by such resisted claim amounts. The Internal Revenue Service incorrectly substituted tax accounting standards for annual statement accounting rules. Life insurers are required to establish liabilities for resisted claims. In fact, various schedules to the annual statement make specific reference to resisted claims. Thus, the adjustments made to the equity bases should be reversed, and the section 809 equity bases should be reduced by the amounts in issue.

On its annual statements for 1994 and 1995, Taxpayer established a mortgage loan reserve and a real estate reserve. The mortgage loan reserve reflects, for mortgage loans in default, the excess of the outstanding debt over the expected value of the collateral property. The real estate reserve reflects, for depreciated property, the excess of book value over market value. Taxpayer reflected those amounts in computing its year-end 1994 and 1995 equity bases. On audit, the Internal Revenue Service made an adjustment to the year-end 1994 and 1995 equity bases, treating such reserves as voluntary reserves. The Internal Revenue Service increased the year-end 1994 equity base by $95,767,365, and the year-end 1995 equity base by $74,965,788. The Internal Revenue Service improperly increased the year-end 1994 and 1995 equity bases by such reserve amounts. The Internal Revenue Service incorrectly substituted tax accounting standards for annual statement accounting rules. Life insurers are required to establish these

reserves. In fact, instructions to the annual statement make specific reference to these reserves. Thus, the adjustments made to the equity base should be reversed, and the section 809 equity base should be reduced by the amounts in issue.

On its annual statements for 1994 and 1995, Taxpayer established a liability for guarantee fund assessments. This liability reflected Taxpayer's obligation to pay assessments made by insurance regulators due to insurer insolvencies. Taxpayer reflected this amount in computing its year-end 1994 and year-end 1995 equity bases. On audit, the Internal Revenue Service made an adjustment to the year-end 1994 and 1995 equity bases, treating such liability as a voluntary reserve. The Internal Revenue Service increased the year-end 1994 equity base by $16,378,000 and the year-end 1995 equity base by $13,308,900. The Internal Revenue Service improperly increased the year-end 1994 and 1995 equity bases by such amounts. The Internal Revenue Service incorrectly substituted tax accounting standards for annual statement accounting rules. Thus, the adjustment made to the equity bases should be reversed, and the section 809 equity bases should be reduced by the amounts in issue.

Lastly, based on various reserve adjustments that are characterized as erroneous adjustments in this and related refund claims, the Internal Revenue Service has increased Taxpayer's section 809 equity bases for year-end 1994 and 1995 by the excess of statutory reserves over tax reserves. Because those reserve adjustments are erroneous for the reasons described in this and related refund claims, there is no such excess, there is no basis for such adjustment.

Based on the foregoing, claim is hereby made for refund of all overpayments in tax due to section 809 equity base adjustments.

11. Negative Recomputed Differential Earnings Rate and the Tax Benefit Rule.

In the computation of its tax liability for the years 1992, 1993 and 1994 under Code section 809, Taxpayer claims that it is entitled to use negative 1991, 1992 and 1993 recomputed DERs. As a result, Taxpayer contends that it is entitled to certain deductions for the years 1992, 1993 and 1994 in Code section 809 calculations. For example, in computing the 1991 recomputed DER (which impacts taxable income for the year 1992), Taxpayer is entitled to deduct the 1991 average mutual earnings rate from the 1991 imputed earnings rate. Also, for example, Taxpayer is entitled to a section 809(f)(2) deduction for the year 1992 based on its 1991 recomputed DEA.

If Taxpayer does not prevail on the 1991 negative recomputed DER issue raised in respect of the year 1992, a portion of the deductions claimed for that year, to which Taxpayer is entitled, will not have provided Taxpayer with any tax benefit. The same holds true if Taxpayer does not prevail on the 1992 and 1993 negative recomputed DER issues raised in respect of the years 1993 and 1994, respectively.

