Form **1120X** (Rev. December 2001)
Department of the Treasury Internal Revenue Service

# Amended U.S. Corporation Income Tax Return

OMB No. 1545-0132

For tax year ending ▶ DECEMBER 31, 1995 (Enter month and year.)

Please Type or Print

Name: MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY (SUCCESSOR TO CONNECTICUT MUTUAL LIFE INSURANCE COMPANY)

Employer identification number: 06-0304620

Number, street, and room or suite no. (If a P.O. box, see instructions.): 1295 STATE STREET E-171

City or town, state, and ZIP code: SPRINGFIELD, MA 01111

Telephone number (optional): 413-744-8611

Enter name and address used on original return (If same as above, write "Same.") CONNECTICUT MUTUAL LIFE INSURANCE COMPANY CONSOLIDATED LIFE - NON LIFE SUBSIDIARIES, 140 GARDEN STREET, HARTFORD, CT 06154

Internal Revenue Service Center where original return was filed ▶ ANDOVER, MA

## Fill in Applicable Items and Use Part II To Explain Any Changes

**Part I** Income and Deductions (see instructions)

| | | (a) As originally reported or as previously adjusted | (b) Net change increase or decrease - explain in Part II | (c) Correct amount |
|---|---|---|---|---|
| 1 Total income (Form 1120 or 1120-A, line 11) | 1 | | | |
| 2 Total deductions (total of lines 27 and 29c, Form 1120, or lines 23 and 25c, Form 1120-A) | 2 | | | |
| 3 Taxable income. Subtract line 2 from line 1 | 3 | 148,921,111 | (130,660,000) | 18,261,111 |
| 4 Tax (Form 1120, line 31, or Form 1120-A, line 27) | 4 | 51,614,771 | (45,392,516) | 6,222,255 |

**Payments and Credits** (see instructions)

| | | (a) | (b) | (c) |
|---|---|---|---|---|
| 5 a Overpayment in prior year allowed as a credit | 5a | | | |
| b Estimated tax payments | b | 41,195,100 | | 41,195,100 |
| c Refund applied for on Form 4466 | c | | | |
| d Subtract line 5c from the sum of lines 5a and 5b | d | 41,195,100 | | 41,195,100 |
| e Tax deposited with Form 7004 | e | | | |
| f Credit from Form 2439 | f | | | |
| g Credit for Federal tax on fuels | g | | | |

| | | |
|---|---|---|
| 6 Tax deposited or paid with (or after) the filing of the original return | 6 | 30,373,989 |
| 7 Add lines 5d through 6, column (c) | 7 | 71,569,089 |
| 8 Overpayment, if any, as shown on original return or as later adjusted | 8 | 19,954,318 |
| 9 Subtract line 8 from line 7 | 9 | 51,614,771 |

**Tax Due or Overpayment** (see instructions)

| | | |
|---|---|---|
| 10 **Tax due.** Subtract line 9 from line 4, column (c). If paying by check, make it payable to the "**United States Treasury.**" ▶ | 10 | |
| 11 **Overpayment.** Subtract line 4, column (c), from line 9 ▶ | 11 | 45,392,516 ** |
| 12 Enter the amount of line 11 you want: **Credited to 20** estimated tax ▶ **Refunded** ▶ | 12 | 45,392,516 |

**Sign Here**

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ Signature of officer: [signature] RICHARD BOURGEOIS — Date: 3/26/03 — ▶ SENIOR VICE PRESIDENT, Title: CORPORATE TAX

**Paid Preparer's Use Only**

Preparer's signature ▶ | Date | Check if self-employed ☐ | Preparer's SSN or PTIN

Firm's name (or yours if self-employed), address, and ZIP code ▶ | EIN | Phone no.

**For Paperwork Reduction Act Notice, see page 4.** Form **1120X** (Rev. 12-2001)

JSA 2C1820 1.000

** PLUS ANY OTHER AMOUNT LEGALLY REFUNDABLE, PLUS INTEREST

MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY 06-0304620

 (SUCCESSOR TO CONNECTICUT MUTUAL LIFE INSURANCE COMPANY) 

**Part II** **Explanation of Changes to Items in Part I** (Enter the line number from page 1 for the items you are changing, and give the reason for each change. Show any computation in detail. Also, see **What To Attach** on page 3 of the instructions.)

If the change is due to a net operating loss carryback, a capital loss carryback, or a general business credit carryback, see **Carryback Claims** on page 3, and check here . . . . . . ▶ ☐

1. SEE ATTACHED "FORM 1120L RECOMPUTATION PER CLAIM FOR REFUND."

2. SEE ATTACHED "ADDENDUM TO 1995 CLAIM FOR REFUND."

Form 1120L | U.S. Life Insurance Company Income Tax Return | 1995 | a1..l57

Page 1

Name of Company: CONNECTICUT MUTUAL LIFE INSURANCE COMPANY

06-0304620

| | | Per IRS AUDIT APPEALS | | Adjustments |
|---|---|---|---|---|
| 1. Gross premiums, etc., less return premiums, etc. | | 1,475,584,457 | | |
| 2. Decrease in reserves (Sch. F, line 37) | | 0 | | |
| 3. 10% of any decrease in res. per Sec. 807(f)(1)(B)(ii)- | | 2,940,124 | | 0 |
| 4. 3 1/2% of EOY bal. of reserves under Sec. 807(e)(7)(B) | | | | |
| 5. Investment income (Sch. B, line 8) | | 801,506,601 | | 0 |
| 6. Net capital gain | D554 | (15,390,333) | | |
| 7. Other income | | 76,192,526 | | 0 |
| 8. Life insurance company gross income (lines 1 - 7) | | 2,340,833,375 | | |
| 9. Death benefits, etc. | | 1,277,210,828 | | |
| 10. Increase in reserves (Sch. F, line 37) | | 228,842,005 | | (13,384) |
| 11. 10% of any increase in res. per Sec. 807(f)(1)(B)(i)- | | 363,362 | | |
| 12. Policyholder dividends (Sch. E, line 7) | | 299,080,872 | | 96,932,408 |
| 13. Assumption reinsurance considerations paid | | | | |
| 14. Dividends reimbursable by taxpayer | | | | |
| 15. Int.less tax exempt:bal | 21,337,546 | 21,337,546 | 0 | |
| 16. Deductible policy acq. expenses (Sch. G, line 20) | | 26,332,043 | | 0 |
| 17. Other deductions | | 360,902,668 | | 33,310,721 |
| 18. Dividends rec'd deduction (Sch. A, col.(c), line 16)- | | 1,074,438 | | (72,515) |
| 19. Operations loss deduction | | | | |
| 20. Total deductions | | 2,215,143,762 | | 130,157,230 |
| 21. Gain or (loss) from operations | | 125,689,613 | | (130,157,230) |
| 22. Small life insur. company deduction (Sch. H, ln 17) - | | 0 | | |
| 23. LICTI (line 21 less line 22) | | 125,689,613 | | (130,157,230) |
| Combined Gen. Acct. and Sep. Acct. LICTI or (Loss) | | #N/A | | |
| 24. Limitation on noninsurance losses (Sch. I, line 9) - | | 0 | | |
| 25. Amount subtracted from policyholders surplus account (Sch. J, Part II, line 10) | | 0 | | |
| 26. Total taxable income - lines 23 through 25, not < 25 | | 125,689,613 | | (130,157,230) |
| 26a. SEPARATE ACCOUNTS | | (2,687,052) | | (143,409) |
| 26b. CM LIFE INSURANCE COMBINED | | 25,298,808 | | (359,361) |
| 26c. DHC & SUBSIDIARIES | | 25,597 | | |
| 26d. CM ASSURANCE | | 409,471 | | |
| 26e. CM BENEFIT | | 184,674 | | |
| 26f. | | | | |
| 26. TOTAL TAXABLE INCOME | | 148,921,111 | | (130,660,000) |
| 27. Total tax (Sch. K, line 10) | | 51,614,770 | | (45,392,515) |
| 28.a. Overpayment from 1994 | | xxxxxxxxxxxxxxx | | |
| b. 1995 estimated tax | 41,195,100 | xxxxxxxxxxxxxxx | | |
| c. Less refund of 1995 estim. tax | 19,901,235 | xxxxxxxxxxxxxxx | | |
| | | xxxxxxxxxxxxxxx | | |
| d. Sum lines 28a and b minus line 28c - | 21,293,865 | xxxxxxxxxxxxxxx | | |
| e. Deposit w/ Form 7004 | | xxxxxxxxxxxxxxx | | |
| f. Credit from reg. invest. cos. | | xxxxxxxxxxxxxxx | | |
| g. Fuels tax credit | | xxxxxxxxxxxxxxx | | |
| h. Less Refund 3/2/98 | (53,083) | 21,240,782 | | |
| 29. Any penalty for underpayment of estim. tax | | | | |
| 30. TAX DUE | | 30,373,988 | | |
| 31. OVERPAYMENT | | | | |

Form 1120L | U.S. Life Insurance Company Income Tax Return | 1995 | 26-Mar-03

Page 1

Name of Company: CONNECTICUT MUTUAL LIFE INSURANCE COMPANY

06-0304620

| | | | AMOUNT PER REFUND CLAIM |
|---|---|---|---|
| 1. Gross premiums, etc., less return premiums, etc. | | | 1,475,584,457 |
| 2. Decrease in reserves (Sch. F, line 37) | | | 0 |
| 3. 10% of any decrease in res. per Sec. 807(f)(1)(B)(ii)- | | | 2,940,124 |
| 4. 3 1/2% of EOY bal. of reserves under Sec. 807(e)(7)(B) | | | 0 |
| 5. Investment income (Sch. B, line 8) | | | 801,506,601 |
| 6. Net capital gain | | | (15,390,333) |
| 7. Other income | | | 76,192,526 |
| 8. Life insurance company gross income (lines 1 - 7) | | | 2,340,833,375 |
| 9. Death benefits, etc. | | | 1,277,210,828 |
| 10. Increase in reserves (Sch. F, line 37) | | | 228,828,621 |
| 11. 10% of any increase in res. per Sec. 807(f)(1)(B)(i)- | | | 363,362 |
| 12. Policyholder dividends (Sch. E, line 7) | | | 396,013,280 |
| 13. Assumption reinsurance considerations paid | | | 0 |
| 14. Dividends reimbursable by taxpayer | | | 0 |
| 15. Int.less tax exempt:bal | 21,337,546 | 0 | 21,337,546 |
| 16. Deductible policy acq. expenses (Sch. G, line 20) | | | 26,332,043 |
| 17. Other deductions | | | 394,213,389 |
| 18. Dividends rec'd deduction (Sch. A, col.(c), line 16)- | | | 1,001,923 |
| 19. Operations loss deduction | | | 0 |
| 20. Total deductions | | | 2,345,300,992 |
| 21. Gain or (loss) from operations | | | (4,467,617) |
| 22. Small life insur. company deduction (Sch. H, ln 17) - | | | 0 |
| 23. LICTI (line 21 less line 22) | | | (4,467,617) |
| Combined Gen. Acct. and Sep. Acct. LICTI or (Loss) | | | #N/A |
| 24. Limitation on noninsurance losses (Sch. I, line 9) - | | | 0 |
| 25. Amount subtracted from policyholders surplus account (Sch. J, Part II, line 10) | | | 0 |
| 26. Total taxable income - lines 23 through 25, not < 25 | | | (4,467,617) |
| 26a. SEPARATE ACCOUNTS | | | (2,830,461) |
| 26b. CM LIFE INSURANCE COMBINED | | | 24,939,447 |
| 26c. DHC & SUBSIDIARIES | | | 25,597 |
| 26d. CM ASSURANCE | | | 409,471 |
| 26e. CM BENEFIT | | | 184,674 |
| 26f. | | | 0 |
| 26. TOTAL TAXABLE INCOME | | | 18,261,111 |
| 27. Total tax (Sch. K, line 10) | | | 6,222,255 |
| 28.a. Overpayment from 1992 | | 0 | xxxxxxxxxxxxxx |
| b. 1993 estimated tax | | 41,195,100 | xxxxxxxxxxxxxx |
| c. Less refund of 1993 estim. tax | | 19,901,235 | xxxxxxxxxxxxxx |
| | | | xxxxxxxxxxxxxx |
| d. Sum lines 28a and b minus line 28c - | | 21,293,865 | xxxxxxxxxxxxxx |
| e. Deposit w/ Form 7004 | | 0 | xxxxxxxxxxxxxx |
| f. Credit from reg. invest. cos. | | 0 | xxxxxxxxxxxxxx |
| g. TAX PAID ON APPEALS | | 30,373,989 | xxxxxxxxxxxxxx |
| h. Less Refund 3/2/98 | | (53,083) | 51,614,771 |
| 29. Any penalty for underpayment of estim. tax | | | 0 |
| 30. TAX DUE | | | |
| 31. OVERPAYMENT | | | 45,392,516 |