Taxpayer affirmatively claims that, if does not prevail on the negative recomputed DER issues raised for the years 1992, 1993 and 1994, then Taxpayer is entitled to exclude from income for the year 1995, under the tax benefit rule, a portion of the amount associated with the above-described prior year (1992, 1993 and 1994) deductions that did not produce a tax benefit to Taxpayer. As discussed below, the amount of the recovery that Taxpayer affirmatively claims should be excluded from its income for the year 1995 is $86,051,381.

The tax benefit rule is a judicially created rule that is partially codified in Code section 111. Under the tax benefit rule, a "recovery" of an amount deducted from income in a prior year must be excluded from income to the extent that the prior year deduction did not produce a tax benefit to the taxpayer. The tax benefit rule is designed to alleviate "some of the inflexibilities of the annual accounting system" and to relieve "transactional inequities." Hillsboro National Bank v. Commissioner, 460 U.S. 370, 377 (1983). A "recovery" will invoke the application of the tax

benefit rule, and a recovery will occur when an event occurs in the later year that is "fundamentally inconsistent" with the premise on which the earlier deduction was based. Id. at 383. The exclusionary aspect of the tax benefit rule more generally requires the exclusion of an amount otherwise required to be included in income when a tax benefit was not derived from a related deduction involving the same transaction.

If Taxpayer does not prevail on the negative recomputed DER issues raised for the years 1992, 1993 and 1994, then Taxpayer is entitled to exclude from income for the year 1995, under the tax benefit rule, a portion of the amount associated with the above-described prior year (1992, 1993 and 1994) deductions that did not produce a tax benefit to Taxpayer. The amount that must be excluded from income in each such year constitutes a "recovery" and is based on "fundamentally inconsistent" events for purposes of the tax benefit rule.

The "fundamentally inconsistent" event, and thus the "recovery," occurs as the full 1991, 1992 and 1993 stock rates are used to compute the 1994 imputed rate, and the 1994 recomputed DER. This is "fundamentally inconsistent" because the full 1991, 1992 and 1993 mutual rates were not allowed to produce a tax benefit as a deduction in computing the 1991, 1992 and 1993 recomputed DERs, respectively. This also is "fundamentally inconsistent" because, due to the different year rate comparison[1] used to compute the 1991, 1992 and 1993 recomputed DERs, the full amount of the section 809(f)(2) deductions attributable the 1991, 1992 and 1993 recomputed DERs (claimed for 1992, 1993 and 1994, respectively) were not allowed to produce a tax benefit.

To be consistent, a portion of the income for the year 1995 that results from taking the 1991, 1992 and 1993 stock rates fully into account in the year 1995 (as components of the 1994 imputed earnings rate) should be treated as a "recovery" and excluded from income for 1995. The effect of the exclusion will be to more accurately measure equity returns of Taxpayer consistent with the intent of section 809 and the requirements of the tax benefit rule.

---

[1] For example, the 1991 recomputed DER is computed by comparing the 1991 mutual rate to an imputed rate that is based on the stock rates for 1988, 1989 and 1990.

The "recovery" that should be excluded for the year 1995 can be measured by reducing the 1991, 1992 and 1993 stock earnings rates to reflect the disallowed 1991, 1992 and 1993 recomputed DERs.[2] For example, the 1994 imputed rate, and thus the 1994 recomputed DER, would be computed using a 1991 stock earnings rate of 17.241 percent (i.e., the calculated rate of 19.667 percent reduced by the disallowed 1991 recomputed DER of negative 2.426 percent). Under the statutory formula, this will reduce the 1994 imputed earnings rate, and thus the 1994 recomputed DER, by 0.732 percentage points (*i.e.*, negative 2.426 percent, divided by 3, times 90.55 percent). The amount by which the 1994 imputed earnings rate, and the 1994 recomputed DER, are to be reduced attributable to the decreased 1991, 1992 and 1993 stock earnings rates is as follows:

| | 1991 | 1992 | 1993 | 1994 |
|---|---|---|---|---|
| 1. Stock earnings rate | 19.667% | 7.004% | 23.385% | |
| 2. Disallowed RDER | -2.426% | -2.615% | -5.795% | |
| a. divided by 3 | 3 | 3 | 3 | |
| b. | -0.808% | -0.872% | -1.932% | |
| c. times 90.55% | 90.55% | 90.55% | 90.55% | |
| d. | -0.732% | -0.789% | -1.749% | |
| 3. Sum of amounts in Line 2.d. | | | | -3.271% |