Page 2

Schedule A - Dividend Income and Dividends-Received Deduction

| Dividends subject to proration: | (a) Gross Div. | (c) Deduction |
|---|---|---|
| 1. Domestic corps., less-than-20%-owned -- | 2,632,181 | 1,842,527 |
| 2. Domestic corps., 20%-or-more-owned --- | 876,634 | . 701,307 |
| 3. Debt financed stock ------------ | | |
| 4. Pub. util. corps, less-than-20%-owned - | | 0 |
| 5. Pub. util. corps, 20%-or-more-owned -- | | 0 |
| 6. Foreign corps., less-than-20%-owned -- | | 0 |
| 7. Foreign corps., 20%-or-more-owned --- | | 0 |
| 8. Wholly owned foreign corporations --- | | 0 |
| 9. Certain affiliated co. divs. (100% DRD) | | 0 |
| 10. Gross dividends-received deduction -- | | 2,543,834 |
| 11. Company share %age (Sch. F line 32) -- | | 42.23695100% |
| 12. Prorated amount (line 10 times line 11) xxxxxxxxxx | | 1,074,438 |
| Dividends not subject to proration: xxxxxxxxxx | | xxxxxxxxxxxxxxx |
| 13. Affiliated company dividends | | 0 |
| 14. Other corporate dividends | 2,680,559 | xxxxxxxxxxxxxxx |
| 15. Total dividends (Ln 1 - 14, col.(a)) - | 6,189,374 | xxxxxxxxxxxxxxx |
| 16. Total deductions (lines 12 - 13, col (c), xxxxxxxxxx subject to Sec. 805(a)(4)(D)(ii) limitation) | | 1,074,438 |

| Schedule B - Gross Investment Income (Sec. 812(d)) | | |
|---|---|---|
| 1. Interest (excl. tax-exempt int. & ESOP loan int.) --- | | 667,144,767 |
| 2. Dividend income (Sch. A, line 15, col.(a)) -------- | | 6,189,374 |
| 3. Gross rents ---------------------------------- | | 55,344,915 |
| 4. Gross royalties ------------------------------ | | |
| 5. Leases, terminations, etc. ------------------ | | |
| 6. Net short term capital gain ------------------ | D555 | 9,529,381 |
| 7. Gross income from non-insur. business ---------- | | 63,298,164 |
| 8. Investment income (sum lines 1 - 7) ----------- | | 801,506,601 |
| 9. Tax-exempt interest ------------------------ | | 469,510 |
| 10. Sum lines 8 and 9 ------------------------- | | 801,976,111 |
| 11. Subsidiaries 100% div. (Sec. 805(a)(4)(C) and (D)) -- | | |
| 12. Gross investment income (line 10 less line 11) --- | | 801,976,111 |

| Schedule C - Differential Earnings Amount - Mutual Companies Only (Sec. 809) | (a)End Prior Yr | (b)End This Yr |
|---|---|---|
| 1. Annual statement surplus and capital -- | 566,332,918 | 453,687,314 |
| 2. Nonadmitted financial assets ------ | | |
| 3. Excess of statutory reserves over tax | xxxxxxxxxxxxxxx | xxxxxxxxxxxxxxx |
| reserves on section 807(c) items -- | 134,896,679 | 154,743,764 |
| 4. Deficiency reserves -- | 9,435,267 | 7,305,637 |
| 5.a. Asset valuation reserve -------- | 129,591,045 | 170,826,218 |
| b. Interest maintenance reserve ---- | 28,652,125 | 36,259,996 |
| 6. Other voluntary reserves | | |
| 7. 50% of any res. for policy dividends | xxxxxxxxxxxxxxx | xxxxxxxxxxxxxxx |
| payable next year | 149,647,899 | 148,923,233 |
| 8.a. Subtotal (sum lines 1 - 7) ------ | 1,018,555,933 | 971,746,162 |
| b. Adj. for equity allocable to non- | xxxxxxxxxxxxxxx | xxxxxxxxxxxxxxx |
| contiguous Western Hemisphere | xxxxxxxxxxxxxxx | xxxxxxxxxxxxxxx |
| countries and other adjustments --- | | |
| c. Total of lines 8a and 8b, both cols.- | 1,018,555,933 | 971,746,162 |
| 9. Total of line 8c, cols. (a) and (b) - | | 1,990,302,095 |
| 10. Tentative av. equity base - 50% line 9 | | 995,151,048 |
| 11. Other adjustments --- | | |
| 12. Av. equity base (line 10 + line 11) -- | 995,151,048 | xxxxxxxxxxxxxxx |
| 13. Differential earnings rate and amount- | 0.000% | 0 |

Page 2

Schedule A - Dividend Income and Dividends-Received Deduction

| | Dividends subject to proration: | (a) Gross Div. | (c) Deduction |
|---|---|---|---|
| | 1. Domestic corps., less-than-20%-owned -- | 2,632,181 | 1,842,527 |
| | 2. Domestic corps., 20%-or-more-owned --- | 876,634 | 701,307 |
| | 3. Debt financed stock ------------ | 0 | 0 |
| | 4. Pub. util. corps, less-than-20%-owned - | 0 | 0 |
| | 5. Pub. util. corps, 20%-or-more-owned -- | 0 | 0 |
| | 6. Foreign corps., less-than-20%-owned -- | 0 | 0 |
| | 7. Foreign corps., 20%-or-more-owned --- | 0 | 0 |
| | 8. Wholly owned foreign corporations --- | 0 | 0 |
| | 9. Certain affiliated co. divs. (100% DRD) | 0 | 0 |
| | 10. Gross dividends-received deduction -- | | 2,543,834 |
| | 11. Company share %age (Sch. F line 33) -- | | 39.38632700% |
| (72,515) | 12. Prorated amount (line 10 times line 11) xxxxxxxxxx | | 1,001,923 |
| | Dividends not subject to proration: xxxxxxxxxx | | xxxxxxxxxxxxxxx |
| | 13. Affiliated company dividends | 0 | 0 |
| | 14. Other corporate dividends | 2,680,559 | xxxxxxxxxxxxxxx |
| 0 | 15. Total dividends (Ln 1 - 14, col.(a)) - | 6,189,374 | xxxxxxxxxxxxxxx |
| (72,515) | 16. Total deductions (lines 12 - 13, col (c), xxxxxxxxxx subject to Sec. 805(a)(4)(D)(ii) limitation) | | 1,001,923 |

| | Schedule B - Gross Investment Income (Sec. 812(d)) | |
|---|---|---|
| | 1. Interest (excl. tax-exempt int. & ESOP loan int.) --- | 667,144,767 |
| | 2. Dividend income (Sch. A, line 15, col.(a)) -------- | 6,189,374 |
| | 3. Gross rents ---------------------------------- | 55,344,915 |
| | 4. Gross royalties ------------------------------ | 0 |
| | 5. Leases, terminations, etc. ------------------ | 0 |
| | 6. Net short term capital gain ------------------ | 9,529,381 |
| 0 | 7. Gross income from non-insur. business ---------- | 63,298,164 |
| 0 | 8. Investment income (sum lines 1 - 7) ----------- | 801,506,601 |
| | 9. Tax-exempt interest ------------------------ | 469,510 |
| 0 | 10. Sum lines 8 and 9 ------------------------- | 801,976,111 |
| | 11. Subsidiaries 100% div. (Sec. 805(a)(4)(C) and (D)) -- | 0 |
| 0 | 12. Gross investment income (line 10 less line 11) --- | 801,976,111 |

| | | Schedule C - Differential Earnings Amount - Mutual Companies Only (Sec. 809) | (a)End Prior Yr | (b)End This Yr |
|---|---|---|---|---|
| | | 1. Annual statement surplus and capital -- | 566,332,918 | 453,687,314 |
| | | 2. Nonadmitted financial assets ------ | 0 | 0 |
| | | 3. Excess of statutory reserves over tax | xxxxxxxxxxxxxxx | xxxxxxxxxxxxxxx |
| 0 | 0 | reserves on section 807(c) items -- | 134,896,679 | 154,743,764 |
| | | 4. Deficiency reserves -- | 9,435,267 | 7,305,637 |
| | | 5.a. Asset valuation reserve -------- | 129,591,045 | 170,826,218 |
| | | b. Interest maintenance reserve ---- | 28,652,125 | 36,259,996 |
| | | 6. Other voluntary reserves | 0 | 0 |
| | | 7. 50% of any res. for policy dividends | xxxxxxxxxxxxxxx | xxxxxxxxxxxxxxx |
| | | payable next year | 149,647,899 | 148,923,233 |
| 0 | 0 | 8.a. Subtotal (sum lines 1 - 7) ------ | 1,018,555,933 | 971,746,162 |
| | | b. Adj. for equity allocable to non- | xxxxxxxxxxxxxxx | xxxxxxxxxxxxxxx |
| | | contiguous Western Hemisphere | xxxxxxxxxxxxxxx | xxxxxxxxxxxxxxx |
| | | countries and other adjustments --- | 0 | 0 |
| 0 | 0 | c. Total of lines 8a and 8b, both cols.- | 1,018,555,933 | 971,746,162 |
| | | 9. Total of line 8c, cols. (a) and (b) - | xxxxxxxxxxxxxxx | 1,990,302,095 |
| | | 10. Tentative av. equity base - 50% line 9 | xxxxxxxxxxxxx | 995,151,048 |
| | | 11. Other adjustments --- | xxxxxxxxxxxxxxx | 0 |
| 0 | 0 | 12. Av. equity base (line 10 + line 11) -- | 995,151,048 | xxxxxxxxxxxxxxx |
| | 0 | 13. Differential earnings rate and amount- | 0.000% | 0 |