Consistent with the foregoing, solely for purposes of computing the amount of the recovery, the 1994 recomputed DER should be reduced by 3.271 percentage points, from 5.887 percent to

[2] Taxpayer does not claim that the tax benefit rule applies to modify or amend the language or operation of section 809 or the formulae contained in that provision. The calculations described in the text are intended solely to measure the amount of the recovery, in a rational manner that reflects the statutory mechanism.

2.616 percent.

Under this theory, the amount of the income "recovery" to be excluded for the year 1995 is computed by multiplying the reduction in the recomputed DER for the year 1994 (3.271 percent) times the average equity base for the year 1994 ($2,630,736,196, per Taxpayer's 1994 claim for refund). As a result of this calculation, the Company is entitled to exclude from income for the year 1995 under the tax benefit rule the amount of $86,051,381, computed as follows:

| | 1995 |
|---|---|
| 1994 Average Equity Base | $2,630,736,196 |
| Percentage | 3.271% |
| "Recovery" to be Excluded | $ 86,051,381 |

Based on the foregoing, in the event that Taxpayer is not entitled to use the 1991, 1992 and 1993 negative recomputed DERs, it is entitled to exclude the above-computed "recovery" from its income for the year 1995 in accordance with the tax benefit rule and other legal and equitable doctrines that reinforce and supplement the tax benefit rule.

Recently, in John Hancock Financial Services, Inc. et al. v. United States, Fed. Cl. No. 01-543 T, Senior Judge Margolis of the Court of Federal Claims considered this tax benefit rule issue and ruled against the taxpayer. However, Taxpayer expects that decision to be appealed and reversed. Even if the decision is not appealed, Taxpayer does not expect other courts to agree with its reasoning and result.

Additionally, in the event that the Company is not entitled to use the 1995 negative recomputed DER, it is entitled to exclude the corresponding "recovery" from its income for subsequent years in accordance with the tax benefit rule and other legal and equitable doctrines that reinforce and supplement the tax benefit rule.

12. Correction of Section 809(f)(1) Income

Taxpayer's 1994 deduction for policyholder dividends under section 808 was not reduced under section 809(a), because the 1994 differential earnings amount ("DEA") was zero. That amount was zero because it was computed as the product of the 1994 "average equity base" times the 1994 differential earnings rate ("DER") of zero percent.

For the year 1995, Taxpayer reported income under section 809(f)(1) based on a recomputed DER of 5.887 percent. The amount of income for 1995 under section 809(f)(1) is computed as the product of the 1994 "average equity base" times the 1994 recomputed DER of 5.887 percent. In its refund claim for the year 1994, Taxpayer has claimed adjustments to its 1994 average equity base. The resolution of those 1994 average equity base issues is likely to change Taxpayer's 1994 average equity base, which, in turn, will change the amount of income for 1995 under section 809(f)(1).

Taxpayer hereby claims the right to adjust its income for 1995 under section 809(f) to reflect the resolution of the issues that have been raised regarding its 1994 average equity base.

13. Additional Claim Based on Credits and Credit and Loss Carryovers and Carrybacks

In subsequent computations, Taxpayer hereby claims its right to fully utilize all credits that arise in 1995 and all credit carryovers and carrybacks to 1995 from other years, to the extent such credits are available. In subsequent computations, Taxpayer also claims its right to fully utilize all operations loss and capital loss carryovers and carrybacks to 1995 from other years, to the extent such carryovers and carrybacks are available.

14. Interest Netting

The Taxpayer claims that it is entitled to have its deficiency interest with respect to the year 1995 calculated in accordance with the interest netting procedures provided under section 6621(d).

15. Interest Calculations

The Taxpayer claims that it is entitled to have its deficiency interest with respect to the year 1995 calculated in accordance with the "use of money" principles set forth in the *Sequa* and *May Department Stores* cases and Revenue Ruling 99-40.