Page 3 a118..l185 Page 3

| | Page 3 (a) | Page 3 (b) | a118..l185 | | Page 3 (a) | Page 3 (b) |
|---|---|---|---|---|---|---|
| **Schedule E - Policyholder Dividends (Sec. 808)** | | | | | | |
| 1. Amounts paid or accrued (808(b)(1)) | | 298,145,949 | | 96,932,408 | | 395,078,357 |
| 2. Excess interest (808(b)(2)) | | 934,923 | | | | 934,923 |
| 3. Premium adjustments (808)b)(3)) | | | | | | 0 |
| 4. Experience-rated refunds (808(b)(4)) | | | | | | 0 |
| 5. Total (sum lines 1 - 4) | | 299,080,872 | | | | 396,013,280 |
| 6. Differential earnings amount for mutual companies only | | xxxxxxxxxxxx | | | | xxxxxxxxxxxx |
| (Sch. C, line 13) | | 0 | | 0 | | 0 |
| 7. Deductible policyholder dividends (line 5 minus | | xxxxxxxxxxxxxx | | | | xxxxxxxxxxxxxx |
| line 6, but not < 0) | | 299,080,872 | | | | 396,013,280 |
| 8. Adjustment to reserves of mutual companies (excess, if | | xxxxxxxxxxxxxx | | | | xxxxxxxxxxxxxx |
| any, of line 6 over line 5) | | 0 | | 0 | | 0 |
| 9. Deductible percentage (line 7 divided by line 5) | | 100.00000000% | | | | 100.00000000% |
| **Schedule F - Company/Policyholder Share Percentage (Sec. 812)** | (a) BOY | (b) EOY | | | (a) BOY | (b) EOY |
| 1. Life insur. reserves | 6,989,622,726 | 7,334,264,459 | 0 | 0 | 6,989,622,726 | 7,334,264,459 |
| 2. Unearned premiums and unpaid losses | 19,814,644 | 19,831,312 | | | 19,814,644 | 19,831,312 |
| 3. Supplementary contracts | 29,057,889 | 25,981,265 | | | 29,057,889 | 25,981,265 |
| 4. Dividend accumultions and other amts | 830,039,080 | 719,529,883 | | | 830,039,080 | 719,529,883 |
| 5. Advance premiums | 10,896,879 | 8,937,507 | | | 10,896,879 | 8,937,507 |
| 6. Special contingency reserves | | | | | 0 | 0 |
| 7. Total (sum lines 1 - 6) | 7,879,431,218 | 8,108,544,426 | | | 7,879,431,218 | 8,108,544,426 |
| 8. Increase (decr) in reserves (col.(b) less col.(a)) | | 229,113,208 | | | | 229,113,208 |
| 9. Gross investment income (Sch. B, line 12) | | 801,976,111 | | 0 | | 801,976,111 |
| 10a. Required interest on reserves under sections 807 | | xxxxxxxxxxxxxxx | | | | xxxxxxxxxxxxxxx |
| (c)(1),(3),(4),(5) and (6) | | 352,700,914 | | 0 | | 352,700,914 |
| b. Deductible excess interest (Sch. E, line 2 times | | xxxxxxxxxxxxxxx | | | | xxxxxxxxxxxxxxx |
| Sch. E, line 9) | | 934,923 | | | | 934,923 |
| c. Deductible amts credited to employee pension funds | | | | | | 0 |
| d. Deductible amounts credited to deferred annuities | | | | | | 0 |
| e. Deductible interest on amounts left on deposit | | | | | | 0 |
| f. Total policy interest (sum lines 10a - 10e) | | 353,635,837 | | 0 | | 353,635,837 |
| 11. Line 9 less line 10f | | 448,340,274 | | | | 448,340,274 |
| 12. Life insurance company gross income | 2,340,833,375 | xxxxxxxxxxxxxxx | | 0 | 2,340,833,375 | xxxxxxxxxxxxxxx |
| (page 1, line 8) | | xxxxxxxxxxxxxxx | | | | xxxxxxxxxxxxxxx |
| 13. Tax exempt interest (Sch. B, line 9) | 469,510 | xxxxxxxxxxxxxxx | | 0 | 469,510 | xxxxxxxxxxxxxxx |
| 14. Sum lines 12 and 13 | | 2,341,302,885 | | 0 | | 2,341,302,885 |
| 15. Increase in reserves (line 8 above)(if decr., enter 0) | | 229,113,208 | | 0 | | 229,113,208 |
| 16. Line 14 less line 15 | | 2,112,189,677 | | 0 | | 2,112,189,677 |
| 17. Investment income ratio (Line 11/line 16) | | 21.22632635% | | 0 | | 21.22632635% |
| 18. Deductible policyholder dividends (Sch. E, line 7) | | 299,080,872 | | 96,932,408 | | 396,013,280 |
| 19. Deductible excess interest (line 10b) | 934,923 | xxxxxxxxxxxxxxx | | 0 | 934,923 | xxxxxxxxxxxxxxx |
| 20. Deductible divs. on employee pen. fds | | xxxxxxxxxxxxxxx | | | 0 | xxxxxxxxxxxxxxx |
| 21. Deductible divs. on deferred annuities | | xxxxxxxxxxxxxxx | | | 0 | xxxxxxxxxxxxxxx |
| 22. Deductible premium and mortality | xxxxxxxxxxxxxxx | xxxxxxxxxxxxxxx | | | xxxxxxxxxxxxxxx | xxxxxxxxxxxxxxx |
| charges on ctts paying excess int. | | xxxxxxxxxxxxxxx | | | 0 | xxxxxxxxxxxxxxx |
| 23. Sum lines 19 through 22 | | 934,923 | | 0 | | 934,923 |
| 24. Line 18 less line 23 | | 298,145,949 | | 96,932,408 | | 395,078,357 |
| 25. Investment portion of dividends (Line 17 x line 24) | | 63,285,432 | | 20,575,189 | | 83,860,621 |
| 26. Policy interest (Line 10f above) | | 353,635,837 | | 0 | | 353,635,837 |
| 27. Policyholder share amount (sum lines 25 and 26) | | 416,921,269 | | 20,575,189 | | 437,496,458 |
| 28. Net investment income | | 721,778,500 | | 0 | | 721,778,500 |
| 29. Policyholder share amount (line 27 above) | | 416,921,269 | | 20,575,189 | | 437,496,458 |
| 30. Company share of net inv. income (Ln 28 less ln 29) | | 304,857,231 | | (20,575,189) | | 284,282,042 |
| 31. Total share percentage | | 100% | | 0 | | 100% |
| 32. Company share percentage (Line30/line 28) | | 42.236951% | | (0) | | 39.386327% |
| 33. Policyholders' share percentage (Ln 31 less ln 32) | | 57.763049% | | 0 | | 60.613673% |
| 34. Policyholders' share of tax-exempt interest | | 271,203 | | 13,384 | | 284,587 |
| 35. Line 8 less line 34 | | 228,842,005 | | (13,384) | | 228,828,621 |
| 36. Adjustment to reserves of mutual companies | | | | | | |
| per Sec. 809(a)(2) (Sch. E, line 8) | | 0 | | 0 | | 0 |
| 37. Net increase (decr) in reserves (Ln 35 less ln 36) | | 228,842,005 | | (13,384) | | 228,828,621 |

Page 4 a187..l223

Schedule G - Policy Acquisition Expenses (Sec. 848)

| | (a) Annuity | (b) Group Life Insurance | (c) Other | | |
|---|---|---|---|---|---|
| 1 Gross premiums & consid. | 107,152,811 | 71,103,180 | 1,122,325,445 | | 0 |
| 2. Return premiums & consid | xxxxxxxxxxxx | xxxxxxxxxxxxxxxx | xxxxxxxxxxxxxxx | | |
| for reinsurance --- | 69,711,158 | 19,360,200 | 396,400,665 | | |
| 3. Net premiums (Ln 1-Ln 2) | 37,441,653 | 51,742,980 | 725,924,780 | | |
| 4. Net premium percentage - | 1.75% | 2.05% | 7.7% | | |
| 5. Line 3 times line 4 --- | 655,229 | 1,060,731 | 55,896,208 | | |
| 6. Total line 5, columns (a), (b), and (c) | | | 57,612,168 | | |
| 7. Unused balance of negative consid. from prior yrs. - | | | 0 | | |
| (Enter as a negative number) | | | | | |
| 8. Total of lines 6 and 7 | | | 57,612,168 | | |
| 9. General deductions | | | 418,514,836 | | |
| 10. Lesser of line 8 or line 9 | | | 57,612,168 | | |
| 11 Tentative deductible specified policy expenses --- | | | 360,902,668 | | |
| (Line 9 minus line 10) | | | | | |
| 12. Line 6 (as positive amt.) if negative; otherwise 0 -- | | | 0 | | |
| 13 Unamortized specified policy acquisition expenses | | | xxxxxxxxxxxxxxx | | |
| from prior years deductible in current year --- | | | 0 | | |
| 14. Deductible amount (Lesser of line 12 or line 13) --- | | | 0 | | |
| 15a Tentative 60-month specified acq. | | xxxxxxxxxxxxxxxx | xxxxxxxxxxxxxxx | | |
| expenses (Ln 10, not> $5 M) --- | | 5,000,000 | xxxxxxxxxxxxxxx | | |
| b. Limitation | | 10,000,000 | xxxxxxxxxxxxxxx | | |
| 16 Phase-out amount (Ln 15a-Ln15b; not<0) | | 47,612,168 | xxxxxxxxxxxxxxx | | |
| 17a. Current year 60-month specified policy | | | xxxxxxxxxxxxxxx | | |
| acq. expenses (Ln 15a-Ln 16; not<0)- | | 0 | xxxxxxxxxxxxxxx | | |
| b 10% of line 17a | | | 0 | | |
| 18a. Current year 120-month specified policy | | | xxxxxxxxxxxxxxx | | |
| acq. expenses (Ln 10 minus Ln 17a)- | | 57,612,168 | xxxxxxxxxxxxxxx | | |
| b. 5% of line 18a | | | 2,880,608 | | |
| 19 Amt of amortization from specified policy acquisition | | | xxxxxxxxxxxx | | |
| expenses capitalized in prior years and deductible | | | xxxxxxxxxxxx | | |
| this year | | | 23,451,435 | | |
| 20. Deductible policy acquisition expenses | | | 26,332,043 | xxxxxxxxxxxxx | |
| (Sum of lines 11 14, 17b, 18b, and 19) | | | | 2,633,204 | |

Page 4

Schedule G - Policy Acquisition Expenses (Sec. 848)

| | | (a) Annuity | (b) Group Life Insurance | (c) Other |
|---|---|---|---|---|
| 0 | 1. Gross premiums & consid. | 107,152,811 | 71,103,180 | 1,122,325,445 |
| | 2. Return premiums & consid | xxxxxxxxxxxx | xxxxxxxxxxxxxxxx | xxxxxxxxxxxxxxx |
| | for reinsurance --- | 69,711,158 | 19,360,200 | 396,400,665 |
| | 3. Net premiums (Ln 1-Ln 2) | 37,441,653 | 51,742,980 | 725,924,780 |
| | 4. Net premium percentage - | 1.75% | 2.05% | 7.7% |
| | 5. Line 3 times line 4 --- | 655,229 | 1,060,731 | 55,896,208 |
| 0 | 6. Total line 5, columns (a), (b), and (c) | | | 57,612,168 |
| | 7. Unused balance of negative consid. from prior yrs. - | | | 0 |
| | (Enter as a negative number) | | | |
| 0 | 8. Total of lines 6 and 7 | | | 57,612,168 |
| 0 | 9. General deductions | | | 418,514,836 |
| | 10. Lesser of line 8 or line 9 | | | 57,612,168 |
| 0 | 11. Tentative deductible specified policy expenses --- | | | 360,902,668 |
| | (Line 9 minus line 10) | | | |
| | 12. Line 6 (as positive amt.) if negative; otherwise 0 -- | | | 0 |
| | 13. Unamortized specified policy acquisition expenses | | | xxxxxxxxxxxxxxx |
| | from prior years deductible in current year --- | | | 0 |
| | 14. Deductible amount (Lesser of line 12 or line 13) --- | | | 0 |
| | 15a. Tentative 60-month specified acq. | | xxxxxxxxxxxxxxxx | xxxxxxxxxxxxxxx |
| | expenses (Ln 10, not> $5 M) --- | | 5,000,000 | xxxxxxxxxxxxxxx |
| | b. Limitation | | 10,000,000 | xxxxxxxxxxxxxxx |
| | 16. Phase-out amount (Ln 15a-Ln15b; not<0) | | 47,612,168 | xxxxxxxxxxxxxxx |
| | 17a. Current year 60-month specified policy | | | xxxxxxxxxxxxxxx |
| | acq. expenses (Ln 15a-Ln 16; not<0)- | | 0 | xxxxxxxxxxxxxxx |
| 0 | b. 10% of line 17a | | | 0 |
| | 18a. Current year 120-month specified policy | | | xxxxxxxxxxxxxxx |
| | acq. expenses (Ln 10 minus Ln 17a)- | | 57,612,168 | xxxxxxxxxxxxxxx |
| 0 | b. 5% of line 18a | | | 2,880,608 |
| | 19. Amt of amortization from specified policy acquisition | | | xxxxxxxxxxxx |
| | expenses capitalized in prior years and deductible | | | xxxxxxxxxxxx |
| | this year | | | 23,451,435 |
| 0 | 20. Deductible policy acquisition expenses | | | 26,332,043 |
| | (Sum of lines 11, 14, 17b, 18b, and 19) | | | |

a225..f272

Page 5

Schedule H - Small Life Insurance Company Deduction (Sec. 806(a))

Part I - Controlled Group Information

| Company | Tentative LICTI (a) Income | (b) (Loss) |
|---|---|---|
| 1. SEPARATE ACCOUNTS | | 2,687,552 |
| 2. C.M.LIFE INSURANCE COMPANY | 25,450,240 | |
| 3. | | |
| 4. | | |
| 5. | | |
| 6. Total - Sum lines 1 - 5, both cols. -- | 25,450,240 | 2,687,552 |
| 7. Net controlled group tentative LICTI (line 6(a) less line 6(b)) | xxxxxxxxxxxxxxx | 22,762,688 |

Part II - Small Life Insurance Company Deduction

| | | |
|---|---|---|
| 8. Gain from operations (page 1, line 21)- | 125,689,613 | xxxxxxxxxxxxxxx |
| 9 a. Noninsurance income | 0 | xxxxxxxxxxxxxxx |
| b. Noninsurance deductions | 0 | xxxxxxxxxxxxxxx |
| 10a. Gain (loss) on insur. oper. (8-9a+9b) | 125,689,613 | xxxxxxxxxxxxxxx |
| b. Adjustments | | xxxxxxxxxxxxxxx |
| c. Tentative LICTI (lines 10a + 10b) --- | 125,689,613 | xxxxxxxxxxxxxxx |
| 11. Controlled group tentative LICTI | | xxxxxxxxxxxxxxx |
| (Line 7 above) --- | 22,762,688 | xxxxxxxxxxxxxxx |
| 12. Combined tentative LICTI (lines 10c | | xxxxxxxxxxxxxxx |
| plus line 11) | 148,452,301 | xxxxxxxxxxxxxxx |
| 13. Line 12 times .6, not > $1,800,000 -- | x .6 | 1,800,000 |
| 14a. Maximum statutory amount | 3,000,000 | xxxxxxxxxxxxxxx |
| b. Line 12 minus line 14a, not < zero -- | 145,452,301 | xxxxxxxxxxxxxxx |
| c. Line 14b times .15, not > $1,800,000- | x .15 | 1,800,000 |
| 15. Tent. small life insur. co. deduction (Ln 13-ln 14c)- | | 0 |
| 16. Taxpayer's share (line 10c divided by sum of line 10c and col. (a), line 6) | | 83.161132% |
| 17. Allowable small life insur. company deduction (line 16 times line 15) | xxxxxxxxxxxxxxx | xxxxxxxxxxxxxxx 0 |

Schedule I - Limitation on Noninsurance Losses (Sec. 806(b)(3)(C))

| | |
|---|---|
| 1. Noninsurance income | 0 |
| 2. Noninsurance deductions | 0 |
| 3. Noninsurance operations loss deductions | 0 |
| 4. Sum of line 2 and line 3 | 0 |
| 5. Noninsurance loss (line 4 less line 1); if line 1 is greater than line 4, omit lines 5 - 8, and enter zero on line 9 | xxxxxxxxxxxxxxx xxxxxxxxxxxxxxx 0 |
| 6. Enter 35% of line 5 | 0 |
| 7. Enter 35% of line 23, Page 1, less any noninsurance loss included on page 1 | xxxxxxxxxxxx 0 |
| 8. Enter the lesser of line 6 or line 7 | 0 |
| 9. Limitation on noninsurance losses (ln 5 less ln 8) -- | 0 |

Page 5

Schedule H - Small Life Insurance Company Deduction (Sec. 806(a))

Part I - Controlled Group Information

| Company | Tentative LICTI (a) Income | (b) (Loss) |
|---|---|---|
| 1. SEPARATE ACCOUNTS | 0 | 2,687,552 |
| 2. C.M.LIFE INSURANCE COMPANY | 25,450,240 | 0 |
| 3. | 0 | 0 |
| 4. | 0 | 0 |
| 5. | 0 | 0 |
| 6. Total - Sum lines 1 - 5, both cols. -- | 25,450,240 | 2,687,552 |
| 7. Net controlled group tentative LICTI (line 6(a) less line 6(b)) | xxxxxxxxxxxxxxx | 22,762,688 |

Part II - Small Life Insurance Company Deduction

| | | |
|---|---|---|
| 8. Gain from operations (page 1, line 21)- | (4,467,617) | xxxxxxxxxxxxxxx |
| 9 a. Noninsurance income | 0 | xxxxxxxxxxxxxxx |
| b. Noninsurance deductions | 0 | xxxxxxxxxxxxxxx |
| 10a. Gain (loss) on insur. oper. (8-9a+9b) | (4,467,617) | xxxxxxxxxxxxxxx |
| b. Adjustments | 0 | xxxxxxxxxxxxxxx |
| c. Tentative LICTI (lines 10a + 10b) --- | 0 | xxxxxxxxxxxxxxx |
| 11. Controlled group tentative LICTI | | xxxxxxxxxxxxxxx |
| (Line 7 above) --- | 22,762,688 | xxxxxxxxxxxxxxx |
| 12. Combined tentative LICTI (lines 10c | | xxxxxxxxxxxxxxx |
| plus line 11) | 22,762,688 | xxxxxxxxxxxxxxx |
| 13. Line 12 times .6, not > $1,800,000 -- | x .6 | 1,800,000 |
| 14a. Maximum statutory amount | 3,000,000 | xxxxxxxxxxxxxxx |
| b. Line 12 minus line 14a, not < zero -- | 19,762,688 | xxxxxxxxxxxxxxx |
| c. Line 14b times .15, not > $1,800,000- | x .15 | 1,800,000 |
| 15. Tent. small life insur. co. deduction (Ln 13-ln 14c)- | | 0 |
| 16. Taxpayer's share (line 10c divided by sum of line 10c and col. (a), line 6) | | 0.000000% |
| 17. Allowable small life insur. company deduction (line 16 times line 15) | xxxxxxxxxxxxxxx | xxxxxxxxxxxxxxx 0 |

Schedule I - Limitation on Noninsurance Losses (Sec. 806(b)(3)(C))

| | |
|---|---|
| 1. Noninsurance income | 0 |
| 2. Noninsurance deductions | 0 |
| 3. Noninsurance operations loss deductions | 0 |
| 4. Sum of line 2 and line 3 | 0 |
| 5. Noninsurance loss (line 4 less line 1); if line 1 is greater than line 4, omit lines 5 - 8, and enter zero on line 9 | xxxxxxxxxxxxxxx xxxxxxxxxxxxxxx 0 |
| 6. Enter 35% of line 5 | 0 |
| 7. Enter 35% of line 23, Page 1, less any noninsurance loss included on page 1 | xxxxxxxxxxxx 0 |
| 8. Enter the lesser of line 6 or line 7 | 0 |
| 9. Limitation on noninsurance losses (ln 5 less ln 8) -- | 0 |

| | | |
|---|---|---|
| 9. Limitation on noninsurance losses (ln 5 less ln 8) -- | | 0 |

Page 6

Schedule J, Part I - Shareholders' Surplus Account (Sec. 815(c))

| | | |
|---|---|---|
| 1.a. Balance at beginning of year ---- | | 0 |
| b. Transfers under pre-1984 Sec. 815(d)(1) and (4) | | xxxxxxxxxxxxxxx |
| for the preceding year ---------------- | | |
| c. Balance at beginning of yr. (sum lines 1a and 1b) -- | | 0 |
| 2.a. LICTI (Page 1, sum of lines 23 and 24, but not < 0)- | | 0 |
| b. Small life insurance company deduction allowed by | | xxxxxxxxxxxxxxx |
| Section 806(a) (Sch. H, line 17) ---------- | | 0 |
| c. Dividends-rec'd deduction (Sch. A, ln 16, col (c)) - | | 0 |
| d. Tax-exempt interest (Sch. B, line 9) | | 0 |
| 3. Total (sum lines 1c through 2d) --- | | 0 |
| 4. Tax liability for yr. w/o regard to Sec. 815 ----- | | 0 |
| 5. Line 3 less line 4 (not < 0) ------ | | 0 |
| 6. Direct or indirect distributions in yr. (not > line 5) | | 0 |
| 7. Balance at end of year (line 5 less line 6) ----- | | 0 |

Part II - Policyholder' Surplus Account (Sec. 815(d))

| | | |
|---|---|---|
| 8. Balance at beginning of year ----- | | 0 |
| 9 a. Direct or indirect distributions | xxxxxxxxxxxxxxx | xxxxxxxxxxxxxxx |
| that are more than line 5, Part I -- | 0 | xxxxxxxxxxxxxxx |
| b. Tax increase on line 9a (See notes) - | 0 | xxxxxxxxxxxxxxx |
| c. Subtractions under pre-1984 | xxxxxxxxxxxxxxx | xxxxxxxxxxxxxxx |
| Sections 815(d)(1) and (4) ----- | 0 | xxxxxxxxxxxxxxx |
| d. Tax increase on line 9c (See notes) - | 0 | xxxxxxxxxxxxxxx |
| e. Subtraction required under pre-1984 | xxxxxxxxxxxxxxx | xxxxxxxxxxxxxxx |
| Sec. 815(d)(2) due to termination -- | | xxxxxxxxxxxxxxx |
| 10. Total - Sum lines 9a through 9e, but not > line 8 -- | | 0 |
| 11. Balance at end of year (line 8 less line 10) ---- | | 0 |

Schedule K - Tax Computation

| | | |
|---|---|---|
| 1. Member of controlled group? (Type 1 if yes; 0 if no) | | 1 |
| 2. a. Share of $50,000, $25,000 and $9,925,000 tax bracket amounts: | | |
| (1) 1st Tier --------- | | xxxxxxxxxxxxxxx |
| (2) 2nd Tier --------- | | xxxxxxxxxxxxxxx |
| (3) 3rd Tier --------- | | xxxxxxxxxxxxxxx |
| b. Share of: (1) additional 5% tax -- | 0 | xxxxxxxxxxxxxxx |
| (2) additional 3% tax -- | 0 | xxxxxxxxxxxxxxx |
| 3. Income tax ------- | | 52,122,389 |
| Alternative tax applicable: 0 (1 = yes; 0 = no) | | |
| 4.a. Foreign tax credit - | 497,318 | xxxxxxxxxxxxxxx |
| b. Other credits ---- | 93,651 | xxxxxxxxxxxxxxx |
| c. General business credit | 305,105 | xxxxxxxxxxxxxxx |
| d. Credit for prior year minimum tax -- | 0 | xxxxxxxxxxxxxxx |
| 5. Total credits (sum lines 4a through 4d) -------- | | 896,074 |
| 6. Balance of tax (line 3 less line 5) ---------- | | 51,226,315 |
| 7. Foreign corp. - Sec. 881 tax --------------- | | |
| 8. -- SECTION 453A(c) INTEREST ON INSTALLMENT SALES | | 192,732 |
| 9 a. Alternative minimum tax (Form 4626) -------- | | 0 |
| b. Envionmental tax (Form 4626) ------------- | | 195,724 |
| 10. Total tax (sum line 6 through 9b) ---------- | | 51,614,771 |

a274.J325

| | | |
|---|---|---|
| 9. Limitation on noninsurance losses (ln 5 less ln 8) -- | | 0 |

Page 6

Schedule J, Part I - Shareholders' Surplus Account (Sec. 815(c))

| | | |
|---|---|---|
| 1.a. Balance at beginning of year ---- | | 0 |
| b. Transfers under pre-1984 Sec. 815(d)(1) and (4) | | xxxxxxxxxxxxxx |
| for the preceding year ---------------- | | 0 |
| c. Balance at beginning of yr. (add lines 1a and 1b) -- | | 0 |
| 2.a. LICTI (Page 1, sum of lines 23 and 24, but not < 0)- | | 0 |
| b. Small life insurance company deduction allowed by | | xxxxxxxxxxxxxx |
| Section 806(a) (Sch. H, line 17) ---------- | | 0 |
| c. Dividends-rec'd deduction (Sch. A, ln 16, col (c)) - | | 0 |
| d. Tax-exempt interest (Sch. B, line 9) | | 0 |
| 3. Total (sum lines 1c through 2d) --- | | 0 |
| 4. Tax liability for yr. w/o regard to Sec. 815 ----- | | 0 |
| 5. Line 3 less line 4 (not < 0) ----- | | 0 |
| 6. Direct or indirect distributions in yr. (not > line 5) | | 0 |
| 7. Balance at end of year (line 5 less line 6) ----- | | 0 |

Part II - Policyholder' Surplus Account (Sec. 815(d))

| | | |
|---|---|---|
| 8. Balance at beginning of year ----- | | 0 |
| 9 a. Direct or indirect distributions | xxxxxxxxxxxxxxx | xxxxxxxxxxxxxx |
| that are more than line 5, Part I -- | 0 | xxxxxxxxxxxxxx |
| b. Tax increase on line 9a (See notes) - | 0 | xxxxxxxxxxxxxx |
| c. Subtractions under pre-1984 | xxxxxxxxxxxxxxx | xxxxxxxxxxxxxx |
| Sections 815(d)(1) and (4) ----- | 0 | xxxxxxxxxxxxxx |
| d. Tax increase on line 9c (See notes) - | 0 | xxxxxxxxxxxxxx |
| e. Subtraction required under pre-1984 | xxxxxxxxxxxxxxx | xxxxxxxxxxxxxx |
| Sec. 815(d)(2) due to termination -- | 0 | xxxxxxxxxxxxxx |
| 10. Total - Sum lines 9a through 9e, but not > line 8 -- | | 0 |
| 11. Balance at end of year (line 8 less line 10) ---- | | 0 |

Schedule K - Tax Computation

| | | | |
|---|---|---|---|
| | 1. Member of controlled group? (1 = yes; 0 = no) | | 1 |
| | 2. a. Share of $50,000, $25,000 and $9,925,000 tax bracket amounts: | | |
| | (1) 1st Tier --------- | 0 | xxxxxxxxxxxxxx |
| | (2) 2nd Tier --------- | 0 | xxxxxxxxxxxxxx |
| | (3) 3rd Tier --------- | 0 | xxxxxxxxxxxxxx |
| | b. Share of: (1) additional 5% tax -- | 0 | xxxxxxxxxxxxxx |
| | (2) additional 3% tax -- | 0 | xxxxxxxxxxxxxx |
| (45,731,000) | 3. Income tax ------- | | 6,391,389 |
| | Alternative tax applicable? 0 (1 = yes; 0 = no) | | |
| | 4.a. Foreign tax credit - | 497,318 | xxxxxxxxxxxxxx |
| | b. Other credits ---- | 93,651 | xxxxxxxxxxxxxx |
| 0 | c. General business credit | 305,105 | xxxxxxxxxxxxxx |
| | d. Credit for prior year minimum tax -- | 0 | xxxxxxxxxxxxxx |
| 0 | 5. Total credits (sum lines 4a through 4d) -------- | | 896,074 |
| (45,731,000) | 6. Balance of tax (line 3 less line 5) ---------- | | 5,495,315 |
| | 7. Foreign corp. - Sec. 881 tax --------------- | | 0 |
| | 8. Recapture taxes --------------------- | | 192,732 |
| 495288.0604 | 9 a. Alternative minimum tax (Form 4626) -------- | | 495,288 |
| (156,804) | b. Envionmental tax (Form 4626) ------------- | | 38,920 |
| (45,392,516) | 10. Total tax (sum line 6 through 9b) ---------- | | 6,222,255 |

Form 4626
Alternative Minimum Tax
(including environmental tax)

| Line | | 1995 | a344..J410 |
|---|---|---|---|
| 1. Taxable income or (loss) before NOL deduction | | 158,430,178 | (130,660,000) |
| 2. Adjustments | | | |
| a Deprec. of prop. in service after '86- | 6,672,517 xx | | |
| b Amort. of post-86 pollution cont. fac.- | xx | | |
| c Amort. of mining explor. etc costs | xx | | |
| d Amort. of circulation expenses of PHC- | xx | | |
| e Basis adjustments re gain or loss | xx | | |
| f Long term contracts after 2/28/86 | xx | | |
| g Install. sales of certain prop. | xx | | |
| h Merchant marine cap. const. funds | xx | | |
| i Section 833(b) deduction | xx | | |
| j Tax shelter farm loss (PSC only) | xx | | |
| k Passive activity loss | xx | | |
| l Certain loss limitations | xx | | |
| m Other adjustments ------ dhc nol | xx | | |
| n Combine lines 2a through 2m | | 6,672,517 | 0 |
| 3. Tax preference items | | | |
| a Depletion | 725 xx | | |
| b Tax exempt int. from pvt. act. bonds - | xx | | |
| c Charitable contributions | xx | | |
| d Intangible drilling costs | xx | | |
| e Res. for bad debts of finan. instit. - | xx | | |
| f Accel. depr. of pre-'87 real prop. | xx | | |
| g Accel. depr. of leased pre-87 personal property (PHC only) | xx | | |
| h Total lines 3a through 3g | | 725 | 0 |
| 4. Pre-adjustment AMTI. Combine lines 1, 2n, and 3h | | 165,103,420 | (130,660,000) |
| 5. Adjusted current earnings (ACE) adjustment: | xx | | |
| a Corporation's ACE from worksheet | 164,935,066 xx | | (130,673,384) |
| b Line 5a minus line 4 | (168,354) xx | | |
| c Line 5b times 75% | 10,265 xx | | |
| d Excess, if any, of total increases in AMTI from prior year ACE over total reductions in AMTI from prior year ACE adjustments | xx | | |
| e ACE adjustment: | xx | | |
| If line 5b is positive or 0, line 5c; if line 5b is negative, lesser of line 5c or line 5d | xx | 0 | (10,038) |
| 6. Combine lines 4 and 5e | | 165,103,420 | (130,670,038) |
| 7. Alt. tax net operating loss | | 0 | 0 |
| 8. Alt. min. taxable income (Ln 6 minus Ln 7) | | 165,103,420 | (130,670,038) |
| Page 2 | | | |
| 9. Alt. min. taxable income from line 8 | | 165,103,420 | (130,670,038) |
| 10. Exemption phase-out computation | xx | | |
| a Line 9 minus $150,000, not < 0 | 164,953,420 xx | | |
| b Line 10a x 25% | 41,238,355 xx | | |
| c Exemption. $40,000 minus Line 10b, not < 0 | | 0 | |
| 11. Line 9 minus line 10c, not < 0 | | 165,103,420 | (130,670,038) |
| 12. Multiply line 11 by 20% | | 33,020,684 | (26,134,007) |
| 13. Alt. min. tax foreign tax credit | | 497,318 | 0 |
| 14. Tentative minimum tax (line 12 minus line 13) | | 32,523,366 | (26,134,007) |
| 15. Reg. tax before credits minus for. tax credits, etc - | | 51,625,071 | (45,731,000) |
| 16. Alt. minimum tax (line 14 minus line 15, not <0) | | 0 | 495,288 |
| 17. Environmental tax (Ln 6 minus $2,000,000 times .12%)- | | 195,724 | (156,804) |

END OF FORM 4626

Form 4626
Alternative Minimum Tax
(Including environmental tax)
(As adjusted)

| Line | | 1995 |
|---|---|---|
| 1. Taxable income or (loss) before NOL deduction | | 27,770,178 |
| 2. Adjustments: | | |
| a Deprec. of prop. in service after '86- | 6,672,517 xx | |
| b Amort. of post-86 pollution cont. fac.- | 0 xx | |
| c Amort. of mining explor. etc costs | 0 xx | |
| d Amort. of circulation expenses of PHC- | 0 xx | |
| e Basis adjustments re gain or loss | 0 xx | |
| f Long term contracts after 2/28/86 | 0 xx | |
| g Install. sales of certain prop. | 0 xx | |
| h Merchant marine cap. const. funds | 0 xx | |
| i Section 833(b) deduction | 0 xx | |
| j Tax shelter farm loss (PSC only) | 0 xx | |
| k Passive activity loss | 0 xx | |
| l Certain loss limitations | 0 xx | |
| m Other adjustments | 0 xx | |
| n Combine lines 2a through 2m | | 6,672,517 |
| 3. Tax preference items: | | |
| a Depletion | 725 xx | |
| b Tax exempt int. from pvt. act. bonds - | 0 xx | |
| c Charitable contributions | 0 xx | |
| d Intangible drilling costs | 0 xx | |
| e Res. for bad debts of finan. instit. - | 0 xx | |
| f Accel. depr. of pre-'87 real prop. | 0 xx | |
| g Accel. depr. of leased pre-87 personal property (PHC only) | 0 xx | |
| h Total lines 3a through 3g | | 725 |
| 4. Pre-adjustment AMTI. Combine lines 1, 2n, and 3h | | 34,443,420 |
| 5. Adjusted current earnings (ACE) adjustment: | xx | |
| a Corporation's ACE from worksheet | 34,261,682 xx | |
| b Line 5a minus line 4 | (181,738) xx | |
| c Line 5b times 75% | (10,038) xx | |
| d Excess, if any, of total increases in AMTI from prior year ACE over total reductions in AMTI from prior year ACE adjustments | 0 xx | |
| e ACE adjustment: | xx | |
| If line 5b is positive or 0, line 5c; if line 5b is negative, lesser of line 5c or line 5d | xx | (10,038) |
| 6. Combine lines 4 and 5e | | 34,433,383 |
| 7. Alt. tax net operating loss | | 0 |
| 8. Alt. min. taxable income (Ln 6 minus Ln 7) | | 34,433,383 |
| Page 2 | | |
| 9. Alt. min. taxable income from line 8 | | 34,433,383 |
| 10. Exemption phase-out computation: | xx | |
| a Line 9 minus $150,000, not < 0 | 34,283,383 xx | |
| b Line 10a x 25% | 8,570,846 xx | |
| c Exemption. $40,000 minus Line 10b, not < 0 | | 0 |
| 11. Line 9 minus line 10c, not < 0 | | 34,433,383 |
| 12. Multiply line 11 by 20% | | 6,886,677 |
| 13. Alt. min. tax foreign tax credit | | 497,318 |
| 14. Tentative minimum tax (line 12 minus line 13) | | 6,389,359 |
| 15. Reg. tax before credits minus for. tax credits, etc - <0 | | 5,894,071 |
| 16. Alt. minimum tax (line 14 minus line 15, not <0) | | 495,288 |
| 17. Environmental tax (Ln 6 minus $2,000,000 times .12%)- | | 38,920 |

END OF FORM 4626

**CONNECTICUT MUTUAL LIFE INSURANCE COMPANY**

**ADDENDUM TO 1995 CLAIM FOR REFUND**

This Addendum is annexed to and forms a part of the claim for refund filed on Form 1120X by Massachusetts Mutual Life Insurance Company ("MassMutual"), successor to Connecticut Mutual Life Insurance Company ("Connecticut Mutual"), on behalf of Connecticut Mutual for a tax year, 1995, prior to the year of Connecticut Mutual's acquisition by MassMutual in 1996. Connecticut Mutual will hereinafter be referred to as the "Taxpayer" or the "Company." Taxpayer has overpaid its Federal income tax for 1995 by $45,392,516. It hereby claims a refund in that amount, or such greater amount as is legally refundable, together with assessed interest, as well as statutory interest on the amount to be refunded.

Jurisdictional Statement

At all times during 1995, Taxpayer was a life insurance company as defined in section 816 of the Internal Revenue Code (hereinafter, all references are to sections of the Internal Revenue Code as in effect for 1995, unless otherwise indicated). Taxpayer timely filed its Federal income tax return for 1995 and paid in full the tax liability reported on that return.

Upon audit of Taxpayer's return for the year 1995, a number of adjustments were proposed by the District Director's Office. Upon consideration of those proposed adjustments by the Taxpayer and the Hartford Appeals Office of the Internal Revenue Service, a settlement on Form 870-AD was reached pursuant to which a deficiency of $30,373,989 in Federal income tax for 1995 was determined. The Federal income tax deficiency, and related deficiency interest, were assessed on August 23, 2002. By check dated July 8, 1998, Taxpayer had made an advance payment of $27,594,224 of tax plus $6,386,722.24 of assessed interest with respect to the year 1995, and the Service applied that advance payment against the assessment. The balance of the

assessment was satisfied by the application of portions of the overassessments determined for the years 1993 and 1994.

As part of the agreement reached on the Form 870-AD, Taxpayer reserved the right to file a refund claim for 1995 with respect to certain issues. Those issues form the basis for this claim for refund.

This refund claim is timely filed pursuant to section 6511(c) and 6511(d)(2), which permit a refund claim to be filed before the expiration of six months after the expiration of the period for assessment. The period for assessment for the year 1995 was extended by means of Forms 872 and did not expire any earlier than September 30, 2002, and the period for timely filing this refund claim thus extends at least through March 30, 2003.

Statement of Claim

The refund sought in this claim for refund is based on the issues identified below. With respect to each issue, Taxpayer incorporates herein by reference the relevant portions of its Protest filed with the Internal Revenue Service (the "Service") for the years 1992, 1993, 1994, and 1995 and dated June 10, 1998. Taxpayer is entitled to prevail with respect to each of these issues for the reasons set forth below.

1. January Policyholder Dividends Liability (Protest Issue No. 3)

With respect to its participating life insurance policies, including its whole life individual policies, the Company is obligated to pay annual policyholder dividends. At the end of each year, the Company's board of directors approves a report, submitted to it by the Company's management, pertaining to the payment of dividends in the following year. The report discusses the Company's financial results for the current year, recommends the adoption of bases and formulae upon which policyholder dividends for individual policies in the following year are to

be computed, and sets forth an estimate of the total amount of divisible surplus to be paid as policyholder dividends in the following year. After this dividend resolution is approved by the board of directors, the total amount of dividends payable is set aside as a liability on page 3 (Liabilities, Surplus & Other Funds) of the Company's annual statement.

For each policy, the Company's computer system calculates the policyholder dividend that is payable based on the applicable dividend factors and formula. The computer system then processes the dividend in accordance with the dividend option selected under the policy, for example paying the dividend in cash or crediting the dividend in the manner that the policyholder has selected.

Certain of the Company's policies (hereinafter, the "January anniversary date policies") have a January anniversary date and are policies for which, by year end, the policyholder has paid premiums through the next anniversary date (i.e., the full premium for the current policy year has been paid). With respect to these policies, the Company is committed to pay the annual policyholder dividend in the following year whether or not the policy is in force on the next anniversary date. Thus, at year end, the Company is unconditionally and irrevocably obligated to pay the annual dividend in the following year. Because the Company's unconditional liability to pay these dividends is fixed at year end, that liability is accrued for Federal income tax purposes under the "all events" test.

On its Federal income tax return for 1995, the Company did not report the change in its accrued liability to pay policyholder dividends with respect to these January anniversary date policies. However, during the course of the examination of 1992 through 1995, the Company affirmatively claimed this accrued liability.

Under section 461(h)(3), Taxpayer is entitled to take into account this accrued liability in 1995 in accordance with the recurring item exception to the economic performance rules contained in section 461(h). For a given tax year, the recurring item exception allows for the deduction of the portion of the accrued policyholder dividends liability that is actually paid during the first 8 1/2 months of the following year. Because, for 1995, the policyholder dividends in question were paid in January of 1996, the full amounts claimed are allowable.

The Company affirmatively claims for 1995 that it is entitled to use the recurring item exception with respect to its accrued liability for policyholder dividends with respect to the January anniversary date policies. At the end of 1994, the Company's accrued liability for dividends with respect to the January anniversary date policies was $27,273,002, and at the end of 1995 its accrued liability was $27,205,410. Based on this decrease of $67,592 in its accrued liability for policyholder dividends with respect to the January anniversary date policies for 1995, the Company should report additional income of $67,592 for 1995.

The Company's policyholder dividends liability with respect to January anniversary date policies is accrued, and the Company is entitled to deduct that liability under the recurring item exception of section 461(h)(3).

There is no doubt that at the end of 1995, the Company was unconditionally and irrevocably committed to pay policyholder dividends with respect to the January anniversary date policies. the Company's commitment arises from its contractual and legal obligation to pay and credit policyholder dividends on anniversary dates in a timely manner. Policyholder dividends must be paid in cash, or credited as policyholders have specified, on or near the policy anniversary date. In order for the Company to accomplish this task, it must establish an

administrative "cut-off point" at least 30 days prior to the policy anniversary.[1] For example, if a policyholder surrenders their policy prior to this "cut-off point," the Company will not pay a dividend on the following anniversary date. Prior to the "cut-off point," the Company has the ability to determine whether a surrender has occurred and to decline to pay the dividend in cases where a surrender has in fact occurred. However, once the policy reaches the "cut-off point," the Company commits to pay the dividend regardless of whether the policyholder surrenders. If it did not commit in this fashion, the Company would be unable to timely pay or credit policyholder dividends on the anniversary date. Thus, once the "cut-off point" is reached the Company is committed to the process that irrevocably and in all events leads to the payment of the dividend.

The Company's commitment is a long-standing one that the Company has consistently followed for numerous years. The commitment is consistent with a standard practice in the life insurance industry and, as mentioned above, it is firmly fixed by reasons of accounting and administrative necessity. The Company has contractual and legal obligations to timely pay policyholder dividends and those obligations require that the Company maintain its commitment. State law operates to enforce the Company's contractual obligation, and also reinforces that the Company has the obligation to annually distribute divisible surplus as policyholder dividends. Moreover, state law requires that the Company treat its policyholders equitably and equally. Because the Company has followed its practice of paying dividends to January anniversary date policies consistently for a long period of time, the Company must continue to do so, so that all policyholders will receive consistent and equal treatment.

---

[1] This administrative procedure is in force for policyholder dividends payable during each month throughout the year. Because the Company is a calendar year taxpayer, the only tax effect occurs due to the application of the practice to January anniversary date policies.

Finally, the Company's commitment is enforceable under the doctrine of waiver and, as a result, the Company's obligation to pay the dividends in question is even more fixed. The principle of waiver is a well-established concept of the law of insurance. Waiver may be simply defined as the manifestation of intent by an insurer to relinquish a known right. 6 Couch on Insurance 2d § 32:274. In contrast to general contract law principles, the general rule in respect of insurance contracts is that a waiver of a right by an insurer need not be supported by consideration. 6 Couch on Insurance 2d § 32:276. Thus, the Company's commitment and obligation to pay dividends in all events with respect to January anniversary date policies is irrevocable and certain.

In sum, by paying the full policy year premium, the January anniversary date policyholder has become entitled to the policyholder dividend, and the Company in all events will pay that dividend. Thus, at year end, the Company is unconditionally and irrevocably obligated to pay the annual dividend in the following year.

For the foregoing reasons, the all-events test is satisfied and the Company's policyholder dividends liability for January anniversary date policies is accrued. For 1995, the Company is entitled to use the accrual method of accounting and the recurring item exception for its policyholder dividends liability with respect to certain January anniversary date policies described above, and should report income in 1995 attributable to the decrease in its accrued liability for policyholder dividends.

In the event the Company's claim for 1992 is allowed, but the Company is required to reflect an opening balance in 1992 for the accrued policyholder dividends at issue, then the Company claims a section 481 adjustment for 1995 (equal to all or a portion of the opening

balance required to be reflected for 1992). This section 481 adjustment will reduce the amount of income reported by the Company for 1995.

2. Guaranteed Policyholder Dividends Liability (Protest Issue No. 2)

The Company is entitled to deduct for 1995, under the recurring item exception of section 461(h)(3), $77,425,126 of its accrued liability for policyholder dividends that it had guaranteed during 1995 and was unconditionally obligated to pay during 1996. In the alternative, on the ground that the guaranteed dividend liability satisfies the economic performance requirements of section 461(h)(1) and (2), the Company affirmatively claims an additional $19,574,874 deduction for the year 1995 (permitting it to deduct its entire $97 million guaranteed liability for accrued dividends).

With respect to its participating life insurance policies, including its whole life individual policies, the Company is obligated to pay policyholder dividends. The typical policy contract provides that "While this Policy is in force, we will credit it with dividends. Dividends are based on such shares of divisible surplus (if any) as we may apportion at the end of each policy year." Once the Company apportions divisible surplus, it is obligated to pay or credit that divisible surplus as policyholder dividends to each individual policy in force on its anniversary date in the following year.

At the end of each year, the Company's board of directors approves a report, submitted to it by the Company's management, pertaining to the payment of dividends in the following year. The report discusses the Company's financial results for the current year, recommends the adoption of bases and formulae upon which policyholder dividends for individual policies in the following year are to be computed, and sets forth an estimate of the total amount of divisible surplus to be paid as policyholder dividends in the following year. After this dividend resolution

is approved by the board of directors, the total amount of dividends payable is set aside as a liability on the Company's annual statement. With respect to policyholder dividends payable in the year 1996, the Company's board of directors adopted the operative policyholder dividend resolution on November 27, 1995. The resulting policyholder dividends liability was reported on page 3 (Liabilities, Surplus & Other Funds) of the Company's annual statement for the year 1995.

Subsequently, on December 8, 1995, the Company's board of directors adopted a second resolution supplementing the resolution previously adopted by the board of directors on November 27, 1995. In this second resolution, the board of directors determined that "the Company hereby absolutely and irrevocably commits and guarantees that, of the total [policyholder dividend] apportionment for the [year 1996], it will pay or cause to be applied in all events, annual dividends in 1996, for participating individual life and annuity policies issued after December 31, 1983, in the amount of at least $97 million."

In addition, the December 8, 1995, board of directors resolution provided that the "Chief Financial Officer is hereby charged with monitoring the payment of annual dividends during 1996 to assure that the total guarantee is paid as applied in accordance with the Connecticut Mutual Life Insurance Company 1996 Annual Dividend Guarantee Policy."
That Policy reiterated that, under the aggregate policyholder dividend guarantee, the Company was "absolutely and irrevocably obligated to pay or apply the Guaranteed Dividends in all events," and provided the mechanism by which the guarantee was to be implemented.

On its annual statement for the year 1995, the Company noted (on page 30.4, line 22.b.) that, generally, policyholder dividends payable to any particular policy "are not guaranteed," and that the dividend declared for any individual policy in 1995 is the amount "expected to be paid in

1996." However, the Company then disclosed to the State Insurance Department (with which the 1995 annual statement was filed) and to its policyholders the fact that "The Board of Directors has further guaranteed that in 1996, a total of no less than $97.0 million will be paid or applied in the aggregate as annual dividends on certain life insurance and annuity contracts issued before January 1, 1996."

On its Federal income tax return for the year 1995, the Company accrued its liability to pay guaranteed policyholder dividends, and claimed a deduction of $78,840,640 attributable to that accrual. The Company determined this deduction, under the recurring item exception of section 461(h)(3), as the portion of the accrued policyholder dividends that was paid during 1996 and within 8 1/2 months after year-end 1995. Subsequently, additional substantiation of the claimed deduction revealed that the correct amount of policyholder dividends paid during 1996 and within 8 1/2 months after year-end 1995 was $77,425,126. Accordingly, the Company now claims it is entitled to the deduction for its liability to pay guaranteed policyholder dividends in the amount of $77,425,126. The Service has disallowed that claimed deduction.

The Company is entitled to the disallowed $77,425,126 deduction. Moreover, the Company alternatively claims that it is entitled to a deduction for the year 1995 in the total amount of $97 million, equal to the full amount of its liability for guaranteed dividends, on the ground that its liability satisfies the economic performance requirements of section 461(h)(1) and (2).

In order for Taxpayer's guaranteed policyholder dividends liability to be "accrued," it must satisfy the "all events" test. There are two prongs to the "all events" test. First, the amount of the liability must be reasonably certain. In the instant situation, this prong is obviously satisfied because the Company guaranteed a specified amount of liability -- $97 million. Second,

all of the events necessary to establish the fact of liability must have occurred. In this case, all events did occur, because at year-end 1995 the Company guaranteed -- unconditionally and irrevocably -- that it would pay or credit to policyholders during 1996 an aggregate amount of at least $97 million of policyholder dividends. As described above, on December 8, 1995, the Company's board of directors adopted a resolution expressly providing that "the Company hereby **absolutely and irrevocably commits and guarantees that**, of the total [policyholder dividend] apportionment for the [year 1996], **it will pay or cause to be applied in all events, annual dividends in 1996,** for participating individual life and annuity policies issued after December 31, 1983, **in the amount of at least $97 million** (emphasis added)." Moreover, to ensure that this commitment was met, the December 8, 1995, board of directors resolution also provided that the "Chief Financial Officer is hereby charged with monitoring the payment of annual dividends during 1996 **to assure that the total guarantee is paid as applied** in accordance with the Connecticut Mutual Life Insurance Company 1996 Annual Dividend Guarantee Policy (emphasis in bold added)." That Policy reiterated that, under the aggregate policyholder dividend guarantee, the Company was "**absolutely and irrevocably obligated to pay or apply the Guaranteed Dividends in all events**" (emphasis added), and provided the mechanism by which the guarantee was to be implemented and enforced.

Moreover, on its annual statement for the year 1995, the Company disclosed to the State Insurance Department (with which the 1995 annual statement was filed) and to its policyholders that "The Board of Directors has further **guaranteed** that in 1996, a total of no less than $97.0 million **will be paid or applied** in the aggregate as annual dividends on certain life insurance and annuity contracts issued before January 1, 1996 (emphasis added)."

Thus, the Company clearly guaranteed $97 million of policyholder dividends liability and that liability existed to be enforced by the State Insurance Department and its policyholders. There can be no doubt that the liability was actually created.

Moreover, there is no doubt that the resolution adopted by the Company's board of directors unconditionally and irrevocably obligated the Company in such a manner that legally satisfies the second prong of the "all events" test. In this regard, it cannot be disputed that the fact of liability can be established by contract, as well as by board of directors' resolutions. Numerous cases have recognized that the fact of liability can be established by contractual obligations. E.g., Burnham Corp. v. Commissioner, 878 F.2d 86 (2nd Cir. 1989); Lukens Steel Co. v. Commissioner, 442 F.2d 1131 (3rd Cir. 1971); Harrold v. Commissioner, 192 F.2d 1002 (4th Cir. 1951). Other courts have held that the fact of liability can be established by board of directors' resolutions. In Commissioner v. Champion Spark Plug Co., 266 F.2d 347 (6th Cir. 1959), the court held that a board resolution authorizing payment of a liability constituted an unconditional obligation to pay that gave rise to an accrued expense. See also Willoughby Camera Stores, Inc. v. Commissioner, 125 F.2d 607 (2nd Cir. 1942); Washington Post Co., v. United States, 405 F.2d 1279 (Ct. Cl. 1969).

During the year 1995, the Company and MassMutual agreed to merge during 1996 into a single company. The pending merger transaction could have been a source of concern to policyholders. In this environment, the policyholder dividends guarantee was an assurance to policyholders that the post-merger company would continue to exhibit financial strength and commitment to policyholders. Policyholders were informed of the guarantee through the Company's public disclosure on its 1995 annual statement, and they clearly had the right to

enforce the guarantee, further establishing that the Company's policyholder dividends liability was fixed.

At year-end 1995, it thus was known with certainty that at least $97 million of policyholder dividend liability would be satisfied in the next year by the payment of annual dividends. That guaranteed dividend liability thus was "fixed" for purposes of the "all events" test. See Hughes Properties, Inc v. United States, 476 U.S. 593 (1986); Burnham Corp. v. Commissioner, 90 T.C. 953 (1988), aff'd, 878 F.2d 86 (2d Cir. 1989).

The Company is entitled to compute its policyholder dividend deduction for the year 1995 based on the recurring item exception. The recurring item exception of section 461(h)(3) provides that an item shall be treated as incurred during any taxable year if—

a) the all events test with respect to such item is met during such taxable year (determined without regard to economic performance),

b) economic performance with respect to such item occurs within the shorter of a reasonable period after the close of the taxable year, or 8 1/2 months after the close of the taxable year,

c) such item is recurring in nature and the taxpayer consistently treats items of such kind as incurred in the taxable year in which the all events test (determined without regard to economic performance) is met, and

d) either such item is not a material item, or the accrual of such item in the taxable year in which the requirements of the all events test (determined without regard to economic performance) are met results in a more proper match against income than accruing such item in the taxable year in which economic performance occurs.

The statutory language "shall be treated as incurred" mandates that items be accounted for under the recurring item exception when the four factors are present. In this case, all four requirements are satisfied and, under the terms of the statute, the recurring item exception must

be used to account for the policyholder dividends in question. As a result, the Company is entitled to a $77,425,126 deduction for 1995 with respect to its guaranteed policyholder dividends liability.

In the alternative, the Company affirmatively claims that it is entitled to deduct the full amount ($97 million) of its guaranteed policyholder dividends liability, on the ground that such liability satisfies the requirements for economic performance. In exchange for premiums received from its policyholders, the Company provides underwriting and investment services to those policyholders. Through underwriting services, the Company shifts risk from individual policyholders and distributes that risk among its policyholders as a group. The Company provides investment services by investing premiums and earnings thereon that are not currently needed to pay mortality charges.

With respect to these services and use of property, the Company pays policyholder dividends to participating policies. Every year, the Company compares its assumed mortality and investment experience with its actual experience and determines what difference is available for the payment of policyholder dividends. The Company is required by state law to determine and declare policyholder dividends in this manner on an annual basis. In this process, at each year end, the Company takes into account its results in performing underwriting and investment services for policyholders, and its results in using its policyholders' property, through year end. The determined policyholder dividends liability is established by vote of the Company's board of directors and is reported on the Company's annual statement for the year.

Under section 461(h)(1), the all events test is not considered as met until economic performance has occurred. In the case of services and property provided, economic performance occurs as the services and property are provided, or as the use of the property occurs. Section

461(h)(2). As described above, the Company provides services to its policyholders in exchange for policy premiums. With respect to the services provided, those services are fully provided during the course of the year. With respect to the Company 's use of the policyholders' premiums, that use also fully occurs during the course of the year. Based on this provision of services and use of property, the Company is able to determine and declare its policyholder dividends liability at each year end. With respect to that liability, economic performance has occurred by year end.

The Company is entitled to use for the year 1995 the accrual method of accounting for its guaranteed policyholder dividends liability, and is entitled to a deduction under the section 461(h)(3) recurring item exception. Alternatively, the Company is entitled to deduct the full amount of its guaranteed policyholder dividends liability for the year 1995 in the amount of $97 million under the section 461(h)(2) economic performance standard, and its affirmative claim should be allowed.[2]

3. Separate Account Dividends Received Deduction

The Company and its subsidiary, C.M. Life, offer contracts that allow contract holders to invest their funds in separate accounts in ways that satisfy the requirements of Code section 817. Under applicable state laws, the separate account funds are held, accounted for, and invested separately from general account funds. Taxpayer's Federal income tax returns combine taxable income from both the general account and the separate accounts. A number of the separate accounts have dividend income eligible for the dividends-received deduction ("DRD").

For the year 1995, the Company and C.M. Life seek to correctly compute their separate account DRDs in accordance with the requirements of Treasury Regulations §1.801-8(e), and in

[2] The Company has computed its refund claimed on the accompanying Form 1120X for the year 1995 using the $97 million deduction that it affirmatively claims.

accordance with the Service's position set forth in TAM 200038008 (June 13, 2000) and a TAM issued in 2002 (the "2002 TAM") (copy attached).

On the originally filed Federal income tax return for 1995, the Company and C.M. Life computed their separate account DRDs in accordance with the formula set forth in Treas. Reg. §1.801-8(e). On the income tax return for 1995, the Company claimed a separate account DRD of $3,176,328, while C.M. Life claimed a separate account DRD of $43. However, in making those computations, the Company and C.M. Life did not reflect all necessary elements allowable in accordance with the position that the Service subsequently adopted as correct in TAM 200038008 and the 2002 TAM. Therefore, the Company and C.M. Life affirmatively claim (in accordance with the Service's TAMs) the inclusion of all necessary elements in the calculation of "amounts retained." As a result, the Company claims a total separate account DRD for 1995 of $3,319,737 (an increase in the separate account DRD of $143,409), and C.M. Life claims a total separate account DRD for 1995 of $359,404 (an increase in the separate account DRD of $359,361).

Under the 1984 Act, according to section 805(a)(4), life insurance companies are allowed a dividends received deduction with respect to the "company's share" of dividends received. Section 812 provides rules to determine the amount of the "company's share" for each year. Under section 812(a)(1), the "company's share" equals the company's share of the net investment income for the year divided by the total net investment income for the year.

The company's share of the net investment income for the year is defined by section 812(b)(1) as the net investment income for the year minus certain specified reductions, one of which is the "policy interest" for the year. Section 812(b)(2)(A) defines policy interest to include, among various items, the "required interest" for the year. For separate accounts, neither

the prevailing State assumed interest rate nor the applicable Federal rate are appropriate to compute required interest. Under these circumstances, section 812(b)(2) requires that "another appropriate rate" be used. Section 817(f)(1) offers support for this conclusion by providing that (for purposes of section 816(b)(1)(A)) "the reflection of the investment return and the market value of the segregated asset account shall be considered an assumed rate of interest."

Treasury Regulations §1.801-8(e) continues to apply under the 1984 Act and provides the correct manner of computing the appropriate required interest rate under section 812(b)(2). The legislative history of the 1984 Act expressly provides that under section 812, "the formula used for purposes of determining the policyholders' share is based generally on the proration formula used under prior law in computing gain or loss from operations (i.e., by reference to 'required interest')." S. Rep. No. 169, vol. I, 98th Cong., 2d Sess. 557-559 (April 2, 1984)(the "Senate Report"); Staff of the Jt. Comm. on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984 623 (Comm. Print 1984)(the "1984 Act Bluebook"). This is a specific reaffirmation of the general rule that "where provisions of prior law are incorporated in the Act, the Congress expects that, in the absence of contrary guidance in the committee reports and conference agreement, the regulations, rulings, and case law under prior law will serve as interpretative guides to the new provisions." (1984 Act Bluebook at 581). See also, Senate Report at 524.

The only major difference between the computation of company share for the separate account under the 1959 Act and the 1984 Act relates to the treatment of investment expenses attributable to the separate account. The 1984 Act mandates in section 812(c) that general account investment expenses are assumed to be 10 percent of gross investment income. In the case of separate accounts, investment expenses are assumed to be 5 percent of gross investment

income. Under the 1959 Act, section 801(g)(5)(A)(i) mandated the use of actual investment expenses and not an assumption as to such expenses. It was believed that the 10 percent investment expense assumption that applies to the general accounts under section 812(c)(1) was not reflective of the lower expenses of operating and administering a separate account. Accordingly, Congress agreed to and enacted the special 5 percent assumption for separate accounts. The only likely reason for enacting such 5 percent assumption was its impact on the dividends received deduction.

The Company and C.M. Life must compute their separate account DRD based on Treasury Regulations §1.801-8(e). The mandate of Code section 812(b)(2) to use "another appropriate rate," coupled with the clear direction given by the 1984 legislative history to compute required interest based on pre-1984 law, requires the use of this regulation to compute required interest for separate accounts. Indeed, in TAM 200038008 and the 2002 TAM, the Service acknowledged that Treasury Regulations §1.801-8(e) provides the correct manner of computing "required interest" under current Code section 812(b)(2).

In the case of reserves for separate account contracts, former Code section 801(g)(5) provides for the calculation of a rate that equals the "current earnings rate," minus a rate that is the ratio of (a) "any amount retained with respect to such reserves by the life insurance company from gross investment income ... on segregated assets" over (b) the mean of those reserves (emphasis added). This language is repeated in Treasury Regulations section 1.801-8(e)(1)(i). In order to calculate the separate account DRD under this provision, it is thus necessary to determine the meaning of the term "amount retained."

In two TAMs issued by the National Office, the Service has published its position regarding the meaning of the term "amount retained."

In TAM 200038008, the taxpayer used the same definition of "amount retained" as the Company and C.M. Life seek to use, and the National Office concluded that the taxpayer's "method of determining the amount of the policyholders' share and the company's share was appropriate under section 812 of the Code."

In the subsequently issued 2002 TAM, the National Office affirmed its position. The 2002 TAM expressly holds that "the 'amount retained' includes the mortality and expense charges, the annual maintenance fee, the administrative fee, and the premium tax charge" (page 2). The Company and C.M. Life seek to utilize the definition of "amount retained" adopted by the National Office in this TAM.

The Service's position as expressed in the TAMs is correct in light of the Internal Revenue Code, Treasury regulations, legislative history, and insurance treatises, all of which define the term "amount retained" in the same manner. See Code section 801(g)(5)(A)(i); Treas. Reg. § 1.801-8(e)(1)(i); S. Rep. No. 291, 86th Cong. 36 (1959), reprinted at 1959-2 C.B. 796; S. Rep. No. 2109, 87th Cong. 1184-85 (1962), reprinted at 1962-3 C.B. 1184; H. Rep. No. 432, 98th Cong. 1431 (1984); S. Prt. No. 169, 98th Cong. (1984); H.R. Conf. Rep. 861, 98th Cong. 1065-66 (1984); Joint Committee on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, 98th Cong. 624 (1984). See also, Ernst & Young, Federal Income Taxation of Life Insurance Companies, p. G-1 (2001); KPMG Peat Marwick, Federal Income Taxation of Insurance Companies, section 8.39, p. 836 (1991). All of these sources specify that the "amount retained" includes any amount that the life insurance company retains from the separate account, irrespective of whether those amounts can be characterized as relating to investment or underwriting activity.

The only amounts excluded from the "amount retained" are amounts that are deducted from the premium before the premium is credited to the separate account. See, e.g., Ernst & Young, Federal Income Taxation of Life Insurance Companies, section 17.05[5], pp. 17-40 (2000); KPMG Peat Marwick, Federal Income Taxation of Insurance Companies, section 8.39, p. 836 (1991); Gerald I. Lenrow, Ralph Milo, Anthony P. Rua, Federal Income Taxation of Insurance Companies 423-25 (1979).

The Service's position set forth in the above-cited TAMs is undeniably correct in light of the applicable precedent.

For the foregoing reasons, the fees charged to the Company's and C.M. Life's separate accounts constitute "amounts retained" that are properly taken into account under the calculation specified by Treasury Regulations section 1.801-8(e). As a result, the Company is entitled to a separate account DRD for 1995 in the total amount of $3,319,737, and C.M. Life is entitled to a separate account DRD for 1995 in the total amount of $359,404, as set forth above.

4. Tax Benefit Rule

In the computation of its tax liability for the years 1992, 1993 and 1994 under Code section 809, based on its claim that it is entitled to use negative 1991, 1992 and 1993 recomputed DERs, the Company contends that it is entitled to certain deductions in Code section 809 calculations. For example, in computing the 1991 recomputed DER (which impacts taxable income for the year 1992), the Company is entitled to deduct the 1991 average mutual earnings rate from the 1991 imputed earnings rate. Also, for example, the Company is entitled to a section 809(f)(2) deduction for the year 1992 based on its 1991 recomputed DEA. If the Company does not prevail on the 1991 negative recomputed DER issue raised in respect of the year 1992, a portion of the deductions claimed for that year, to which the Company is entitled,

will not have provided the Company with any tax benefit. The same holds true if the Company does not prevail on the 1992 and 1993 negative recomputed DER issues raised in respect of the years 1993 and 1994, respectively.

Under the tax benefit rule, a judicially created rule that is partially codified in Code section 111, a "recovery" of an amount deducted from income in a prior year must be excluded from income to the extent that the prior year deduction did not produce a tax benefit to the taxpayer. The tax benefit rule is designed to alleviate "some of the inflexibilities of the annual accounting system" and to relieve "transactional inequities." Hillsboro National Bank v. Commissioner, 460 U.S. 370, 377 (1983). A "recovery" will invoke the application of the tax benefit rule, and a recovery will occur when an event occurs in the later year that is "fundamentally inconsistent" with the premise on which the earlier deduction was based. Id. at 383. The exclusionary aspect of the tax benefit rule more generally requires the exclusion of an amount otherwise required to be included in income when a tax benefit was not derived from a related deduction involving the same transaction.

If the Company does not prevail on the negative recomputed DER issues raised for the years 1992, 1993 and 1994, then the Company is entitled to exclude from income for the year 1995, under the tax benefit rule, a portion of the amount associated with the above-described prior year (1992, 1993 and 1994) deductions that did not produce a tax benefit to the Company. The amount that must be excluded from income for the year 1995 constitutes a "recovery" and is based on "fundamentally inconsistent" events for purposes of the tax benefit rule.

The "fundamentally inconsistent" event, and thus the "recovery," occurs as the full 1991, 1992 and 1993 stock rates are used to compute the 1994 imputed rate, and the 1994 recomputed DER. This is "fundamentally inconsistent" because the full 1991, 1992 and 1993 mutual rates

were not allowed to produce a tax benefit as a deduction in computing the 1991, 1992 and 1993 recomputed DERs, respectively. This also is "fundamentally inconsistent" because, due to the different year rate comparison[3] used to compute the 1991, 1992 and 1993 recomputed DERs, the full amount of the section 809(f)(2) deductions attributable the 1991, 1992 and 1993 recomputed DERs (claimed for 1992, 1993 and 1994, respectively) were not allowed to produce a tax benefit.

To be consistent, a portion of the income for the year 1995 that results from taking the 1991, 1992 and 1993 stock rates fully into account in the year 1995 (as components of the 1994 imputed earnings rate) should be treated as a "recovery" and excluded from income for 1995. The effect of the exclusion will be to more accurately measure equity returns of the Company consistent with the intent of section 809 and the requirements of the tax benefit rule.

The "recovery" that should be excluded for the year 1995 can be measured by reducing the 1991, 1992 and 1993 stock earnings rates to reflect the disallowed negative 1991, 1992 and 1993 recomputed DERs. For example, the 1994 imputed rate, and thus the 1994 recomputed DER, would be computed using a 1991 stock earnings rate of 17.241 percent (i.e., the calculated rate of 19.667 percent reduced by the disallowed 1991 recomputed DER of negative 2.426 percent). Under the statutory formula, this would reduce the 1994 imputed earnings rate, and thus the 1994 recomputed DER, by 0.732 percentage points (*i.e.*, negative 2.426 percent, divided by 3, times 90.55 percent). The amount by which the 1994 imputed earnings rate, and the 1994 recomputed DER, are to be reduced attributable to the decreased 1991, 1992 and 1993 stock earnings rates is as follows:

---

[3] For example, the 1991 recomputed DER is computed by comparing the 1991 mutual rate to an imputed rate that is based on the stock rates for 1988, 1989 and 1990.

| | | 1991 | 1992 | 1993 | 1994 |
|---|---|---|---|---|---|
| 1. | Stock earnings rate | 19.667% | 7.004% | 23.385% | |
| 2. | Disallowed RDER | -2.426% | -2.615% | -5.795% | |
| | a. divided by 3 | 3 | 3 | 3 | |
| | b. | -0.808% | -0.872% | -1.932% | |
| | c. times 90.55% | 90.55% | 90.55% | 90.55% | |
| | d. | -0.732% | -0.789% | -1.749% | |
| 3. | Sum of amounts in Line 2.d. | | | | -3.271% |

Consistent with the foregoing, for purposes of this calculation, the 1994 recomputed DER should be reduced by 3.271 percentage points, from 5.887 percent to 2.616 percent.

Under this method of determining the amount of the "recovery," the amount of the income "recovery" to be excluded for the year 1995 is computed by multiplying the reduction in the recomputed DER for the year 1994 (3.271 percent) times the average equity base for the year 1994. As a result of this calculation, the Company is entitled to exclude from income for the year 1995 under the tax benefit rule a "recovery" in the amount of $33,382,200, computed as follows:

| | 1995 |
|---|---|
| 1994 Average Equity Base | $1,020,550,303 [4] |
| Percentage | 3.271% |
| "Recovery" to be Excluded | $ 33,382,200 |

Based on the foregoing, in the event that the Company is not entitled to use the 1991, 1992 and 1993 negative recomputed DERs, it is entitled to exclude the above-computed "recovery" from its income for the year 1995 in accordance with the tax benefit rule and other legal and equitable doctrines that reinforce and supplement the tax benefit rule.

5. Additional Claim Based on Credits and Credit and Loss Carryovers and Carrybacks

In subsequent computations, Taxpayer hereby claims its right to fully utilize all credits that arise in 1995 and all credit carryovers and carrybacks to 1995 from other years, to the extent such credits are available. In subsequent computations, Taxpayer also claims its right to fully utilize all operations loss carryovers and carrybacks to 1995 from other years, to the extent such carryovers and carrybacks are available.

6. Interest Netting

The Taxpayer claims that it is entitled to have its deficiency interest with respect to the year 1995 calculated in accordance with the interest netting procedures provided under section 6621(d).

[4] This amount of 1994 Average Equity Base is per the Appeals recomputation. The amount may change when the tax liability for the year 1994 is finally determined.